UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re Application of Agfa-Gevaert NV for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding | Case No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

TODD & WELD LLP
Nicholas B. Carter (BBO# 561147)
Julie E. Green (BBO# 645725)
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Christopher P. Moore (*pro hac vice pending*)
Nathaniel E. Jedrey (*pro hac vice pending*)
City Place House, 55 Basinghall Street
London EC2V 5EH, England
+44 20 7614 2227

*Attorneys for Applicant Agfa-Gevaert NV*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

    I.    The Parties ...................................................................................................... 2

    II.    The Related Arbitration And Engagement Of Mr. Falckenberg ............................ 3

    III.    The Requested Discovery ................................................................................ 8

ARGUMENT ...................................................................................................................... 8

    I.    Agfa's Application Satisfies Each Of Section 1782's Statutory
        Requirements .................................................................................................. 9

        A.    Agfa is an "interested person." .................................................... 9

        B.    Agfa seeks the discovery for use in "a proceeding in a foreign or
            international tribunal." ................................................................. 10

        C.    Each Respondent "resides or is found" in Massachusetts. ....................... 12

    II.    The Court Should Exercise Its Discretion to Order Discovery............................ 15

    III.    Agfa's Discovery Requests Are Proper Under Section 1782 And The
        Federal Rules .................................................................................................. 17

        A.    The requested discovery is relevant. ........................................................ 17

        B.    The requested discovery is permissible under the Federal Rules. ........... 18

CONCLUSION.................................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Federal Cases**

Addamax Corp. v. Open Software Found.,  Inc.,
    148 F.R.D. 462 (D. Mass. 1993)......................................................................................19

Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding
    (USA), Inc.,
    747 F.3d 1262 (11th Cir. 2014) ......................................................................................12

Brandi-Dohrn v. IKB Deutsche Industriebank AG,
    673 F.3d 76 (2d Cir. 2012).................................................................................................9

Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.,
    201 F.R.D. 33 (D. Mass. 2001)........................................................................................20

Capital Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp.,
    No. 12-10085-RWZ, 2014 WL 1431124 (D. Mass. Apr. 14, 2014).......................................19

Chevron Corp. v. Shefftz,
    754 F. Supp. 2d 254 (D. Mass. 2010) ..........................................................................9-10, 17-18

Comisión Ejecutiva, Hidroeléctrica Del Río Lempa v. Nejapa Power Co.,
    C.A. No. 08-135-GMS, 2008 WL 4809035 (D. Del. Oct. 14, 2008), vacated as moot,
    341 F. App'x 821 (3d Cir. 2009) ................................................................................ 10-11

Correia v. Town of Framingham,
    No. 12-10828-NMG, 2013 WL 952332 (D. Mass. Mar. 8, 2013).........................................19

Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,
    290 F.3d 42 (1st Cir. 2002)...............................................................................................14

Glen Elec. Holdings GmbH v. Coolant Chillers, Inc.,
    No. 1:10-cv-1109, 2013 WL 2407613 (W.D. Mich. May 31, 2013).......................................2

Gosselin v. Webb,
    242 F.3d 412 (1st Cir. 2001)...............................................................................................14

In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf,
    No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)............................11, 13

In re Application of Inversiones y Gasolinera Petroleos Vanezuela, S. de R.L.,
    No. 08-20378-MC, 2011 WL 181311 (S.D. Fla. Jan. 19, 2011) ......................................13, 16

ii

In re Application of Setraco Nigeria Ltd.,
No. 3:13-mc-16-32MCR, 2013 WL 3153902 (M.D. Fla. June 19, 2013) ..............................13

In re Astra Medica, S.A.,
981 F.2d 1 (1st Cir. 1992).....................................................................................................16

In re Babcock Borsig AG,
583 F. Supp. 2d 233 (D. Mass. 2008) ..................................................................................10

In re Bayer AG,
146 F.3d 188 (3d Cir. 1988)..................................................................................................18

In re Bayer Healthcare LLC,
No. C 14-80138 WHA, 2014 WL 3805807 (N.D. Cal. May 14, 2014)............................ 12-13

In re Chevron Corp.,
633 F.3d 153 (3d Cir. 2011)............................................................................................ 17-18

In re Edelman,
295 F.3d 171 (2d Cir. 2002)..................................................................................................15

In re ex parte Application of Ontario Principals' Council,
No. 5:13-mc-80237-LHK-PSG, 2013 WL 6073517 (N.D. Cal. Nov. 8, 2013)......................16

In re Hallmark Capital Corp.,
534 F. Supp. 2d 951 (D. Minn. 2007)...................................................................................11

In re IPCom GmbH & Co. KG,
No. 5:14-mc-80037, 2014 U.S. Dist. Lexis 50746 (N.D. Cal. Apr. 10, 2014) ......................17

In re Oxus Gold PLC,
MISC No. 06-82-GEB, 2007 WL 1037387 (D.N.J. Apr. 2, 2007)................................... 12-13

In re Pimenta,
942 F. Supp. 2d 1282 (S.D. Fla. 2013) .................................................................................12

In re Republic of Ecuador,
No. C 11-80171 CRB, 2011 WL 4434816 (N.D. Cal. Sept. 23, 2011) .........................9, 13, 16

In re Roz Trading Ltd.,
469 F. Supp. 2d 1221 (N.D. Ga. 2006) .................................................................................11

Intel Corp. v. Advanced Micro Devices, Inc.,
542 U.S. 241 (2004)....................................................................................................... passim

Kang v. Nova Vision, Inc.,
   No. 06-21575-CIV, 2007 WL 1879158 (S.D. Fla. June 26, 2007)....................................11, 17

LSI Corp. v. Vizio, Inc.,
   No. 12-mc-91068-DJC, 2012 WL 1926924 (D. Mass. May 24, 2012) ....................................19

Minatec Finance S.A.R.L. v. SI Group Inc.,
   Civ. No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ..............18

Minis v. Thomson,
   No. 14-91050-DJC, 2014 WL 1599947 (D. Mass. Apr. 18, 2014) ...................................10, 18

Montblanc-Simplo v. Aurora Due S.r.L.,
   363 F. Supp. 2d 467 (E.D.N.Y. 2005) ....................................................................................2

Sanofi-Aventis v. Sandoz, Inc.,
   272 F.R.D. 391 (D.N.J. 2011)................................................................................................20

**Federal Statutes**

28 U.S.C. § 1782(a) ....................................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 26(b)(1).............................................................................................................18

Fed. R. Civ. P. 34(a)(1)..............................................................................................................18

Fed. R. Civ. P. 45(a)(1)(A)(iii) .................................................................................................18

**INTRODUCTION**

Agfa-Gevaert NV ("Agfa") respectfully requests limited discovery under 28 U.S.C. § 1782 ("Section 1782") from respondents Roland Berger Strategy Consultants LLC ("Roland Berger U.S.") and Roland Berger Strategy Consultants Holding GmbH (the "Roland Berger Partnership" and, together with Roland Berger U.S., "Respondents") for use in a pending arbitration proceeding under the auspices of the International Chamber of Commerce's International Court of Arbitration ("ICC") and in contemplated civil proceedings in Germany against one or more individuals connected with that arbitration.

The arbitration at issue involves an allegation that a subsidiary of Agfa failed to make a sufficient contribution in kind into a German company as part of a divestiture transaction in 2004. In evaluating that allegation, the arbitral tribunal engaged Max Falckenberg, a management consultant and partner at Roland Berger Strategy Consultants (as defined below), as an expert to assess the liquidity available to the legal entity that received the contribution. Through this application, Agfa seeks the production of documents and information about any communications between Mr. Falckenberg and the arbitrator appointed by Agfa's opposing party in the arbitration, evidence of which would be relevant both to a motion to strike the report submitted by Mr. Falckenberg in the arbitration and as the basis for civil claims before the German courts. Agfa thus seeks these materials both for use in connection with its defense against the allegations asserted against it in the arbitration and in support of contemplated civil proceedings in Germany against any persons who may have participated in any such improper communications.

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1782, which as discussed below authorize this Court to grant Agfa discovery from the Respondents for use in foreign proceedings.

**BACKGROUND**

**I.     The Parties**

Petitioner Agfa is a publicly traded Belgian corporation with its headquarters and principal place of business in Belgium.  It is the top holding company of an international group involved in imaging and IT businesses (collectively, the "Agfa-Gevaert Group").  Until 2004, the Agfa-Gevaert Group included a consumer-imaging business, which specialized in the production, development, and sale of analog film and photography finishing and laboratory equipment.

Respondent Roland Berger Partnership is a German limited liability company with its registered headquarters in Germany that owns a network of corporate entities jointly practicing as a single international consulting firm (collectively, "Roland Berger Strategy Consultants").  The members of the Roland Berger Partnership are held out as the "Partners" of Roland Berger Strategy Consultants, which is marketed as a "single worldwide" "genuine" and "independent partnership"[1] "owned" by the firm's "Partners."[2]  While the Roland Berger Partnership is organized under German law as a form of limited liability company akin to an LLC,[3] it holds itself out to the world as a partnership, for example by describing its members as "partners" and in many—if not all—instances having its "partners" also serve as "partners" in the Roland

---

[1]      See, e.g., Ex. 1 ("Our key value 'partnership' is reflected in our company organization: we are an independent partnership wholly owned by our international Partners."); Ex. 2 (describing firm's conversion into a "genuine partnership" in 2010); Ex. 3 (describing the firm as owned "solely by a group of 220 Partners"); Ex. 4 (recruiting pages emphasizing Roland Berger Strategy Consultants' global integration, such as through employee rotations across foreign offices).  References and citations to "Exhibits" and "Ex.," respectively, refer to the exhibits to the accompanying Declaration of Larry C. Work-Dembowski In Support of Application For Discovery Pursuant To 28 U.S.C. § 1782, dated September 25, 2014.

[2]      See supra note 1.  On information and belief, "Roland Berger Strategy Consultants" does not have a legal existence of its own and is instead a term used by the members of the Roland Berger Partnership as the brand of their global consulting practice.

[3]      The Roland Berger Partnership is organized as a German "GmbH," an abbreviation for "Gesellschaft mit beschränkter Haftung"—literally, "company with limited liability"—a form that many U.S. courts treat as analogous to a U.S. limited liability company.  See, e.g., Glen Elec. Holdings GmbH v. Coolant Chillers, Inc., No. 1:10-cv-1109, 2013 WL 2407613, at *1 (W.D. Mich. May 31, 2013) (finding that "Plaintiff Glen Electric Holdings GmbH is a German limited liability company"); Montblanc-Simplo v. Aurora Due S.r.L., 363 F. Supp. 2d 467, 470 (E.D.N.Y. 2005) (explaining that "Plaintiff Montblanc-Simplo GmbH is a limited liability company").

Berger Strategy Consultants offices around the world.[4]  For example, Robert Henske, a "partner" in the Roland Berger Partnership, practices in the Boston office of Roland Berger Strategy Consultants and acts as the "Managing Partner" of the firm's U.S. practice.[5]

Respondent Roland Berger U.S. is a Delaware limited liability company[6] that, on information and belief, is wholly owned by the Roland Berger Partnership and through which Roland Berger Strategy Consultants offers its services in the United States.[7]  On information and belief, the principal place of Roland Berger Strategy Consultants' operations in the United States is Boston, Massachusetts,[8] where the largest number of Roland Berger Strategy Consultants' U.S.-based leadership is seated[9] and where the firm carries out substantial business operations.[10]

## II.    The Related Arbitration And Engagement Of Mr. Falckenberg

In August 2004, Agfa agreed to sell its international consumer-imaging business to an investor group.  Among other things, the transaction required one of Agfa's subsidiaries to transfer the operating assets and liabilities of the consumer-imaging business to a German limited liability company named AgfaPhoto GmbH, in the form of a contribution in kind valued no less than 100 Euro, in exchange for one new share.  The transaction closed—and the contribution into AgfaPhoto GmbH was completed—on November 1, 2004.

---

[4]    See Ex. 5 §§ 4.5 (requiring all "partners" to be members), 11.2.5 (providing that the Partnership may call in a member's shares if he ceases to serve as a "partner" in an affiliated company).  Compare Ex. 6 (listing all of the "partners" listed on the Roland Berger website) with Ex. 7 (list of members).

[5]    Exs. 7-8.

[6]    Ex. 9.

[7]    See, e.g., Ex. 10 (welcoming visitor to the North American website of a "top player in the premier league of international consultancies . . . . conducting business in North America").

[8]    Roland Berger's Boston office is located at Two International Place, 25th Floor, Boston, MA 02110.  Ex. 11.  Roland Berger does not maintain an office in Delaware where Roland Berger U.S. is registered.  See id.

[9]    Eleven members of Roland Berger Strategy Consultants' "management team in North America" work in U.S. offices, five of whom—including Mr. Henske, the managing partner—work in Boston.  Ex. 12.

[10]    Roland Berger Strategy Consultants' Boston office, the "hub" of the firm's services for the North American chemicals industry, Ex. 11, "supports international clients on all strategy issues: from setting up traditional efficiency improvement actions and developing new market strategies to tapping promising business segments."  Ex. 13.  The Massachusetts-based consultants thus provide "a comprehensive range of consulting services."  Ex. 14.

3

On May 20, 2005, following a series of profound changes in the business environment in which the company operated, AgfaPhoto GmbH filed for insolvency in Cologne, Germany, on the basis of illiquidity.  In due course, the Cologne court appointed Dr. Andreas Ringstmeier as insolvency administrator over AgfaPhoto GmbH's estate.  In that capacity, Dr. Ringstmeier has asserted a variety of claims against various entities within the Agfa-Gevaert Group, including a claim that the November 2004 capital contribution was worth less than 100 Euro and that the Agfa-Gevaert Group should be required to compensate the AgfaPhoto GmbH estate for the alleged difference in the division's actual value and the 100 EUR contribution valuation.  The value of the contributed business, as well as what methodology should be applied when calculating that valuation, are thus central issues in the parties' dispute.

In December 2007, Dr. Ringstmeier, in his capacity as insolvency administrator for the estate of AgfaPhoto GmbH (the "Claimant"), commenced an arbitration on this valuation claim against Agfa and several of its subsidiaries under the ICC Rules.  In the arbitration, Dr. Ringstmeier chose as the Claimant's party-appointed arbitrator a German lawyer and law professor named Dr. Wilhelm Haarmann, and the respondent Agfa entities appointed an Austrian lawyer and law professor named Dr. Paul Oberhammer.  The two party-appointed arbitrators, in turn, selected a Swiss lawyer named Dr. Georg von Segesser as Chairman of the arbitral tribunal hearing the Claimant's claims (the "Tribunal").

In early 2011, after the parties had submitted several rounds of briefing and evidence and after the completion of a hearing on the merits of the case, the Tribunal informed the parties that it wished to appoint its own expert to answer questions related to the liquidity and financing

4

available to AgfaPhoto GmbH for the year following the November 2004 contribution.  The Tribunal nominated and subsequently appointed Max Falckenberg.[11]

Mr. Falckenberg does not practice in the field of German corporate valuation accounting and had not been nominated by either party in the arbitration.  The circumstances suggest that the Claimant's selected arbitrator, Professor Haarmann, proposed him.  At the time of Mr. Falckenberg's nomination, Professor Haarmann informed the parties that, a few months earlier, Mr. Falckenberg had spoken at an event organized by Professor Haarmann and hosted at Professor Haarmann's law firm.  Professor Haarmann asserted that his contact with Mr. Falckenberg did not raise a conflict of interest.  Based upon Professor Haarmann's statement and in the absence of any apparent bias or lack of independence on the part of Mr. Falckenberg, Agfa acquiesced to the Tribunal's decision to appoint Mr. Falckenberg.  While Agfa would have preferred the appointment of an expert with appropriate expertise in German valuation accounting, Agfa believed that Roland Berger Strategy Consultants would be well positioned, as an integrated international firm with offices in North America and elsewhere, to evaluate the different international financing sources, including North American credit facilities, the sufficiency and availability of which the parties contested.

In July 2012, Mr. Falckenberg rendered his final report, in which he opined, among other things, that in what he considered the most likely scenario, AgfaPhoto GmbH would have experienced a liquidity shortfall within the first year after the contribution.  Agfa challenged Mr. Falckenberg's conclusion, arguing to the Tribunal that Mr. Falckenberg's report should be removed from the record because Mr. Falckenberg appeared to have conducted his work in a manner biased heavily in favor of the Claimant.  Among other things, Mr. Falckenberg contravened a number of the Tribunal's prior instructions, including by applying the wrong

---

[11]     See Ex. 15.

standard of foreseeability under German law, and he made repeated unjustified assumptions and interpretations that were highly prejudicial to Agfa.  The Tribunal denied Agfa's challenge of Mr. Falckenberg on March 5, 2013.[12]

That same day, Professor Haarmann informed Agfa that he was leaving his law firm to join Linklaters LLP.[13]  However, in doing so, he failed to mention Linklaters' representation of both Roland Berger and entities within the Agfa-Gevaert Group in unrelated proceedings.  In light of these apparent conflicts, Agfa sought Professor Haarmann's removal from the Tribunal, and after Professor Haarmann refused to step down voluntarily, the ICC granted Agfa's request and removed him on April 25, 2013.[14]

Dr. Ringstmeier chose a replacement arbitrator to serve as the Claimant's party-appointed arbitrator.[15]  The reconstituted Tribunal remains in place today.  Mr. Falckenberg's report remains part of the record in the arbitration (though Mr. Falckenberg has since left Roland Berger to join another consulting firm in Germany).[16]  Based on Mr. Falckenberg's report, the Tribunal decided to appoint an additional expert to address the valuation of AgfaPhoto GmbH.  Earlier this year, it proposed Christian Hellbardt of Rödl & Partner GmbH, but shortly before the Tribunal completed the appointment process, Mr. Hellbardt revealed—after additional prompting

---

[12]      Ex. 16.
[13]      Ex. 17.
[14]      In the context of preparing this application, Agfa has learned of contacts between Professor Haarmann and Professor Roland Berger, the founder and Honorary Chairman of Roland Berger Strategy Consultants, which were never disclosed by either Professor Haarmann or Mr. Falckenberg in the arbitration.  In particular, on information and belief, Professor Haarmann had prior to and during the pendency of the arbitration proceeding actively courted Professor Berger as a potential source of business for his personal law practice by inviting him annually to a private event organized by Professor Haarmann for German business leaders in conjunction with the Davos, Switzerland international economic forum.  Ex. 18; Ex. 19 ("Haarmann has been a participant at the World Economic Forum for a little longer than Großmann.  His event is generally held in a restaurant outside Davos, which helps to alleviate the Davos syndrome whereby guests 'hop' from one event to the next in light of their numerous standing invitations. The circle of guests is a little smaller, the atmosphere informal." (emphasis added)).  Agfa was thereby denied its right to inquire as to the exact nature of Professor Haarmann's interactions and relationship with a controlling "Partner" of Roland Berger Strategy Consultants.  Ex. 5 § 8.9.3; see supra note 4.
[15]      See Ex. 20.
[16]      Ex. 21.

by the Tribunal—that he had previously discussed the merits of the Agfa dispute with Claimant's counsel and that Mr. Hellbardt's firm had previously declared itself conflicted in connection with the dispute.[17]  In light of these facts, the Tribunal invited Agfa to make a special cost submission based upon the failure of Claimant's counsel to disclose his earlier contacts with Mr. Hellbardt,[18] and on September 22, 2014, it nominated a different expert: the Swiss firm Balmer-Etienne AG, which will consult with an independent expert on German valuation law.[19]

Following the unexpected revelation of contacts between Claimant's counsel and Mr. Hellbardt, Agfa asked the Tribunal to query whether the previous expert, Mr. Falckenberg, had similar contacts with anyone involved in the arbitration, such as Claimant's counsel or Professor Haarmann—for example, when Mr. Falckenberg spoke at Dr. Haarmann's law firm shortly before his appointment.[20]  The Tribunal declined to pose this question to Mr. Falckenberg because of Agfa's inability at that time to present specific evidence about the contacts in question.[21]  The Tribunal thus indicated that in order for Agfa to challenge Mr. Falckenberg and invalidate his report, Agfa would need to present to the Tribunal evidence of the "actual circumstances leading to the alleged bias."[22]  Agfa seeks such evidence through this application in light of the seemingly biased nature of Mr. Falckenberg's report, his admitted contact with

---

[17]   The Tribunal noted the following about Mr. Hellbardt's "dilatory" disclosure:  "The Tribunal finds it difficult to understand why being contacted by Claimant's legal representative was only mentioned by Mr. Hellbardt after a corresponding follow-up inquiry, and in response to an explanation by the Tribunal of the standard applicable to the disclosure of contacts."  Ex. 22, ¶ 20-21.  The Tribunal further noted, in relation to the failure of Dr. Ringstmeier to reveal the discussions of his counsel with Mr. Hellbardt:  "[T]he call with [counsel for Dr. Ringstmeier] went well beyond a matter of simply being contacted. . . . It should have been possible to expect, that Claimant would disclose this information in consideration of the aspects of procedural due diligence and fairness."  Id. ¶ 22.

[18]   Id.  Dr. Ringstmeier's counsel's failure to disclose these contacts functioned as an affirmative representation that no such contacts had occurred: counsel suggested the absence of these contacts by disclosing in the interest of "extreme precaution" and "the best possible transparency" other banal ostensible conflicts related to Mr. Hellbardt while remaining silent regarding their earlier discussions with him.  Ex. 23, ¶ 20.

[19]   Ex. 24, ¶¶ 1-8, Order.

[20]   Ex. 25.

[21]   Ex. 22, ¶ 23.

[22]   Id.  Dr. Ringstmeier's counsel in the arbitration has asserted that he had no contacts with Mr. Falckenberg.

Professor Haarmann prior to being appointed as an expert, and the recent revelation that Claimant's counsel engaged in improper ex parte discussions with another potential expert in the same proceedings.

Additionally, Agfa believes that undisclosed communications between Mr. Falckenberg and Professor Haarmann may have laid the foundation for Mr. Falckenberg's overwhelmingly one-sided assumptions and treatment of the evidence. If Professor Haarmann communicated his views about the merits of the arbitration and/or how liquidity issues should be addressed and failed to disclose those communications, Agfa would have a basis for a claim for damages under German law against Mr. Falckenberg, Professor Haarmann, or both.

## III. The Requested Discovery

Through this application, Agfa seeks leave to obtain the following discovery from each Respondent:[23]

- documents concerning communications between Mr. Falckenberg or other individuals affiliated with Roland Berger Strategy Consultants and Professor Haarmann or any entity in which he maintained an ownership interest between October 1, 2010 (approximately one month before Mr. Falckenberg spoke at Professor Haarmann's law firm) and September 4, 2012 (when Mr. Falckenberg responded to Agfa's challenge to his final report);[24] and

- a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) concerning any communications between Mr. Falckenberg or other individuals affiliated with Roland Berger Strategy Consultants and Professor Haarmann between October 1, 2010, and September 4, 2012.[25]

## ARGUMENT

Section 1782 is the product of years of congressional effort "to provide federal-court assistance in gathering evidence for use in foreign tribunals." Intel Corp. v. Advanced Micro

---

[23] Agfa does not seek duplicative material as long as one Respondent produces responsive material.
[24] Ex. 16, ¶ 9; Ex. 26, ¶ 4.
[25] In addition, Agfa seeks discovery in relation to the previously undisclosed contacts between Professor Haarmann and Professor Berger in connection with events organized or hosted by Professor Haarmann. See supra note 14.

Devices, Inc., 542 U.S. 241, 247 (2004).  If an applicant for discovery under Section 1782 satisfies the prerequisites set forth in the text of the statute, a court may exercise its discretion to grant the application, guided by the four factors identified in the Supreme Court's Intel decision. As explained below, Agfa has carried the "minimal" statutory burden imposed on Section 1782 applicants, see In re Republic of Ecuador, No. C 11-80171 CRB, 2011 WL 4434816, at *1 (N.D. Cal. Sept. 23, 2011) (describing an applicant's burden under Section 1782), and the Intel factors all favor granting Agfa's application.

**I.     Agfa's Application Satisfies Each Of Section 1782's Statutory Requirements**

Section 1782 provides in relevant part that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person."  28 U.S.C. § 1782(a).[26]  Courts have distilled three core requirements from this statutory text.  A Section 1782 applicant must establish that (1) it is an "interested person," (2) the discovery is "for use in a foreign proceeding in a foreign tribunal or international tribunal," and (3) the person from whom discovery is sought "resides or is found" in the district of the court that would order the discovery.  Chevron Corp. v. Shefftz, 754 F. Supp. 2d 254, 260 (D. Mass. 2010); see also Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012) (similar).  Agfa's application easily meets these requirements.

**A.     Agfa is an "interested person."**

Agfa is an "interested person" for two independent reasons.  First, it is party to ongoing arbitration proceedings in which any evidence obtained as a result of this application will be used, and second, it would be a litigant in potential civil proceedings in Germany against Professor

---

[26]     The statute also provides that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."  Agfa is not aware of any legally applicable privileged that is likely to apply to the materials sought in this application.

Haarmann and/or Mr. Falckenberg based on such evidence. The Supreme Court has held that an "interested person" under the statute is someone with a "reasonable interest in obtaining judicial assistance." Intel, 542 U.S. at 256. The term, which "plainly reaches beyond the universe of persons designated 'litigant,'" id., thus extends to Agfa both as a party to the Arbitration and as a potential litigant in German civil proceedings. See id. at 256 (applying the term to complainants who trigger European Commission investigations); Minis v. Thomson, No. 14-91050-DJC, 2014 WL 1599947, at *3 (D. Mass. Apr. 18, 2014) (holding that nonparty village officials who verified and signed a complaint in the foreign litigation were covered by statutory term).

**B.    Agfa seeks the discovery for use in "a proceeding in a foreign or international tribunal."**

As noted above, Agfa seeks discovery for use in two proceedings: the ICC arbitration brought by Dr. Ringstmeier and potential civil proceedings against Professor Haarmann and/or Mr. Falckenberg. Section 1782 empowers this Court to order discovery for use in each.

1.    The ICC arbitration

The majority of courts have concluded that Section 1782 permits discovery in aid of private arbitration proceedings. Shefftz, 754 F. Supp. 2d at 260. Indeed, this Court has so held at least twice. See id. at 260 (granting Section 1782 application for discovery in aid of UNCITRAL arbitration); In re Babcock Borsig AG, 583 F. Supp. 2d 233, 238-239 (D. Mass. 2008) (granting Section 1782 application for discovery in aid of an ICC arbitration).[27] Although the First Circuit has not decided the issue, a number of other courts have reached the same conclusion as this Court. See, e.g., Comisión Ejecutiva, Hidroeléctrica Del Río Lempa v. Nejapa

---

[27]    Some courts have distinguished between arbitrations that operate under UNCITRAL Rules and those that do not. However, this Court has never held that it considers this distinction material and indeed has suggested it does not. See Shefftz, 754 F. Supp. 2d at 260 (citing case involving ICC arbitration for proposition that the "majority of courts" have permitted discovery under Section 1782 for use in private arbitration proceedings). Indeed, the United Nations plays no role in administering arbitrations conducted pursuant to the UNCITRAL Rules, which are ordinary commercial arbitration proceedings.

Power Co., C.A. No. 08-135-GMS, 2008 WL 4809035 (D. Del. Oct. 14, 2008) (denying motion to reconsider court's decision to permit discovery in aid of private foreign arbitration), vacated as moot, 341 F. App'x 821 (3d Cir. 2009); In re Hallmark Capital Corp., 534 F. Supp. 2d 951, 954-55 (D. Minn. 2007) (permitting discovery in aid of private Israeli arbitration); In re Roz Trading Ltd., 469 F. Supp. 2d 1221, 1226 (N.D. Ga. 2006) (permitting discovery in aid of proceeding before the International Arbitral Centre of the Austrian Federal Economic Chamber in Vienna). These decisions are consistent with the Supreme Court's refusal in Intel to narrow the statute beyond its terms. See, e.g., Intel, 542 U.S. at 263 n.15 ("Congress left unbounded by categorical rules the determination whether a matter is proceeding 'in a foreign or international tribunal.'"); In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *5 (S.D.N.Y. Dec. 29, 2006) (refusing to "engraft" additional restriction not expressly stated in Section 1782); see also Intel, 542 U.S. at 257-58 (explaining that Section 1782 applies to proceedings before quasi-judicial tribunals, and citing with approval a statement by the statute's principal drafter that the term "tribunal" encompasses arbitral tribunals).

2.      Agfa's contemplated German court proceedings

A German court undisputedly qualifies as a "foreign . . . tribunal." See, e.g., Kang v. Nova Vision, Inc., No. 06-21575-CIV, 2007 WL 1879158 (S.D. Fla. June 26, 2007) (noting the "substantial amount of case law" where courts have found German courts to be an "appropriate forum for § 1782 assistance"). As such, Agfa is entitled to discovery for use in the potential civil proceedings it would, if appropriate, pursue in German court against Professor Haarmann and/or Mr. Falckenberg.

Section 1782 permits discovery in aid of any adjudicative proceeding within "reasonable contemplation." Intel, 542 U.S. at 259. In light of the known interaction between Professor Haarmann and Mr. Falckenberg before Mr. Falckenberg's appointment, Professor Haarmann's

11

failure to recognize his own conflict of interest, the biased nature of Mr. Falckenberg's report, and the subsequent disqualification of Mr. Hellbardt in light of his belated disclosure of communications with Claimant's counsel, Agfa's claims against Professor Haarmann and/or Mr. Falckenberg are well within reasonable contemplation. See In re Pimenta, 942 F. Supp. 2d 1282, 1284, 1287 (S.D. Fla. 2013) (permitting discovery where applicant claimed a "reasonable foundation" to believe the potential defendant had committed wrong). Agfa has substantial motivation to pursue litigation to recover not only legal costs that have been needlessly spent to address Mr. Falckenberg's report but additional damages as well.

Agfa need show nothing more to obtain discovery under Section 1782. Courts routinely permit Section 1782 discovery even when the future proceeding may never occur or is contingent on the discovery itself. See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262, 1270-71 (11th Cir. 2014) (permitting discovery where applicant had only "possible indicia" that the potential defendants "may" have done wrong, and without "the evidence it seeks pursuant to the instant discovery application" the applicant could not bring the lawsuit it alleged it "may" file); In re Oxus Gold PLC, MISC No. 06-82-GEB, 2007 WL 1037387, at *6 (D.N.J. Apr. 2, 2007) (permitting discovery that could be used only if a foreign tribunal ultimately remanded then-pending proceedings); In re Pimenta, 942 F. Supp. 2d at 1284, 1287 (permitting discovery where applicant claimed a "reasonable foundation" to believe the potential defendant had done wrong).

### C.     Each Respondent "resides or is found" in Massachusetts.

#### 1.     Roland Berger U.S.

Roland Berger U.S. "resides or is found" in Massachusetts because its Boston office is the principal place of business through which Roland Berger Strategy Consultants does business in the United States. See, e.g., In re Bayer Healthcare LLC, No. C 14-80138 WHA, 2014 WL

3805807, at *1 (N.D. Cal. May 14, 2014) (finding corporate Section 1782 respondent in district where it had its "principal place of business"); In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf, 2006 WL 3844464, at *4 (finding corporate Section 1782 respondent in district because it "maintains its headquarters" there). As explained above, in addition to maintaining substantial and ongoing operations in Boston, more members of the U.S-based leadership of Roland Berger Strategy Consultants are based in Boston than in any other U.S office.[28] Likewise, the managing partner of Roland Berger Strategy Consultants' U.S practice is based in the firm's Boston office.[29] Roland Berger U.S. thus clearly "resides or is found" in Boston. See In re Oxus Gold PLC, 2007 WL 1037387, at *4 (affirming magistrate judge's holding that individual, though not a resident of the district, was nonetheless found there).

The heavy local presence and concentration of leadership personnel in Boston is more than sufficient to justify a finding that Roland Berger U.S. "resides or is found" in Massachusetts. See In re Application of Inversiones y Gasolinera Petroleos Vanezuela, S. de R.L., No. 08-20378-MC, 2011 WL 181311, at *7 (S.D. Fla. Jan. 19, 2011) (allowing discovery where respondent undertook "systematic and continuous local activities" in the district, despite being neither incorporated nor headquartered there); In re Republic of Ecuador, 2011 WL 4434816, at *2 (finding corporate respondent in district because it "maintains an office" there); see also In re Application of Setraco Nigeria Ltd., No. 3:13-mc-16-32MCR, 2013 WL 3153902, at *2 (M.D. Fla. June 19, 2013) (finding Section 1782 respondent bank within district based on presence of a local branch at which an entity related to the foreign proceeding had maintained an account).

---

[28] See supra notes 8-10.
[29] See supra note 5.

13

2.      The Roland Berger Partnership

The Roland Berger Partnership also "resides or is found" in Massachusetts. As explained above, the members of the Roland Berger Partnership hold themselves out as the "Partners" of Roland Berger Strategy Consultants, which is marketed as a single, independent, global partnership with an office in Boston.[30] At least one member of that "Partnership" practices in Boston as the "Managing Partner" for the U.S. practice of Roland Berger Strategy Consultants.[31]

While, as noted above, the Roland Berger Partnership is organized under German law as a "GmbH," not a de jure partnership, the Roland Berger Partnership promotes Roland Berger Strategy Consultants as an integrated partnership with an office and senior U.S. management (Mr. Henske) in this district. In evaluating Mr. Falckenberg's candidacy to serve as an expert, Agfa relied upon these representations that Roland Berger Strategy Consultants is an international firm with U.S. operations capable of evaluating a transaction with complex multinational dimensions.[32] Accordingly, the Court should treat the Roland Berger Partnership as a partnership as a matter of law and deem it "found" in this district under Section 1782. See Gosselin v. Webb, 242 F.3d 412, 415 (1st Cir. 2001) (describing test for partnership by estoppel); Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 56 (1st Cir. 2002) (describing partnership by estoppel and the equally applicable agency by estoppel doctrine).

In particular, where individuals or entities hold themselves out as partners (or as agents or joint ventures), in-state contacts may be imputed to out-of-state individuals or entities consistent with the requirements of due process for purposes of establishing personal jurisdiction. Daynard, 290 F.3d at 56-57 ("We think it consistent with the Due Process Clause to attribute to the

---

[30]     See supra notes 1-5.
[31]     See supra note 5.
[32]     See supra Section II; Ex. 27 (desiring a highly qualified expert, relying on publicly available information in considering the qualifications of proposed experts, and raising qualifications-related objections to some experts but not others); see also, e.g., Ex. 28 (showing that the Roland Berger website made similar representations around the time Mr. Falckenberg was appointed as expert).

14

Scruggs defendants the Motley defendants' retention of, and certain interactions with, Daynard where, as Daynard alleges, they have led Daynard and the public to believe they were joint venturers."). A fortiori, the Roland Berger Partnership "resides or is found" in Massachusetts by virtue of the presence in Boston of Roland Berger Strategy Consultants and its partners (including at least one member of the Roland Berger Partnership). See In re Edelman, 295 F.3d 171, 179 (2d Cir. 2002) ("Given that this so-called tag jurisdiction is consistent with due process, we do not think that § 1782(a), which is simply a discovery mechanism and does not subject a person to liability, requires more.").

## II.    The Court Should Exercise Its Discretion to Order Discovery

The Supreme Court has held that district courts exercising their discretion under Section 1782 should consider (1) whether the discovery target is "a participant in the foreign proceeding," (2) whether the discovery request is "unduly intrusive or burdensome," (3) the nature of the foreign tribunal, the character of the foreign proceedings, and the "receptivity" of the foreign tribunal to U.S. judicial assistance, and (4) whether the Section 1782 request reflects an attempt to circumvent the United States' or a foreign country's policies or discovery limitations. Intel, 542 U.S. at 264-65. These factors strongly favor granting Agfa's application for discovery.

First, Respondents are not party to any current foreign proceeding involving Agfa or any of its affiliates relating to the insolvency of AgfaPhoto GmbH.

Second, the discovery requests are narrowly tailored, and Roland Berger Strategy Consultants is tightly integrated, with each affiliate having easy access to a common, cloud-based computer network. In addition to being under integrated international management and ownership, the offices of Roland Berger Strategy Consultants are supported by information technology and operational infrastructures designed to enable seamless, interoffice information sharing on international consulting projects, a key capacity the firm vaunts when promoting its

15

services.[33]  Respondents will thus have no difficulty accessing information regarding the contacts that are the subject of this application.  See, e.g., In re ex parte Application of Ontario Principals' Council, No. 5:13-mc-80237-LHK-PSG, 2013 WL 6073517, at *3 (N.D. Cal. Nov. 8, 2013) (finding no burden where "narrowly tailor[ed]" discovery request for discrete information about a "discrete set" of individuals would be of "obvious aid" to the foreign tribunal); In re Application of Inversiones y Gasolinera Petroleos Valezuela, S. de R.L., 2011 WL 181311, at *13 (finding that requests "narrowly tailored to the issues presented in the [foreign proceeding]" were not unduly burdensome where opposing party relied on "conclusory allegations" of burden).

Third, both the Tribunal and the German courts are receptive to U.S. judicial assistance. Although the Tribunal declined to investigate Mr. Falckenberg's contacts with Professor Haarmann, it did so on the grounds that Agfa had failed to present sufficient evidence of the improper communications.  As illustrated by the Tribunal's disqualification of Mr. Hellbardt as an expert, if the instant proceedings result in the disclosure of evidence of improper contacts between Professor Haarmann and Mr. Falckenberg—evidence Agfa now seeks—Agfa would have strong grounds for moving to strike Mr. Falckenberg's report from the arbitration proceeding.  See In re Republic of Ecuador, 2011 WL 4434816, at *3 (finding Section 1782 discovery to be an "appropriate[]" attempt by the applicants to obtain documents "on their own" in light of arbitration tribunal's procedure predicating discovery from the respondents on the applicants' inability to obtain the documents on their own).  Nor would there be any barrier in rule, law, doctrine, or prior decision by the Tribunal to prevent the Tribunal from considering any such evidence.  See, e.g., In re Astra Medica, S.A., 981 F.2d 1, 7 n.6 (1st Cir. 1992) ("The district court need not explore whether the information the applicants seek is admissible in the

---

[33]     See, e.g., supra notes 1-5; Exs. 29-31; Video Interview with Roland Berger's Chief Intelligence Officer at 1:56, http://itelligencegroup.com/uk/crprtinsights/sap-helps-roland-strategy-consultants-run-better ("You just push a button, and you basically get the data you want.").

foreign jurisdiction or other issues of foreign law."), abrogated on other grounds by Intel, 542 U.S. 241; see also Intel, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from U.S. federal courts."); In re Chevron Corp., 633 F.3d 153, 163 (3d Cir. 2011) (explaining that a foreign court "might offer limited discovery opportunities yet accept relevant evidence tendered to it if procured without its assistance").

The evidence sought in this application could also be used in civil proceedings before a German court, and U.S. courts have repeatedly found German courts receptive to U.S. judicial assistance. See, e.g., In re IPCom GmbH & Co. KG, No. 5:14-mc-80037, 2014 U.S. Dist. Lexis 50746, at *7-8 (N.D. Cal. Apr. 10, 2014) (finding German court receptive to Section 1782 discovery in the absence of any suggestion to the contrary, and noting that U.S. courts routinely permit Section 1782 discovery in aid of German proceedings); Kang v. Nova Vision, Inc., 2007 WL 1879158, at *2 ("[T]here exists a substantial amount of case law where courts have found that German commercial courts are an appropriate forum for § 1782 assistance.").

Finally, the requested discovery would not circumvent any U.S. or foreign discovery policies or limitation. Agfa is unaware of any policy or limitation that would apply, and it seeks the discovery in good faith. See Shefftz, 754 F. Supp. 2d at 262 ("The third Intel factor—whether Petitioner is attempting to circumvent foreign proof-gathering restrictions—weighs heavily in favor of granting discovery. . . . The inquiry here is whether the discovery is being sought in bad faith.").

**III.   Agfa's Discovery Requests Are Proper Under Section 1782 And The Federal Rules**

    **A.   The requested discovery is relevant.**

Relevant information is "presumptively discoverable" under Section 1782. In re Bayer AG, 146 F.3d 188, 196 (3d Cir. 1988) ("Inasmuch as relevant evidence is presumptively

17

discoverable under § 1782, the burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application, should rest with the party opposing the application . . . ."); Minis, 2014 WL 1599947, at *1-2 (finding discovery "intended for use before a foreign tribunal" because, among other things, the discovery was "relevant" to the applicants' allegations in the foreign proceedings); Shefftz, 754 F. Supp. at 267 n.97 (similar); Minatec Finance S.A.R.L. v. SI Group Inc., Civ. No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *8-9 (N.D.N.Y. Aug. 18, 2008) (ordering discovery where the material sought was relevant, and explaining that "pertinen[ce]" is the controlling inquiry with respect to whether the request is unduly burdensome).  The discovery Agfa seeks is thus appropriate under Section 1782 because it is relevant to Agfa's defense against Dr. Ringstmeier's claims and the erroneous conclusions in Mr. Falckenberg's report.  See also In re Chevron Corp., 633 F.3d at 161 (affirming grant of Section 1782 discovery where discovery was meant to adduce evidence of improper behavior before the foreign tribunal).  It is also relevant to Agfa's contemplated claims against Professor Haarmann and/or Mr. Falckenberg.  See Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." (emphasis added)).

**B.      The requested discovery is permissible under the Federal Rules.**

Agfa is entitled to seek all documents in the possession, custody, or control of the Respondents.  See Fed. R. Civ. P. 34(a)(1); Fed. R. Civ. P. 45(a)(1)(A)(iii).  Because Roland Berger Strategy Consultants is an integrated firm in every sense,[34] each Respondent has possession, custody, or control of the requested information.  See, e.g., Capital Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp., No. 12-10085-RWZ, 2014 WL 1431124, at *5 (D. Mass. Apr. 14, 2014) (explaining that courts have ordered parties to produce documents held by

---

[34]      See supra notes 1-5, 33.

corporate affiliates in light of their and their affiliates' "interlocking corporate structure, the nature of the relationships between affiliates, and their . . . ability to access or obtain the relevant documents for usual business"); Correia v. Town of Framingham, No. 12-10828-NMG, 2013 WL 952332, at *3 (D. Mass. Mar. 8, 2013) (explaining that a party's personnel file was within his "possession, custody, or control" under Rule 34 because he could access it on demand); LSI Corp. v. Vizio, Inc., No. 12-mc-91068-DJC, 2012 WL 1926924, at *5 (D. Mass. May 24, 2012) ("[C]ourts have regularly permitted discovery of information from one corporation based on its relationship with, and ability to obtain documents from, a related corporate entity."); Addamax Corp. v. Open Software Found., Inc., 148 F.R.D. 462, 467-68 (D. Mass. 1993) (explaining that documents a company can "access" or "obtain" are in its possession, custody or control and ordering U.S. entity to produce documents from the files of its German parent company).

Moreover, German law gives the members of a GmbH the legal right to obtain information from the company.[35]  This means that under German law, the Massachusetts-based members of the Roland Berger Partnership have legal control over information in the possession, custody, or control of the Roland Berger Partnership, which in turn—in light of the integrated nature of the firm—has legal control over information in the possession, custody, or control of its worldwide subsidiaries.  See, e.g., Correia, 2013 WL 952332, at *3 (citing law providing employees the right to receive personnel files upon request).

For similar reasons, Agfa is entitled to depose corporate representatives under Federal Rule 30(b)(6) about any relevant actions that Mr. Falckenberg took on behalf of Roland Berger Strategy Consultants and the information within Roland Berger Strategy Consultants' possession, custody, or control.  See, e.g., Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., 201 F.R.D. 33, 39 (D. Mass. 2001) (invoking Federal Rule 34 standard to require Rule 30(b)(6) company

---

[35]     Ex. 32.

19

representative to review tax documents in possession of company's accountant where it had "legal right and the practical ability" to do so); Sanofi-Aventis v. Sandoz, Inc., 272 F.R.D. 391, 394 (D.N.J. 2011) ("The limited amount of authority that has directly addressed whether a 30(b)(6) deponent must prepare its witness with knowledge from a related entity demonstrates that the 'or reasonably available' language of Rule 30(b)(6) can extend to information held by corporate affiliates.").

Although Mr. Falckenberg has left Roland Berger Strategy Consultants, he still appears to be a member of the Roland Berger Partnership.[36] As a member, he remains subject to a duty of loyalty under German law that requires him to share with the firm any knowledge he gained in connection with his work there.[37] And even if Mr. Falckenberg were no longer a member, German law would impose a post-contractual duty of loyalty and to provide information applicable to any job-related knowledge he acquired there.[38]

## CONCLUSION

For the foregoing reasons, Agfa respectfully requests that this Court enter an order pursuant to Section 1782 granting leave to serve the subpoenas attached as Exhibits A to D.[39]

Dated: September 26, 2014

---

[36] Ex. 7.
[37] See, e.g., Ex. 33, ¶¶ 88, 172.
[38] See Ex. 34, ¶ 51.
[39] The subpoenas have been left undated pending the Court's ruling on this application.

20

Respectfully submitted,

AGFA-GEVAERT NV

By Its Attorneys,

/s/      Julie E. Green
Nicholas B. Carter (BBO# 561147)
Julie E. Green (BBO# 645725)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
ncarter@toddweld.com
jgreen@toddweld.com

Christopher P. Moore (*pro hac vice application pending*)
Nathaniel E. Jedrey (*pro hac vice application pending*)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
City Place House, 5 Basinghall Street
London EC2V 5EH, England
+44 20 7614 2200
cmoore@cgsh.com
njedrey@cgsh.com

21