Exhibit 5

# S A T Z U N G

### der

## Roland Berger Strategy Consultants Holding GmbH

(Fassung nach Änderung vom 8. März 2014)

Satzung RBSCH

§ 1 Firma, Sitz, Geschäftsjahr .................................................................................................. 3
    1.1    Firma ................................................................................................................. 3
    1.2    Sitz .................................................................................................................... 3
    1.3    Geschäftsjahr .................................................................................................... 3
§ 2 Gegenstand des Unternehmens .......................................................................................... 3
§ 3 Dauer der Gesellschaft ....................................................................................................... 3
§ 4 Stammkapital / Geschäftsanteile ........................................................................................ 3
§ 5 Organe der Gesellschaft ..................................................................................................... 5
§ 6 Geschäftsführung und Vertretung ....................................................................................... 7
    6.1    Geschäftsführung .............................................................................................. 7
    6.2    Zustimmungsbedürftige Geschäfte .................................................................... 8
§ 7 Aufsichtsrat ......................................................................................................................... 8
    7.1    Besetzung, Amtszeit ......................................................................................... 8
    7.2    Einberufung, Form und Frist .............................................................................. 9
    7.3    Beschlussfähigkeit, Abstimmung, Wirksamkeit ................................................. 9
§ 8 Gesellschafterversammlung, Beschlussfassung, Stimmrecht ............................................. 9
    8.1    Gesellschafterversammlung .............................................................................. 9
    8.2    Einberufung ....................................................................................................... 9
    8.3    Form und Frist ................................................................................................... 9
    8.4    Leitung .............................................................................................................. 10
    8.5    Protokoll ............................................................................................................ 10
    8.6    Vertretung ......................................................................................................... 10
    8.7    Stimmrecht ....................................................................................................... 10
    8.8    Beschlussfähigkeit ............................................................................................ 10
    8.9    Mehrheiten ........................................................................................................ 10
    8.10   Beschlussfassung außerhalb von Gesellschafterversammlungen ..................... 11
    8.11   Wirksamkeit ...................................................................................................... 11
§ 8a Subscription Committee .................................................................................................... 11
§ 9 Jahresabschluss / Gewinnermittlung / Gewinnverwendung ................................................ 12
§ 10 Aufnahme neuer und Erhöhung der Beteiligung von Gesellschaftern; Entlassung von
Gesellschaftern .......................................................................................................................... 13
§ 11 Einziehung von Geschäftsanteilen .................................................................................... 14
§ 12 Vergütung bei Einziehung oder Erwerb von Geschäftsanteilen ........................................ 15
    12.1   Berechnung der Vergütung für eingezogene oder nach § 11.5 oder aufgrund Vereinbarung
mit der Gesellschaft übertragene Geschäftsanteile .................................................................. 15
    12.2   Ausscheidensvergütung für Altgesellschafter .................................................. 16
§ 13 Schlussbestimmungen ...................................................................................................... 16
    13.1   Gründungsaufwand .......................................................................................... 16
    13.2   Neuordnung der Roland Berger-Gruppe ........................................................... 17

Satzung RBSCH

## § 1 Firma, Sitz, Geschäftsjahr

**1.1     Firma**

Die Firma der Gesellschaft lautet:

### Roland Berger Strategy Consultants Holding GmbH

**1.2     Sitz**

Die Gesellschaft hat ihren Sitz in München.

**1.3     Geschäftsjahr**

Das Geschäftsjahr der Gesellschaft ist das Kalenderjahr.

## § 2 Gegenstand des Unternehmens

**2.1**     Gegenstand des Unternehmens ist die strategische und operative Unternehmensberatung, die Marketing-, Unternehmens- und Wirtschaftsforschung, Aus- und Weiterbildung von Dritten und die Personalberatung auf nationaler und internationaler Ebene sowie alle damit zusammen-hängenden Tätigkeiten. Ausgenommen sind Beratungsleistungen, die ausdrücklich nach gesetzlichen Vorschriften untersagt sind.

Gegenstand des Unternehmens ist ferner die Übernahme und Verwaltung von Beteiligungen an Unternehmen, die Erbringung von Leistungen aller Art für diese Beteiligungsgesellschaften und Dritte, z.B. Verwaltungsleistungen, Management-Leistungen, das Vermieten von Gegenständen des Anlagevermögens und von Räumen und sonstige wirtschaftliche Dienstleistungen.

**2.2**     Die Gesellschaft kann alle Geschäfte tätigen, die mit dem Gesellschaftszweck in Verbindung stehen oder diesen fördern, sie kann im In- und Ausland Tochtergesellschaften, Zweigniederlassungen und Stiftungen errichten sowie Beteiligungen an anderen Unternehmen erwerben.

**2.3**     Die Gesellschaft ist bei der Durchführung ihrer Aufgaben frei von Lieferinteressen. Sie wird ausschließlich als Treuhänderin ihrer Auftraggeber tätig.

**2.4**     Die Gesellschaft ist zur Wahrung der Verschwiegenheit bei ihrer gesamten Tätigkeit verpflichtet.

## § 3 Dauer der Gesellschaft

Die Gesellschaft ist auf unbestimmte Zeit errichtet.

## § 4 Stammkapital / Geschäftsanteile

**4.1**     Das Stammkapital der Gesellschaft beträgt EUR 783.600.

Satzung RBSCH

4.2    Ausstehende Stammeinlagen und Zuzahlungen sind auf Anforderung der Geschäftsführung innerhalb der von der Geschäftsführung festgesetzten Frist und in Ermangelung der Festsetzung einer Frist unverzüglich einzuzahlen.

4.3.    Das Stammkapital der Gesellschaft ist in Geschäftsanteile eingeteilt, die an dem auszuschüttenden Gewinn der Gesellschaft im Verhältnis ihrer Nominalbeträge teilnehmen. Eigene Geschäftsanteile sind vom Gewinnbezugsrecht ausgeschlossen.

4.4    Vorbehaltlich abweichender Festsetzungen im Kapitalerhöhungsbeschluss werden Geschäftsanteile grundsätzlich gegen Bareinlage des nachfolgend jeweils aufgeführten Einlagebetrags („Referenzpreis") wie folgt ausgegeben:

— Geschäftsanteile im Nominalbetrag von EUR 1.400 zu einem Referenzpreis von EUR 100.000;

— Geschäftsanteile im Nominalbetrag von EUR 3.500 zu einem Referenzpreis von EUR 250.000;

— Geschäftsanteile im Nominalbetrag von EUR 7.000 zu einem Referenzpreis von EUR 500.000.

Für Geschäftsanteile mit abweichenden Nominalbeträgen erhöht bzw. vermindert sich der Referenzpreis entsprechend. Die vorstehenden Vorgaben gelten entsprechend für die Veräußerung von Geschäftsanteilen, die die Gesellschaft selbst hält.

4.5    Grundsätzlich sollen Personen, die in der Roland Berger-Gruppe den Status eines Partners haben, in folgender Höhe an der Gesellschaft beteiligt sein:

— Partner mit Partnerstatus „P1" mit Geschäftsanteilen im Nominalbetrag von insgesamt EUR 1.400;

— Partner mit Partnerstatus „P2" mit Geschäftsanteilen im Nominalbetrag von insgesamt EUR 3.500;

— Partner mit Partnerstatus „P3" mit Geschäftsanteilen im Nominalbetrag von insgesamt EUR 7.000.

4.6    Geschäftsanteile können an die Gesellschaft selbst oder an den Gesellschafter Prof. Dr. h.c. Roland Berger abgetreten werden. Die Übertragung von Anteilen an einen Dritten, der in der Roland Berger-Gruppe den Status eines Partners hat, erfordert die Zustimmung des Subscription Committees. Das Subscription Committee soll die Zustimmung grundsätzlich erteilen, soweit durch den Erwerb des Geschäftsanteils Summe der Nominalbeträge, die auf alle von einem Partner gehaltenen Geschäftsanteile entfallen, folgende Beträge nicht überschreiten: für einen Partner mit dem Partnerstatus „P1" EUR 7.000 (entspricht einem Referenzpreis von insgesamt EUR 500.000), für einen Partner mit dem Partnerstatus „P2" EUR 14.000 (entspricht einem Referenzpreis von insgesamt EUR 1.000.000) und für einen Partner mit dem Partnerstatus „P3" EUR 28.000 (entspricht einem Referenzpreis von insgesamt EUR 2.000.000). Die Abtretung von Geschäftsanteilen an sonstige Dritte erfordert die Zustimmung der Gesellschafterversammlung mit einer Mehrheit von mindestens 75 % aller vorhandenen Stimmen, zu denen auch die Stimme des Gesellschafters Prof. Dr. h.c. Roland Berger gehö-

ren muss. Die Begründung von Treuhandverhältnissen an Geschäftsanteilen bedarf der vorherigen Zustimmung der Gesellschaft.

### § 5 Organe der Gesellschaft

**5.1    Organe**

Die Gesellschaft hat insbesondere folgende Organe:

5.1.1    Geschäftsführung (§ 6), die die Geschäfte der Gesellschaft führt und diese vertritt;

5.1.2    Aufsichtsrat (§ 7), mit der insbesondere in § 5.2 und § 5.3 aufgeführten Zuständigkeit;

5.1.3    Gesellschafterversammlung (§ 8), mit insbesondere den in § 5.2.3 und § 5.4 aufgeführten Zuständigkeiten;

5.1.4    Subscription Committee (§ 8a).

**5.2    Befugnisse und Pflichten der Geschäftsführung**

Die Geschäftsführung führt die Geschäfte der Gesellschaft nach Maßgabe der gesetzlichen und der folgenden Bestimmungen:

5.2.1    Die Geschäftsführung hat vor der Durchführung von außerordentlichen Geschäften den Aufsichtsrat zu konsultieren, insbesondere

   (i)     bei Veränderungen in der Geschäftsführung bzw. im Management bei Tochtergesellschaften oder Niederlassungen der Gesellschaft,

   (ii)    bei wesentlichen strategischen Überlegungen der Gesellschaft.

5.2.2    Vor der Durchführung der folgenden Geschäfte hat die Geschäftsführung die Zustimmung des Aufsichtsrats einzuholen:

   (i)     Vornahme von Satzungsänderungen bei Tochtergesellschaften der Gesellschaft und Unterbreitung von Vorschlägen zu Satzungsänderungen bei der Gesellschaft an die Gesellschafterversammlung,

   (ii)    Änderung der Unternehmensstrategie der Gesellschaft und der Roland Berger Gruppe sowie Aufstellung von Business Plänen und der jeweiligen Jahresbudgets,

   (iii)   Bestellung von Geschäftsführern bei Roland Berger Strategy Consultants GmbH, die nicht auch Geschäftsführer der Gesellschaft sind;

   (iv)    Investitionen im Volumen ab Euro 500.000,--, einschließlich,

   (v)     Hypothekarische oder anderweitige Belastung von Teilen des Vermögens der Gesellschaft sowie Erwerb und Veräußerung von Grundstücken,

   (vi)    Übernahme von Garantien oder Bürgschaften für Verbindlichkeiten Dritter ab Euro 5.000.000,-- oder zum Abschluss dahingehender Vereinbarungen,

(vii)   Erwerb, Errichtung, Schließung oder Veräußerung von wesentlichen Tochter-gesellschaften, Niederlassungen oder Stiftungen oder Erwerb oder Veräuße-rung der wesentlichen Vermögensgegenstände,  des gesamten oder eines wesentlichen Teils des Geschäftsbetriebs einer Tochtergesellschaft,

(viii)  Aufnahme oder Aufgabe von Geschäftszweigen,

(ix)    Begründung und Aufhebung von stillen Gesellschaftsverträgen;

(x)     Grundlegende organisatorische Veränderungen bei der Gesellschaft oder we-sentlichen Tochtergesellschaften;

(xi)    die Eingehung von Dauerschuldverhältnissen, die eine Gesamtverpflichtung im Volumen von mehr als Euro 1.000.000 begründen.

5.2.3   Vor der Durchführung der folgenden Geschäfte hat die Geschäftsführung die Zustim-mung der Gesellschafterversammlung einzuholen:

(i)     Grundlegende Veränderungen im Entlohnungssystem von Gesellschaftern bei der Gesellschaft und deren Tochtergesellschaften. Die Beschlussfassung be-darf der Mehrheit von 75% der bei Beschlussfassung vertretenen Stimmen.

(ii)    Grundlegende Veränderungen beim Verfahren der Verleihung des Status ei-nes Partners in der Roland Berger-Gruppe.

Zu entsprechenden Beschlussvorschlägen ist vorab der Aufsichtsrat zu konsultieren, dessen Stellungnahme dem jeweiligen Beschlussvorschlag beizufügen ist.

**5.3     Aufgaben und Befugnisse des Aufsichtsrats**

Der Aufsichtsrat hat die folgenden Aufgaben und Befugnisse:

5.3.1   die Erstellung einer Vorschlagsliste für die Wahl des Vorsitzenden der Geschäftsfüh-rung (CEO) durch die Gesellschafterversammlung sowie die Bestellung des von der Gesellschafterversammlung gewählten CEO und der weiteren Geschäftsführer(s) auf Vorschlag des CEO,

5.3.2   die Vertretung der Gesellschaft gegenüber dem CEO und der weiteren Geschäftsfüh-rer einschließlich der Abberufung des CEO und der weiteren Geschäftsführer; für den Abschluss oder die Änderung von Verträgen mit dem CEO und weiteren Geschäfts-führern der Gesellschaft ist ausschließlich der Vorsitzende des Aufsichtsrats zustän-dig,

5.3.3   die Beratung und Überwachung der Geschäftsführung,

5.3.4   die Beratung und Beschlussfassung über außerordentliche Geschäfte, soweit nicht die Zuständigkeit anderer Gremien gegeben ist,

5.3.5   die Stellungnahme zu Beschlussvorschlägen der Geschäftsführung gemäß § 5.2.3,

5.3.6   die Stellungnahme zu Beschlussvorschlägen der Geschäftsführung an die Gesell-schafterversammlung gemäß § 5.4, mit Ausnahme von Beschlüssen nach §§ 5.4.4,

Satzung RBSCH

5.4.5, 5.4.6 und 5.4.8; sofern der Beschlussgegenstand in die Zuständigkeit eines nach § 7.1 Satz 6 gebildeten Ausschusses fällt, gibt dieser die Stellungnahme ab.

**5.4    Aufgaben und Befugnisse der Gesellschafterversammlung**

Beschlüsse der Gesellschafterversammlung sind in allen Angelegenheiten der Gesellschaft zulässig. Eines Beschlusses der Gesellschafterversammlung bedarf es für:

5.4.1    Billigung des Konzernjahresabschlusses der Gesellschaft für das abgelaufene Geschäftsjahr nebst Lagebericht und Konzernlagebericht, sofern gesetzlich vorgeschrieben,

5.4.2    Feststellung des Jahresabschlusses der Gesellschaft,

5.4.3    Verwendung des Ergebnisses,

5.4.4    Entlastung der Geschäftsführung und des Aufsichtsrats,

5.4.5    Wahl des CEO auf der Grundlage der vom Aufsichtsrat erstellten Kandidatenliste,

5.4.6    Wahl von Mitgliedern des Aufsichtsrates,

5.4.7    Wahl des Abschlussprüfers und des Konzernabschlussprüfers,

5.4.8    Aufnahme neuer Gesellschafter und damit verbundene Kapitalerhöhungen,

5.4.9    Änderung des Gesellschaftsvertrages,

5.4.10    Auflösung oder Veräußerung der Gesellschaft

**5.5    Tochtergesellschaften**

Als Tochtergesellschaften nach den vorstehenden Ziffern sind Gesellschaften zu verstehen, an denen die Gesellschaft mit einer Kapitalmehrheit oder einer Stimmrechtsmehrheit direkt oder indirekt beteiligt ist.

**§ 6 Geschäftsführung und Vertretung**

**6.1    Geschäftsführung**

Die Gesellschaft hat bis zu drei Geschäftsführer, von denen einer der Vorsitzende der Geschäftsführung („CEO") ist. Alle Geschäftsführer bilden zusammen die Geschäftsführung. Die Gesellschaft wird durch zwei Geschäftsführer gemeinschaftlich vertreten. Der Aufsichtsrat kann einem, mehreren oder allen Geschäftsführern Einzelvertretungsbefugnis und/oder Befreiung von den Beschränkungen des § 181 BGB erteilen. Der CEO wird für eine Amtsperiode von vier Jahren berufen. Eine erneute Berufung ist möglich. Der CEO wird auf Grundlage einer vom Aufsichtsrat erstellten Kandidatenliste von der Gesellschafterversammlung gewählt und anschließend vom Aufsichtsrat bestellt; der oder die übrigen Geschäftsführer werden auf Vorschlag des CEO vom Aufsichtsrat bestellt.

**6.2   Zustimmungsbedürftige Geschäfte**

Die in § 5 aufgeführten Geschäfte erfordern Zustimmung durch oder Konsultation des Aufsichtsrates oder Zustimmung der Gesellschafterversammlung; Beiratsverträge mit Prof. Dr. h.c. Roland Berger bedürfen keiner Zustimmung.


## § 7 Aufsichtsrat

**7.1   Besetzung, Amtszeit**

7.1.1   Die Gesellschaft hat einen Aufsichtsrat. Dieser besteht aus fünf Mitgliedern. Sie werden aus dem Kreis der Gesellschafter von der Gesellschafterversammlung gewählt. Mitglied des Aufsichtsrats kann auch sein, wer gesetzlicher Vertreter eines von der Gesellschaft abhängigen Unternehmens ist. Der Aufsichtsrat wählt aus seiner Mitte einen Vorsitzenden und einen Stellvertretenden Vorsitzenden. Der Aufsichtsrat ist berechtigt, Ausschüsse zu bilden und sich eine Geschäftsordnung zu geben. Die Amtszeit der Mitglieder des Aufsichtsrats beträgt jeweils fünf Jahre ab der Beendigung der vorausgehenden Amtszeit.

7.1.2   Durch Beschluss der Gesellschafterversammlung ist Herr Prof. Dr. h.c. Roland Berger zum Ehrenvorsitzenden des Aufsichtsrats („Ehrenvorsitzender") auf Lebenszeit - vorbehaltlich der Bestimmungen in § 7.1.3 - ernannt worden. Der Ehrenvorsitzende hat, solange keine gesundheitlichen Gründe entgegenstehen, das Recht, an Sitzungen des Aufsichtsrats teilzunehmen und dort das Wort zu ergreifen. Der Ehrenvorsitzende erhält die Informationen, die Aufsichtsratsmitglieder zur Vorbereitung von Aufsichtsratssitzungen und in deren Verlauf erhalten. Der Ehrenvorsitzende ist kein Organmitglied, unterliegt jedoch hinsichtlich der Informationen, die er in seiner Funktion erhält, den gleichen Verschwiegenheitspflichten, die auch für ein Mitglied des Aufsichtsrats gelten.

Der Ehrenvorsitzende berät den Aufsichtsrat, insbesondere dessen Vorsitzenden. Er ist rechtzeitig über die anstehenden Strategien und Entscheidungen zu informieren und hat das Recht auf Anhörung durch den Aufsichtsratsvorsitzenden.

7.1.3   Scheidet Herr Prof. Dr. Burkhard Schwenker vor Ablauf des 31. Dezember 2014 aus seinem Amt als Mitglied des Aufsichtsrats und aus seiner Funktion als Aufsichtsratsvorsitzender aus, so wird der Ehrenvorsitzende zum Mitglied und Vorsitzenden des Aufsichtsrats bis zum Ablauf des 31. Dezember 2014, wobei eine Abberufung aus dem Aufsichtsrat vor diesem Zeitpunkt durch die Gesellschafterversammlung möglich ist, wenn er aus gesundheitlichen Gründen sein Amt nicht mehr wahrnehmen kann. Der Status als Ehrenvorsitzender erlischt mit dem Erwerb der Mitgliedschaft im Aufsichtsrat; sobald Herr Prof. Dr. h.c. Roland Berger sein nach § 7.1.3 Satz 1 erworbenes Amt als Aufsichtsratsmitglied nicht mehr innehat, wird er erneut Ehrenvorsitzender des Aufsichtsrats nach Maßgabe von § 7.1.2.

Satzung RBSCH

### 7.2   Einberufung, Form und Frist

Der Aufsichtsrat tagt mindestens zweimal im Jahr, bei Bedarf auch häufiger. Er wird vom Vorsitzenden mit einer Frist von vier Wochen, die in dringenden Fällen auf drei Tage abgekürzt werden kann, einberufen. Im übrigen gelten die Regelungen der §§ 8.2 und 8.3 entsprechend.

### 7.3   Beschlussfähigkeit, Abstimmung, Wirksamkeit

Der Aufsichtsrat ist beschlussfähig, wenn mindestens der Vorsitzende und zwei weitere Aufsichtsratsmitglieder anwesend sind. Er entscheidet mit einfacher Mehrheit der abgegebenen Stimmen. Bei Stimmengleichheit wird die Abstimmung wiederholt. Bei dieser Abstimmung gibt die Stimme des Vorsitzenden den Ausschlag. §§ 8.10 und 8.11 gelten entsprechend.


## § 8 Gesellschafterversammlung, Beschlussfassung, Stimmrecht

### 8.1   Gesellschafterversammlung

Eine ordentliche Gesellschafterversammlung soll einmal im Jahr innerhalb der ersten sieben Monate eines jeden Geschäftsjahres stattfinden. Gesellschafterversammlungen finden am Sitz der Gesellschaft oder einem anderen von der Geschäftsführung bestimmten Ort statt.

### 8.2   Einberufung

Zur Einberufung ist jeder Geschäftsführer berechtigt. Auf Verlangen einer Anzahl von Gesellschaftern, die Geschäftsanteile zusammen mindestens 10% der Stimmrechte halten, ist jeder Geschäftsführer zur Einberufung verpflichtet; das Verlangen muss den Zweck und die Gründe der Versammlung angeben. Kommen die Geschäftsführer einem solchen Verlangen zur Einberufung nicht nach, so kann bzw. können der oder die betreffenden Gesellschafter selbst die Einberufung vornehmen. Zwingende gesetzliche Vorschriften gelten vorrangig.

### 8.3   Form und Frist

Die Gesellschafterversammlungen werden schriftlich, fernmündlich, per E-Mail oder durch Telefax einberufen. Die Tagesordnung ist mit der Einberufung mitzuteilen. Die Einberufung soll grundsätzlich mindestens drei Wochen vor dem Zeitpunkt der Versammlung zugegangen sein, wobei der Tag der Absendung und der Tag der Versammlung nicht mitgerechnet werden. In dringenden Fällen kann die Einladungsfrist auf die gesetzliche Mindestfrist gemäß § 51 Abs. 1 Satz 2 GmbHG in seiner jeweiligen Fassung verkürzt werden. Eine schriftliche Einladung gilt als zugegangen, wenn sie rechtzeitig per Einschreiben an die von dem Gesellschafter der Gesellschaft zuletzt bekannt gegebene Anschrift abgesandt wurde.

Satzung RBSCH

## 8.4    Leitung

Die Gesellschafterversammlung wird von dem Vorsitzenden des Aufsichtsrats, bei seiner Ver-
hinderung von seinem Stellvertreter  geleitet; die Leitung kann von diesen Personen auch
dem Sprecher bzw. Vorsitzenden der Geschäftsführung übertragen werden. Sind der Vorsit-
zende des Aufsichtsrats und sein Stellvertreter verhindert und ist eine Übertragung der Lei-
tung auf den Vorsitzenden der Geschäftsführung nicht erfolgt, so wählt die Gesellschafterver-
sammlung in offener Abstimmung einen Leiter.

## 8.5    Protokoll

Der Leiter der Gesellschafterversammlung bestimmt einen Schriftführer. Dieser fertigt eine
Niederschrift über die Gesellschafterbeschlüsse an, die von ihm und dem Versammlungsleiter
zu unterzeichnen ist. Die Niederschrift ist den Gesellschaftern bzw. ihren Vertretern unverzüg-
lich zuzusenden; die Zusendung kann auch in elektronischer Form erfolgen.

## 8.6    Vertretung

Die Gesellschafter können sich in Gesellschafterversammlungen nur durch andere Gesell-
schafter der Gesellschaft vertreten lassen. Auf Verlangen hat der Vertreter eine schriftliche
Vollmacht vorzulegen.

## 8.7    Stimmrecht

Stimmberechtigt sind alle Gesellschafter.

Soweit in dieser Satzung nicht ausdrücklich etwas anderes geregelt ist, wird nach Anteilen
abgestimmt. Dabei gewähren je Euro 50 eines Geschäftsanteils eine Stimme, wobei aber fol-
gende Höchststimmrechte gelten:

— Einem Partner mit dem Partner-Status „P1" stehen höchstens so viele Stimmen zu wie ei-
   nem Gesellschafter, der einen Geschäftsanteil im Nominalbetrag von EUR 1.400 hält,

— einem Partner mit dem Partner-Status „P2" stehen höchstens so viele Stimmen zu wie ei-
   nem Gesellschafter, der einen Geschäftsanteil im Nominalbetrag von EUR 3.500 hält, und

— einem Partner mit dem Partner-Status „P3" sowie dem Gesellschafter Prof. Dr. h.c. Ro-
   land Berger stehen höchstens so viele Stimmen zu wie einem Gesellschafter, der einen
   Geschäftsanteil im Nominalbetrag von EUR 7.000 hält.

## 8.8    Beschlussfähigkeit

Die Gesellschafterversammlung ist beschlussfähig, wenn sie ordnungsgemäß einberufen ist
und mindestens 50 % der Stimmen vertreten sind. Ist die Versammlung nicht beschlussfähig,
so ist eine weitere Gesellschafterversammlung fristgemäß einzuberufen, die dann ohne Rück-
sicht auf die vertretenen Stimmen beschlussfähig ist.

## 8.9    Mehrheiten

8.9.1    Falls in dieser Satzung nichts anderes geregelt ist, bedürfen Gesellschafterbeschlüsse
          einer Mehrheit von mehr als 50 % der abgegebenen Stimmen. Stimmenthaltungen
          und ungültige Stimmen gelten als nicht abgegebene Stimmen.

FRALIB01/FRAAGB/696025.1                              10

Satzung RBSCH

8.9.2    Beschlüsse zu den §§ 5.4.2, 5.4.3, 5.4.5, 5.4.6, 5.4.8, 5.4.9 und 5.4.10 bedürfen einer Mehrheit von 75% der in der Gesellschafterversammlung anwesenden oder vertretenen Stimmen. Abweichend von § 8.9.1 gelten Stimmenthaltungen hierbei als Nein-Stimmen.

8.9.3    Beschlüsse nach §§ 8.9.1 und 8.9.2, mit Ausnahme von Beschlüssen zu § 5.4.8, können nicht gegen die Stimme des Gesellschafters Prof. Dr. h.c. Roland Berger gefasst werden.

8.10    **Beschlussfassung außerhalb von Gesellschafterversammlungen**

Beschlüsse der Gesellschafter können auch außerhalb von Gesellschafterversammlungen im Wege schriftlich, fernmündlich oder per anderer Mittel der Telekommunikation erfolgender Abstimmung gefasst werden, falls mehr als 75% der Gesellschafter sich mit diesem Verfahren einverstanden erklären und für den Beschluss so viele Stimmen abgegeben werden, wie in einer Gesellschafterversammlung für den Beschluss erforderlich wären. Mit der Aufforderung zur schriftlichen Stimmabgabe (einschließlich E-Mail und Telefax) ist jeder Gesellschafter darauf hinzuweisen, dass er dem Verfahren binnen einer Woche widersprechen kann, widrigenfalls sein Einverständnis als erteilt gilt. Der Widerspruch ist ausgeschlossen, wenn das schriftliche Verfahren für den bestimmten Beschlussgegenstand in der letzten Gesellschafterversammlung beschlossen wurde. Im übrigen gelten die Regelungen über die Beschlussfassung in einer Gesellschafterversammlung entsprechend.

8.11    **Wirksamkeit**

Die Anfechtbarkeit von Gesellschafterbeschlüssen kann nur durch Erhebung einer Klage gegen die Gesellschaft innerhalb eines Monats nach Beschlussfassung geltend gemacht werden.

## § 8a Subscription Committee

8a.1    Es wird ein Subscription Committee gebildet. Solange der Aufsichtsrat über ein Compensation Committee verfügt, besteht das Subscription Committee aus den Mitgliedern des Compensation Committees, die zugleich Gesellschafter der Gesellschaft sind.

Hat der Aufsichtsrat kein Compensation Committee gebildet, besteht das Subscription Committee aus vier Mitgliedern, von denen je zwei von der Geschäftsführung aus dem Kreis der Geschäftsführer und zwei vom Aufsichtsrat aus dem Kreis der Aufsichtsratsmitglieder gewählt werden. Wählbar sind nur Mitglieder von Geschäftsführung und Aufsichtsrat, die zugleich Gesellschafter der Gesellschaft sind. Die Geschäftsführung und der Aufsichtsrat können die jeweils von ihnen gewählten Mitglieder des Subscription Committees jederzeit abberufen.

8a.2    Das Subscription Committee ist für die Aufgaben zuständig, die ihm nach dieser Satzung zugewiesen sind. Entscheidungen des Subscription Committees werden durch Beschluss getroffen; die Beschlussfassung erfolgt mit der einfachen Mehrheit der abgegebenen Stimmen, wobei jedes Mitglied des Subscription Committees eine Stimme hat. Das Subscription Committee

wählt aus seiner Mitte einen Vorsitzenden, der für die Leitung von Abstimmungen und die Abgabe von Erklärungen des Subscription Committees zuständig ist. Das Subscription Committee kann sich eine Geschäftsordnung geben, die weitere Einzelheiten der Beschlussfassung und sonstiger Angelegenheiten der inneren Ordnung des Subscription Committees regelt.

### § 9 Jahresabschluss / Gewinnermittlung / Gewinnverwendung

9.1    Für die Buchführung, das Finanzwesen und die Bilanzierung gelten die allgemein anerkannten Grundsätze ordnungsmäßiger Buchführung.

Für die Aufstellung des Jahresabschlusses und - soweit gesetzlich vorgeschrieben – des Lageberichts, des Konzernabschlusses und des Konzernlageberichts gelten im übrigen die deutschen gesetzlichen Vorschriften.

9.2    Der nach § 9.1 aufgestellte Jahresabschluss und der Lagebericht der Gesellschaft sind von der Geschäftsführung dem Abschlussprüfer innerhalb der ersten drei Monate nach Ablauf eines jeden Geschäftsjahres, der nach § 9.1 aufgestellte Konzernabschluss und der Konzernlagebericht der Gesellschaft sind von der Geschäftsführung dem Abschlussprüfer innerhalb der ersten fünf Monate nach Ablauf eines jeden Geschäftsjahres vorzulegen.

9.3    Die Geschäftsführung hat unverzüglich nach Erhalt des testierten Jahres- und Konzernabschlusses in Abstimmung mit dem Aufsichtsrat die Gesellschafter entsprechend den gesetzlichen Vorschriften zu informieren.

9.4    Hinsichtlich der Gewinnverwendung gilt das Folgende:

Nach dem gemeinsamen Verständnis der Gesellschafter soll der gruppenweit zur Verfügung stehende verteilungsfähige Gewinn im Grundsatz zu mindestens 55% auf der Grundlage von Anstellungsverträgen als Bonus an die Personen ausgezahlt werden, die in der Roland Berger Gruppe den Status eines Partners haben, bis zu 25% an die Gesellschafter der Gesellschaft als Dividende ausgeschüttet werden und zu 20% in eine Rücklage der Gesellschaft eingestellt werden, die insbesondere der Tilgung von Verbindlichkeiten der Gesellschaft dient. Die Gewinnverwendung auf Ebene der Gesellschaft wird daher wie folgt geregelt:

9.4.1    Der Jahresüberschuss laut Prüfungsbericht wird um vorgetragene Jahresfehlbeträge der Vorjahre gemindert und um Gewinnvorträge der Vorjahre erhöht ("Satzungsmäßiger Jahresüberschuss").

9.4.2    Der Satzungsmäßige Jahresüberschuss ist wie folgt zu verteilen, soweit die Gesellschafterversammlung keine andere Verwendung beschließt:

(a)    bis zu 25/45 des Satzungsmäßigen Jahresüberschusses wird an die Gesellschafter anteilig nach dem Verhältnis der Nominalbeträge ihrer Geschäftsanteile verteilt.

(b)    20/45 des Satzungsmäßigen Jahresüberschusses werden in eine Rücklage eingestellt, die insbesondere zum Rückerwerb von Geschäftsanteilen durch die Gesellschaft und zur Tilgung von Verbindlichkeiten, aber auch zu sonstigen Zwe-

cken aufgelöst werden darf („Zukunftsrücklage"). Der Gesamtbetrag der Zu-kunftsrücklage darf EUR 68 Mio. nicht übersteigen.

9.4.3    Die Auflösung von Rücklagen erfolgt durch die Geschäftsführung mit Zustimmung des Aufsichtsrats, soweit gesetzlich oder durch die Satzung nichts anderes vorgesehen ist.

## § 10 Aufnahme neuer und Erhöhung der Beteiligung von Gesellschaftern; Entlassung von Gesellschaftern

10.1    Neue „Berechtigte Gesellschafter" werden auf Vorschlag der Geschäftsführung nach Evaluie-rung durch Beschluss der Berechtigten Gesellschafter gewählt. Der Beschluss bedarf einer Mehrheit von 75% der abgegebenen Stimmen; im übrigen finden die Regelungen des § 8 ent-sprechende Anwendung. „Berechtigte Gesellschafter" sind Gesellschafter, die Geschäftsantei-le im Nominalbetrag von mindestens EUR 3.500 des Stammkapitals der Gesellschaft halten.

10.2    Neue Gesellschafter werden nach Evaluierung durch mindestens vier „Berechtigte Gesell-schafter" durch einen Ausschuss berufen, der sich aus den Mitgliedern der Geschäftsführung zusammensetzt, und die Berufung wird durch Beschluss der Gesellschafterversammlung be-stätigt. Der Beschluss bedarf einer Mehrheit von 2/3 der abgegebenen Stimmen.

10.3    Jeder neue Gesellschafter muss binnen vier Wochen nach dem Wirksamwerden seines Bei-tritts den Gesellschaftern, die zum Zeitpunkt der Vollmachtserteilung als Geschäftsführer der Gesellschaft im Handelsregister eingetragen sind – und zwar jeweils einzeln – nachfolgende Stimmrechtsvollmacht erteilen:

"Der Bevollmächtigte ist befugt, das Stimmrecht aus meinen Anteilen an der Roland Berger Strategy Consultants Holding GmbH mit dem Sitz in München für mich auszu-üben.

Die Vollmacht kann nicht im Rahmen von Beschlüssen ausgeübt werden, in denen der Bevollmächtigte selbst vom Stimmrecht ausgeschlossen wäre.

Die Erteilung von Untervollmachten ist unzulässig. Diese Vollmacht kann jederzeit durch schriftliche Erklärung widerrufen werden.

Der Bevollmächtigte ist ausdrücklich von den Beschränkungen des § 181 BGB befreit.

Scheidet der Bevollmächtigte als Geschäftsführer der Roland Berger Strategy Consul-tants Holding GmbH aus, so erlischt seine Vollmacht und gelten an seiner Stelle sämt-liche Gesellschafter dieser Gesellschaft als im obigen Umfang und jeweils einzeln be-vollmächtigt, die zur Zeit des Erlöschens seiner Vollmacht als Geschäftsführer im Handelsregister eingetragen sind oder danach als solche eingetragen werden."

10.4    Bei Kapitalerhöhungen zur Aufnahme neuer Gesellschafter bzw. zur Erhöhung der Beteiligung eines Gesellschafters ist das Bezugsrecht der anderen Gesellschafter ausgeschlossen, sofern nicht im Kapitalerhöhungsbeschluss ausdrücklich etwas Abweichendes geregelt ist.

Satzung RBSCH

## § 11 Einziehung von Geschäftsanteilen

11.1 Die Einziehung von Geschäftsanteilen ist zulässig.

11.2 Die Einziehung des Geschäftsanteiles eines Gesellschafters ohne dessen Zustimmung ist nur zulässig wenn,

11.2.1 sein Geschäftsanteil aufgrund eines nicht nur vorläufig vollstreckbaren Titels gepfändet und die Pfändung nicht innerhalb von drei Monaten durch anderweitige Befriedigung des Gläubigers als durch die Gesellschaft oder einen anderen Gesellschafter wieder aufgehoben wird,

11.2.2 über das Vermögen des Gesellschafters ein Insolvenzverfahren eröffnet wird oder die Eröffnung eines solchen Verfahrens mangels Masse abgelehnt wird, oder der Gesellschafter die Richtigkeit eines Vermögensverzeichnisses an Eides Statt zu versichern hat,

11.2.3 in der Person des Gesellschafters ein seine Ausschließung rechtfertigender Grund (entsprechend § 140 HGB) vorliegt, insbesondere der Gesellschafter Gesellschafterpflichten grob verletzt,

11.2.4 der Gesellschafter durch eigenen Entschluss aus der Gesellschaft ausscheidet,

11.2.5 ein zwischen einem Gesellschafter und der Gesellschaft oder einem mit der Gesellschaft verbundenen Unternehmen bestehender Anstellungsvertrag, Beratervertrag oder sonstiger Vertrag, nach dem der Gesellschafter den Status eines „Partners" in der Roland Berger-Gruppe oder einer sonstigen Konzerngesellschaft oder einen vergleichbaren Status erhalten hat, egal aus welchen Gründen beendet wird (z.B. Eintritt des Gesellschafters in den Ruhestand, Kündigung des Anstellungsvertrages, des Beratervertrages oder eines sonstigen Vertrages durch die Gesellschaft oder den Gesellschafter, Tod eines Gesellschafters). Im Falle des Gesellschafters Prof. Dr. h.c. Roland Berger steht die Bestellung zum Geschäftsführer, Aufsichtsrat oder Beirat in einer Gesellschaft der Roland Berger-Gruppe der Verleihung des Status eines Partners im Sinne des vorstehenden Satzes 1 gleich.

Ist streitig, ob das Vertragsverhältnis beendet ist, gilt es für die Zwecke dieser Satzung als beendet, solange nicht eine gegenteilige gerichtliche Entscheidung rechtskräftig geworden ist.

11.3 Steht ein Geschäftsanteil mehreren Mitberechtigten ungeteilt zu, so ist die Einziehung gegen den Willen der Mitberechtigten auch zulässig, wenn die Voraussetzungen der Einziehung nur in der Person eines Mitberechtigten vorliegen.

11.4 Die Einziehung erfolgt durch schriftliche Mitteilung des Einziehungsbeschlusses gegenüber dem betroffenen Gesellschafter bzw. dessen Nachfolger; sie wird mit dem Zugang dieser Mitteilung wirksam.

Satzung RBSCH

**11.5**  Statt der Einziehung kann die Gesellschafterversammlung beschließen, dass der Geschäftsanteil von der Gesellschaft erworben oder an verbleibende Gesellschafter oder an Dritte übertragen wird. Ein Erwerb durch die Gesellschaft selbst setzt dabei voraus, dass der Geschäftsanteil voll eingezahlt ist.

**11.6**  Bei der Beschlussfassung über die Einziehung oder Übertragung des Geschäftsanteils hat der betroffene Gesellschafter bzw. haben die Gesellschaftererben kein Stimmrecht.

**11.7**  Der Beschluss über die Einziehung eines Geschäftsanteils oder die Abtretung an die Gesellschaft kann nur bedingt unter der Voraussetzung gefasst werden, dass durch die Zahlung der Vergütung das Stammkapital im Zeitpunkt der Zahlung der Vergütung nicht angegriffen wird. Im Falle der Abtretung an einen Mitgesellschafter oder an Dritte wird der Einziehungsbeschluss mit Zugang an den betroffenen Gesellschafter wirksam.

**11.8**  Die Einziehung erfolgt gegen Vergütung gemäß näherer Maßgabe in § 12.


### § 12 Vergütung bei Einziehung oder Erwerb von Geschäftsanteilen

**12.1**  Berechnung der Vergütung für eingezogene oder nach § 11.5 oder aufgrund Vereinbarung mit der Gesellschaft übertragene Geschäftsanteile

12.1.1  Im Fall der Einziehung eines Geschäftsanteils oder der Übertragung eines Geschäftsanteils gemäß § 11.5 oder im Fall des Erwerbs von Geschäftsanteilen durch die Gesellschaft nach Maßgabe eines mit der Gesellschaft geschlossenen Vertrags erhält der betroffene Gesellschafter eine Vergütung nach Maßgabe dieses § 12 (Ausscheidensvergütung). Über den Abschluss von Vereinbarungen über den Rückerwerb von Geschäftsanteilen durch die Gesellschaft außerhalb von § 11.5 entscheidet die Geschäftsführung im Rahmen der gesetzlichen Vorgaben.

12.1.2  Die Ausscheidensvergütung für einen Geschäftsanteil entspricht der Einlage, die der ausscheidende Gesellschafter (oder, wenn der ausscheidende Gesellschafter den Geschäftsanteil von einem anderen Gesellschafter („Rechtsvorgänger") erworben hatte, sein Rechtsvorgänger) als Gegenleistung für den eingezogenen oder übertragenen Geschäftsanteil in die Gesellschaft erbracht hat; als Einlage gilt auch ein für den Geschäftsanteil an die Gesellschaft gezahlter Kaufpreis. Die Regelung des Satz 1 gilt auch, wenn unter Berücksichtigung aller Umstände in der Zeit zwischen Eintritt des ausscheidenden Gesellschafters in die Gesellschaft und dessen Ausscheiden ein grobes Missverhältnis zwischen der Ausscheidensvergütung nach diesem § 12 und dem Wert des von einem ausscheidenden Gesellschafters gehaltenen Geschäftsanteils entstanden ist.

12.1.3  Die Berechnung der Ausscheidensvergütung ist von der Gesellschaft vorzunehmen. Sie bedient sich dabei der Hilfe eines Wirtschaftsprüfers.

12.1.4  Die Auszahlung der Ausscheidensvergütung erfolgt, vorbehaltlich der Sonderregelungen für Altgesellschafter in § 12.2, unverzüglich mit Wirksamwerden der Einziehung bzw. der Übertragung des Geschäftsanteils.

**12.2    Ausscheidensvergütung für Altgesellschafter**

12.2.1  Bei Altgesellschaftern (wie in § 9.4.2 (g) definiert) entspricht die Einlage im Sinne von § 12.1.2 dem Betrag, den der jeweilige Altgesellschafter nach Maßgabe des § 13.2 der Satzung der RBBG als Vergütung erhalten hätte, wenn er zum 31. Dezember 2005 aus der RBBG ausgeschieden wäre, abzüglich etwaiger Zahlungen, die der Altgesellschafter vor seinem Ausscheiden von der Gesellschaft erhalten hat und die auf die Ausscheidensvergütung anzurechnen sind („RBBG-Abfindung"). Sofern ein Altgesellschafter weitere Geschäftsanteile erwirbt, gilt für die Abfindungsvergütung für diese Geschäftsanteile § 12.1.

12.2.2  Die Ausscheidensvergütung eines Altgesellschafters, nach Maßgabe dieses § 12.2, wird in Höhe des Teilbetrages unverzüglich zur Zahlung fällig, in dem der Altgesellschafter eine Einlage auf Geschäftsanteile an der RBBG oder auf der RBBG verschaffte Geschäftsanteile, für die er Geschäftsanteile an der RBBG erhalten hat, in bar erbracht hat; als Einlage gilt auch ein für die jeweiligen Geschäftsanteile an die jeweilige Gesellschaft in bar erbrachter Kaufpreis; jeweils abzüglich etwaiger Zahlungen, die der Altgesellschafter vor seinem Ausscheiden von der Gesellschaft erhalten hat und die auf die Ausscheidensvergütung anzurechnen sind (gemeinsam „Historische Bareinlage"). Der Differenzbetrag zwischen der Historischen Bareinlage und der RBBG-Abfindung („Differenzbetrag") wird in maximal 5 gleichen Teilbeträgen jährlich jeweils am 3. Bankarbeitstag des Monats zur Zahlung fällig, der dem Monat entspricht, in dem die Einziehung oder Übertragung des Geschäftsanteils wirksam geworden ist. Die Gesellschaft ist berechtigt, den Differenzbetrag abweichend von Satz 2 in voller Höhe oder in Teilbeträgen vorzeitig auszuzahlen, ohne dafür eine Vorfälligkeitsentschädigung zu entrichten; über die Vornahme von Vorauszahlungen auf die Ausscheidensvergütung entscheidet die Geschäftsführung.

12.2.3  Ausstehende Vergütungsansprüche werden ab Wirksamwerden des gesellschaftsrechtlichen Ausscheidens entsprechend der gesetzlichen Regelung des § 246 BGB in seiner jeweils gültigen Fassung, derzeit also mit vier Prozent p.a., verzinst.

12.2.4  Für den Fall, dass 25% des Nominalkapitals der Gesellschaft zuzüglich einer Stimme an Dritte veräußert werden, die nicht Partner der Roland Berger Gruppe sind („Change of Control Ereignis"), werden die Vergütungen für Altgesellschafter abweichend von § 12.2.1 und 12.2.2 unverzüglich in voller Höhe zur Zahlung fällig.

## § 13 Schlussbestimmungen

**13.1    Gründungsaufwand**

Die Gesellschaft trägt den Gründungsaufwand, insbesondere die Kosten des Notars, der Eintragung im Handelsregister und die Kosten der Veröffentlichung, bis zu einem Betrag von Euro 1.500,-.

**13.2    Neuordnung der Roland Berger-Gruppe**

Werden im Zuge einer Neuordnung der Roland Berger-Gruppe andere Gesellschaften der Gruppe mit der Gesellschaft verschmolzen oder in einer anderen Form zusammengeführt, und wird deshalb eine Funktion des Gesellschafters Prof. Dr. h.c. Roland Berger als Geschäftsführer oder Beirat in dieser anderen Gesellschaft obsolet, so wird die Gesellschaft dem Gesellschafter Prof. Dr. h.c. Roland Berger in der Gesellschaft eine Funktion einräumen, die der obsolet gewordenen Funktion in der anderen Gesellschaft entspricht.

\* \* \*

Ende der Satzung

<u>Nummer 195 der Urkundenrolle für 2014</u>

Bescheinigung
gem. § 54 Abs. 1 Satz 2 GmbHG

Ich bescheinige hiermit, dass die geänderten Bestimmungen des Gesellschafts-
vertrages der Roland Berger Strategy Consultants Holding GmbH mit Sitz in
München, mit dem Beschluss über die Änderung vom 8. März 2014 und die
unveränderten Bestimmungen mit dem zuletzt dem Handelsregister eingereichten
vollständigen Wortlaut des Gesellschaftsvertrages übereinstimmen.

Frankfurt am Main, den 18. März 2014

Dr. Joachim W. Habetha
N o t a r

Hiermit beglaubige ich die Übereinstimmung der in dieser Datei enthaltenen Bilddaten (Abschrift) mit dem mir vorliegenden Papierdokument (Urschrift).

Frankfurt am Main, den 08.04.2014

Dr. Joachim W. Habetha
Notar

*Courtesy Translation*

**Statute of Roland Berger Strategy Consultants Holding GmbH (as amended 2014)**

4.5    In principle, persons who have the status of a Partner in Roland Berger group shall participate in the Company as follows:

  – Partners who have the partner status "P1" shall hold shares in the aggregate nominal amount of EUR 1,400;

  – Partners who have the partner status "P2" shall hold shares in the aggregate nominal amount of EUR 3,500;

  – Partners who have the partner status "P3" shall hold shares in the aggregate nominal amount of EUR 7,000.

\*\*\*

5.4    Duties and powers of the Shareholder Meeting

Resolutions passed by the Shareholder Meeting are permissible on all matters concerning the Company. A resolution by the Shareholder Meeting shall be required to:

. . . .

5.4.8 Admit new shareholders and capital increases associated therewith

\*\*\*

8.9    Majorities

8.9.1    Unless this Statute provides otherwise, shareholder resolutions shall require a majority of more than 50% of votes cast. Abstentions and invalid votes shall be deemed not cast.

8.9.2    Resolutions relating to Sections 5.4.2, 5.4.3, 5.4.5, 5.4.6, 5.4.8, 5.4.9, and 5.4.10 shall require a majority of 75% of votes present or represented at the Shareholder Meeting. At variance to Section 8.9.1, abstentions shall be deemed "no" votes.

8.9.3    Resolutions pursuant to Sections 8.9.1 and 8.9.2, with the exception of resolutions relating to Section 5.4.8, may not be adopted against the vote of the shareholder Prof. Dr. h.c. Roland Berger.

\*\*\*

11.1    Shares may be called in.

11.2    A share may be called in without the consent of the shareholder concerned only if:

*Courtesy Translation*

11.2.1 His share is placed under lien pursuant to an injunction of a more than temporary nature and the lien is not suspended within three months as a result of the creditor's claims being satisfied by any means other than by the Company or by another shareholder;

11.2.2 Insolvency proceedings are instituted against the shareholder's assets, or the institution of such proceedings is refused for lack of assets, or the shareholder is ordered to provide an affidavit concerning the accuracy of a listing of his assets;

11.2.3 There is just cause (in accordance with Section 140 HGB) for the exclusion of the shareholder from the Company, in particular if the shareholder commits a gross breach of shareholder duties;

11.2.4 The shareholder withdraws from the Company of his own accord;

11.2.5 An existing employment agreement, consulting agreement, or other agreement between a shareholder and the Company or an affiliated Company, pursuant to which the shareholder holds the status of a "Partner" in the Roland Berger Group or another Group company or a comparable status, is terminated for any reason whatsoever (e.g. the shareholder's retirement, notice of termination of the employment agreement, consulting agreement, or other agreement by the Company or the shareholder, death of a shareholder). In the case of the shareholder Prof. Dr. h.c. Roland Berger, the appointment to member of the Board of Managing Directors, Supervisory Board, or Advisory Board in a company of the Roland Berger Group shall be equivalent to granting the status of Partner within the meaning of sentence 1 above.

In the case of a dispute as to whether the employment relationship is in fact terminated, it shall be considered terminated for the purposes of this Statute unless and until a judicial decision to the contrary has become final and unappealable.

2