Exhibit 22

---

**Verfügung Nr. 46**

**6. Juni 2014**

---

**Das Schiedsgericht**

Dr. Georg von Segesser, Vorsitzender
Dr. Arndt Overlack und Univ.-Prof. Dr. Paul Oberhammer, Mitschiedsrichter
Dr. Andrea Meier, juristische Sekretärin

im ICC-Verfahren Nr. **15362/JHN/GFG**
in Sachen

**Dr. Andreas Ringstmeier,**
in seiner Eigenschaft als Insolvenzverwalter über das Vermögen der
**AgfaPhoto GmbH i.L.,**
Brückenstrasse 21, DISCH-Haus
50667 Köln
Deutschland

**Kläger**

vertreten durch
Prof. Dr. Siegfried H. Elsing, Orrick, Herrington & Sutcliffe LLP,
Heinrich-Heine-Allee 12, 40213 Düsseldorf, Deutschland
sowie
Dr. Benedikt Burger, Orrick, Herrington & Sutcliffe LLP,
Friedrichstrasse 31, 60323 Frankfurt am Main, Deutschland

gegen

**Agfa-Gevaert N.V. & Co. KG,**
Am Coloneum 2, 50829 Köln, Deutschland

**Beklagte 1**

**Agfa-Gevaert Healthcare GmbH,**
Tegernseer Landstrasse 161, 81539 München, Deutschland

**Beklagte 2**

**Agfa-Gevaert Graphics Systems GmbH,**
Kasteler Strasse 45, 65203 Wiesbaden, Deutschland

**Beklagte 3**

**Agfa-Gevaert N.V.,**
Septestraat 27, 2640 Mortsel, Belgien

**Beklagte 4**

alle vertreten durch
Robert T. Greig und Aren Goldsmith, Cleary Gottlieb Steen & Hamilton LLP,
12, rue de Tilsitt, 75008 Paris, Frankreich
sowie
Thomas Buhl, Larry Work-Dembowski, Annett Rombach,
Cleary Gottlieb Steen & Hamilton LLP, Main Tower,
Neue Mainzer Strasse 52, 60311 Frankfurt am Main, Deutschland

ICC-Verfahren Nr. 15362/JHN/GFG          Verfügung Nr. 46                    6. Juni 2014

## I.   EINLEITUNG UND PARTEISTANDPUNKTE

1.   Mit Verfügung Nr. 42 vom 25. Oktober 2013 hat das Schiedsgericht den Parteien zwei Wirtschaftsprüfungsgesellschaften, Rödl & Partner GmbH und RölfsPartner Gruppe für die mögliche Bestellung als Gutachter des Schiedsgerichtes vorgeschlagen. Mit Verfügung Nr. 44 vom 10. Februar 2014 teilte das Schiedsgericht den Parteien die Absicht mit, Herrn Christian Hellbardt von Rödl & Partner GmbH als Gutachter zu bestellen und räumte den Parteien die Möglichkeit ein, dazu ihre Kommentare einzureichen.

2.   Das vom Schiedsgericht vorgeschlagene Verfahren für die Erstellung des Gutachtens sah vor, dass der Gutachter zum Entwurf des Gutachterauftrags Stellung beziehen soll, die einschlägigen Verfahrensakten ihm zugestellt werden und er allfällige Fragen an das Schiedsgericht stellen könne. Ebenfalls sollten mit ihm Rechtsfragen definiert werden, zu denen das Schiedsgericht ein entsprechendes Memorandum als Grundlage für die Gutachtertätigkeit erstellen würde (Verfügung Nr. 43). Vor der Zustellung der Verfahrensakten unterzeichnete Herr Hellbardt eine Unabhängigkeitserklärung und Vertraulichkeitsvereinbarung am 15. Januar 2014.

3.   Mit Schreiben vom 6. März 2014 erläuterte das Schiedsgericht Herrn Hellbardt, dass es vorerst darum gehe, einen Zeitplan für die Erstellung des Gutachtens sowie ein Budget auszuarbeiten. Der benötigte Betrag für die Kosten des Gutachtens werde sodann von den Parteien vorzuschiessen sein und bis dahin sollte die Gutachtertätigkeit nicht aufgenommen werden. Gleichzeitig wurde eine Besprechung mit den Schiedsrichtern vorgesehen, um die Zusammenarbeit für die Erstellung des Gutachtens festzulegen. Die Besprechung fand am 24. März 2014 in Zürich statt. Die Themen der Besprechung waren in einer Traktandenliste aufgeführt (**Beilage 1**).

4.   Am 5. Februar 2014 teilte der Kläger dem Schiedsgericht folgendes mit:

"Sollte Prof. Rödl für die Erfüllung seiner ihm vom Schiedsgericht gestellten Aufgabe auf weitere Berufsträger von Rödl & Partner zugreifen wollen, so wäre für den Schiedskläger von Interesse, wer hier aus seiner Sicht in Frage kommt. Rein vorsorglich und aus Gründen größter Transparenz weist der Schiedskläger darauf hin, dass in einem vor dem LG Düsseldorf geführten Rechtsstreit ein Partner von Prof. Rödl, Herr Christian Hellbardt, der auf der Website von Rödl & Partner für den Tätigkeitsbereich *„Unternehmensbewertung — Valuation Services"* genannt wird, gemeinsam mit Herrn Bezant von FTI Consulting für die Bewertung des Unternehmens Demag Cranes AG als Parteigutachter tätig wurde. Aus den dem Schiedskläger auszugsweise vorliegenden Unterlagen ist ersichtlich, dass Herr Hellbardt sich in seinem Parteigutachten von Demag Cranes AG auf das Parteigutachten von Herrn Bezant (*„Prognose der operativen Ergebnisse der Demag Cranes AG" von FTI Consulting vom 23.07.2012)* bezieht und dieses zur Grundlage seiner eigenen Ausführungen macht. Herr Bezant wurde im vorliegenden Verfahren bekanntlich als Parteigutachter für die Schiedsbeklagten gerade auch im Hinblick auf die Bewertung der Sacheinlage tätig. Dieser Umstand alleine würde nach gegenwärtigem Stand aus der Sicht des Schiedsklägers aber nicht ausschließen, dass Herr Hellbardt im Rahmen des Obergutachtens von Prof. Rödl beigezogen wird."

5.   In Ihrer Eingabe vom 28. Februar 2014 führten die Beklagten folgendes aus:

"Die Schiedsbeklagten haben daraufhin mit Herrn Bezant Kontakt aufgenommen und diesen zu seinen bisherigen Kontakten zu Rödl & Partner im Allgemeinen und Herrn

Hellbardt im Besonderen befragt. Die Schiedsbeklagten bestätigen zunächst die Schilderungen des Schiedsklägers und teilen zudem dessen Auffassung, dass dies der Beauftragung von Herrn Hellbardt als Obergutachter nicht entgegensteht.

Neben dem vom Schiedskläger erwähnten Sachverhalt hat Herr Bezant die Schiedsbeklagten auf zwei weitere Fälle hingewiesen, in denen er in Gerichtsverfahren neben Berufsträgern von Rödl & Partner als Gutachter tätig geworden ist. In diesen Fällen war FTI - wie auch in dem vom Schiedskläger geschilderten Sachverhalt - von Minderheitsgesellschaftern als Parteigutachter beauftragt worden, für die Zwecke einer Unternehmensbewertung im Rahmen eines *„squeeze-out"* Markt- und Geschäftsplananalysen zu erstellen. Unabhängig davon war von denselben Gesellschaftern auch Rödl & Partner für die Durchführung der Unternehmensbewertung nach IDW S 1 beauftragt worden. Rödl & Partner berücksichtigte im Rahmen seiner Planungsplausibilisierung die Analysen von FTI.

Eines dieser beiden Verfahren ist gegenwärtig noch nicht abgeschlossen. Herr Hellbardt ist dort bisher nicht in Erscheinung getreten. Das andere Verfahren ist nach dem Kenntnisstand von Herrn Bezant im Hinblick auf die Tätigkeiten von FTI und Rödl & Partner beendet.

Nach Angaben von Herrn Bezant bestand zwischen ihm und Rödl & Partner kein intensiver Kontakt. Herr Bezant vermag nicht auszuschließen, Herrn Hellbardt einmal in größerer Runde persönlich getroffen oder mit ihm gesprochen zu haben. Konkrete Erinnerungen an ein solches Treffen oder Gespräch hat er nicht. Seine wenige Kommunikation mit Mitarbeitern von Rödl & Partner erfolgte weit überwiegend telefonisch oder per E-Mail. Herr Bezant hatte seiner Erinnerung nach hauptsächlich mit Herrn Robert Frank, einem Mitarbeiter, der in Kürze aus der Gesellschaft ausscheiden wird, Kontakt.

Die sporadischen Kontakte von Herrn Bezant zu Mitarbeitern von Rödl & Partner im Rahmen einer gerichtlichen Sachverständigentätigkeit begründen im Hinblick auf Herrn Hellbardt keinen Interessenskonflikt. Eine Beeinträchtigung der Unabhängigkeit und Unvoreingenommenheit von Herrn Hellbardt ist angesichts der geschilderten Sachverhalte nicht zu befürchten.

Der Vollständigkeit halber weisen die Schiedsbeklagten schlussendlich darauf hin, dass auch Herr Grün von PwC in einer bereits im Jahr 2013 abgeschlossenen Angelegenheit neben Rödl & Partner im Rahmen einer Transaktion tätig wurde. Herr Grün war mit der Erstellung einer *Fairness Opinion* zur Angemessenheit der Transaktionsbedingungen beauftragt, Rödl & Partner - unabhängig davon - mit der Erteilung einer Werthaltigkeitsbestätigung für eine Sacheinlage, die Teil der Transaktionsstruktur war. Bei der Beurteilung der Werthaltigkeit der Sacheinlage war Herr Hellbardt zwar beteiligt, der lediglich sporadische Kontakt zwischen den unabhängig voneinander tätigen Gutachtern begründet aber auch hier keine Zweifel an seiner Unabhängigkeit und Neutralität."

6.    Vor dem Hintergrund dieser von den Parteien erwähnten Beziehungen zu Herrn Hellbardt setzte das Schiedsgericht die Unabhängigkeits- und Unparteilichkeitsfrage auf die Traktandenliste der Besprechung vom 24. März 2014. Anlässlich dieser Besprechung ergab sich aus einer Äusserung von Herrn Hellbardt, dass zwischen ihm und dem Prozessvertreter

des Klägers telefonische Kontakte bestanden mit Bezug auf das gegenwärtige Schiedsverfahren. Dies veranlasste das Schiedsgericht, Herrn Hellbardt nochmals zur Offenlegung irgendwelcher Kontakte zu den Parteien und ihren Vertretern und Experten aufzufordern.

7.  Daraufhin nahm Herrn Hellbardt mit Schreiben vom 27. März 2014 Stellung und führte mehrere Kontakte auf, die zwischen der Wirtschaftsprüfungsgesellschaft Rödl & Partner und Experten im gegenwärtigen Verfahren bestehen bzw. bestanden haben.

8.  Mit E-Mail vom 31. März 2014 fragte der Vorsitzende des Schiedsgerichtes Herrn Hellbardt, ob seine Stellungnahme mit den aufgeführten Klientennamen aus Vertraulichkeitsgründen so an die Parteien weitergeleitet werden könne oder ob er eine neutralisierte Fassung zustellen würde. Gleichzeitig stellte er die Frage, ob Herr Hellbardt aus bestimmten Gründen die Kontaktnahme mit dem Prozessvertreter des Klägers weggelassen habe.

9.  Mit E-Mail vom 31. März 2014 stellte sodann Herr Hellbardt sein Schreiben in neutralisierter Version und mit einem Kommentar zur Kontaktnahme mit Herrn Dr. Burger zu. Dieses Schreiben wurde den Parteien durch das Schiedsgericht am 2. April 2014 zugestellt.

10. Mit Eingabe vom 4. April 2014 beantragte die Beklagte, Herr Hellbardt sei aufzufordern, sämtliche Kontakte zwischen ihm bzw. einem Beauftragten von Rödl & Partner und Herrn Dr. Benedikt Burger oder anderen Personen von Orrick offenzulegen. Daraufhin reichte Herr Hellbardt mit Schreiben vom 10. April 2014 eine Antwort auf das Schreiben und die Informationsbegehren der Beklagten ein, und legte seinem Schreiben verschiedene Unterlagen bei, die über die Kontaktnahme und Korrespondenz zwischen Rödl & Partner und dem Vertreter des Schiedsklägers Aufschluss geben.

11. Am 16. April 2014 teilte die Beklagte mit, dass sie Herrn Hellbardt als Gutachter ablehnen und stellte den Antrag, er sei wegen Besorgnis der Befangenheit unverzüglich abzuberufen und vom Amt des Sachverständigen zu entbinden. Auf die Begründung des Antrags der Beklagten wird nachfolgend in den Erwägungen des Schiedsgerichts soweit erforderlich hingewiesen.

12. Mit Eingabe vom 30. April 2014 nahm der Kläger zum Schreiben von Herrn Hellbardt vom 10. April 2014 und zum Schreiben der Beklagten vom 16. April 2014 Stellung. Der Kläger meldete darin "tiefgreifende Zweifel" an, ob Herr Hellbardt geeignet sei, als Gutachter tätig zu werden. Eine Abberufung des Gutachters durch das Schiedsgericht würde der Kläger akzeptieren. Auf weitere Ausführungen des Klägers wird soweit im jetzigen Zeitpunkt relevant in den Erwägungen des Schiedsgerichtes eingegangen.

13. Die Beklagten nahmen zum Schreiben des Klägers mit einer Eingabe vom 7. Mai 2014 Stellung und beantragten, dass der Kläger den Beklagten sämtliche Kosten zu ersetzen habe, die ihnen dadurch entstanden sind, dass der Schiedskläger es unterlassen hat, bereits nach der erstmaligen Nennung von Rödl & Partner als Gutachterkandidat in der Verfügung Nr. 42 vom 25. Oktober 2013, auf den früheren Kontakt und den Umstand, dass sich Herr Hellbardt zu einem früheren Zeitpunkt selbst für befangen erklärt hatte, hinzuweisen.

14. Im Weiteren beantragten die Beklagten, dass das Schiedsgericht den Gutachter Max Falckenberg ersucht, Auskunft über sämtliche Kontakte zwischen ihm und Beteiligten dieses Schiedsverfahrens, an denen das vollständig besetzte Schiedsgericht nicht beteiligt war, zu erteilen.

15. Der Kläger hat zu dieser Eingabe der Beklagten vom 7. Mai 2014 am 16. Mai 2014 Stellung genommen und die Beklagten haben ihrerseits mit einer Eingabe vom 22. Mai 2014 zur Frage der Kostentragung und der Befragung des Gutachters M. Falckenberg repliziert. Ein weiterer Austausch von Stellungnahmen der Parteien zu einzelnen Aspekten bezüglich des Antrags auf Befragung von Herrn Falckenberg erfolgte am 2. bzw. 6. Juni 2014.

## II. ERWÄGUNGEN ZUR BESORGNIS DER BEFANGENHEIT

16. Im vorliegenden Fall ist der Gutachterauftrag nicht unterzeichnet worden, sodass es nicht um die Abberufung von Herrn Hellbardt als Gutachter geht, sondern lediglich um die Frage, ob ihm ein entsprechendes Mandat als Gutachter erteilt werden soll oder nicht. Für die Beantwortung dieser Frage geht das Schiedsgericht davon aus, dass eine Verletzung des §1036 der dt. ZPO, Abs. 1 Satz 1 ausreichend ist, um von einer Bestellung Abstand zu nehmen.[1]

17. Wie in Stein/Jonas ZPO Kommentar zu §1036 ausgeführt wird, reichen berechtigte Zweifel an der Unparteilichkeit und Unbefangenheit aus, und ein "real danger test" ist nicht erforderlich.[2] Dabei geht es um eine Wahrnehmung durch die Parteien und letztlich nicht um einen objektiven Test, ob der Gutachter tatsächlich parteiisch oder befangen ist. Allein schon das Vorenthalten der Bekanntgabe von Umständen und Kontakte zu den Parteien durch den Sachverständigen, vermag einen Befangenheitsgrund zu schaffen, da gerade durch das Vorenthalten bei den Parteien Zweifel aufkommen können, der Gutachter hätte von einer Offenlegung abgesehen, weil er dies im Hinblick auf seine Ernennung als schädlich erachtet. Fragen der Befangenheit sind grundsätzlich mit einem strengen Massstab zu prüfen, und gerade im Ernennungsstadium empfiehlt sich das besonders, um weitere Anfechtungsverfahren in einem späteren Zeitpunkt zu vermeiden, in dem mit der Gutachtertätigkeit bereits Kosten entstanden sind.

18. Im vorliegenden Fall konnten keine Zweifel bestehen, dass die Kontakte zu Prozessvertreter Dr. Burger durch Herrn Hellbardt von Anfang an hätten offengelegt werden müssen, zumal sich aus der Darstellung von Herrn Hellbardt in seinem Schreiben vom 10. April 2014 klar ergibt, dass es dabei um eine mögliche Bestellung als Schiedsgutachter im vorliegenden Verfahren ging. Offensichtlich war sich Herr Hellbardt im damaligen Zeitpunkt (2011) schon im Klaren, dass an die Unparteilichkeit und Unbefangenheit eines Gutachters hohe Anforderungen gestellt werden, hat er doch unter Hinweis auf ein von einem Mitarbeiter von Rödl & Partner betreutes Mandat gegen den Insolvenzverwalter von AgfaPhoto GmbH i.L., welches ebenfalls im Zusammenhang mit der im vorliegenden Verfahren im Zentrum stehenden Ausgliederung des CI-Bereiches aus der Agfa-Gaevert Gruppe stand, einen Gutachterauftrag wegen möglicher Befangenheit abgelehnt.

19. Der Umstand, dass Herr Hellbardt damals von der unrichtigen Annahme ausging, dass sein Anwaltskollege aufgrund einer Analyse die Unterkapitalisierung der AgfaPhoto festgestellt hatte, und er nach heutiger Ansicht das Gutachtermandat nicht hätte ablehnen müssen, ändert nichts an der Tatsache, dass hier Beziehungen bestanden, die eine Offenlegung notwendig machten. Auch die Tatsache, dass sich mit dem Gutachten Falckenberg die Grundlage für einen weiteren

---

[1] Zu den anwendbaren Rechtsnormen verweist das Schiedsgericht auf seine Ausführungen in der Verfügung Nr. 39, Ziff. 33 ff.

[2] Stein/Jonas/Schlosser, Kommentar zu ZPO, 22. Aufl. 2002 Tübingen, §1036 Rdnr. 17

ICC-Verfahren Nr. 15362/JHN/GFG          Verfügung Nr. 46                    6. Juni 2014

Abklärungsbedarf im vorliegenden Fall geändert bzw. eingeschränkt hätte, ändert an der Offenlegungspflicht nichts. Hinzu kommt, dass Herr Hellbardt im Rahmen dieser Kontaktnahme im Februar 2011 für eine mögliche Gutachtertätigkeit Hinweise zum vorliegenden Schiedsverfahren erhalten hat und ihm der Standpunkt des Klägers dargelegt wurde.

20. Schwer nachvollziehbar für das Schiedsgericht ist es, dass die Kontaktnahme durch den Prozessvertreter des Klägers erst auf entsprechendes Nachfragen und auf eine Erläuterung durch das Schiedsgericht zum anwendbaren Standard für die Offenlegung von Kontakten zu den Parteien von Herrn Hellbardt erwähnt wurde. Die Parteien und deren Vertreter, sowie der Kern der Auseinandersetzung zwischen den Parteien, waren Herr Hellbardt bei Unterzeichnung der Unabhängigkeitserklärung am 15. Januar 2014 hinlänglich bekannt.

21. Aufgrund dieser verzögerten Offenlegung und der Tatsache, dass zwischen den Vertretern des Klägers und Herrn Hellbardt Kontakte bezüglich einer möglichen Gutachtertätigkeit bestanden haben, erachtet das Schiedsgericht es als gegeben, dass berechtigte Zweifel an seiner Unparteilichkeit und Unabhängigkeit bestehen. Eine Ernennung zum Gutachter kommt unter diesen Umständen nicht in Frage.

## III. OFFENLEGUNGSPFLICHT EINER PARTEI

22. Der Kläger hat in seiner Eingabe vom 25. November 2013 unter Hinweis auf die in der Verfügung Nr. 42 vorgeschlagenen Wirtschaftsprüfungsgesellschaften auf Beziehungen zwischen Herrn Hellbardt und Rödl & Partner einerseits und dem Experten Dr. Popp andererseits hingewiesen und dadurch zum Ausdruck gebracht, dass er zurecht Überlegungen anstellte, ob aus seiner Sicht Einwände gegen die Ernennung von Herrn Hellbardt vorliegen. Hätte der Kläger im damaligen Zeitpunkt das Schiedsgericht informiert, dass er im Jahre 2011 Herrn Hellbardt wegen einer Gutachtertätigkeit für das vorliegende Verfahren kontaktiert hatte, hätte mit grösster Wahrscheinlichkeit das Schiedsgericht eine Ernennung von Herr Hellbardt nicht in Betracht gezogen. Gemäss der internen Notiz von Herrn Hellbardt vom 9. Februar 2011 ging das Telefonat mit Herrn Dr. Burger weit über eine blosse Kontaktnahme hinaus. Der klägerische Vertreter umriss den Sachverhalt der Auseinandersetzung und wies darauf hin, dass die umfangreichen Verbindlichkeiten, die in Zusammenhang mit einer Liquidation entstünden, nicht ausreichend bei der Bewertung berücksichtigt wurden. Die Fehleinschätzungen würden sich auch aus Vorstandsprotokollen ergeben (Beilage zum E-Mail von Ch. Hellbardt vom 11. April 2014). Unter Aspekten der prozessualen Sorgfaltspflicht und Fairness hätte man erwarten dürfen, dass der Kläger diese Information offenlegt. Damit hätten Kosten, die nun mit der versuchten Bestellung von Herrn Hellbardt entstanden sind, vermieden werden können. Das Schiedsgericht wird daher in seinem Endentscheid diesem Umstand bei der Kostenfrage Rechnung tragen und die Parteien werden dannzumal aufgefordert, die Kosten, die in diesem Zusammenhang angefallen sind, gesondert auszuweisen.

## IV. ANTRAG BETREFFEND HERRN FALCKENBERG

23. Das Schiedsgericht kann dem Antrag der Schiedsbeklagten, den Gutachter Max Falckenberg zu ersuchen, Auskunft über Kontakte zwischen ihm und Beteiligten im Schiedsverfahren (inkl. Prof. W. Haarmann) offenzulegen, nicht nachkommen. Die Partei, die ein Gesuch um Ablehnung eines Sachverständigen stellt, muss die tatsächlichen Gründe, die zur angeblichen

ICC-Verfahren Nr. 15362/JHN/GFG          Verfügung Nr. 46                    6. Juni 2014

Befangenheit führen wirklich kennen, blosse Vorwürfe und Verdachtsmomente genügen hierzu nicht. Zu verweisen ist auf die Ausführungen in der Verfügung Nr. 39 Ziff. 37.

24. Allein der Umstand, dass der Prozessvertreter des Klägers mit Herrn Hellbardt 2011 Kontakt aufnahm, rechtfertigt in keiner Weise die Annahme, dass solche Kontakte möglicherweise auch zu Herrn M. Falckenberg bestanden haben. Desgleichen genügen die Hinweise der Beklagten in ihrer Eingabe vom 22. Mai 2014 zu angeblich verfahrensbezogenen Kontakten von Herrn Falckenberg zu Prof. W. Haarmann nicht, da es sich dabei lediglich um unbelegte Verdächtigungen handelt. Das Schiedsgerichtsverfahren kann nicht dazu dienen, derartigen Spekulationen, die einer Grundlage entbehren, nachzugehen und für eine Schiedspartei nach Ablehnungsgründen zu forschen.

Gestützt auf die vorstehenden Ausführungen erlässt das Schiedsgericht folgende

### Verfügung:

(1) Das Schiedsgericht sieht von einer Ernennung von Herrn Christian Hellbardt als vom Schiedsgericht bestellter Gutachter ab.

(2) Über die Tragung allfälliger Kosten, die im Zusammenhang mit der eingeleiteten Beauftragung des Gutachters Herrn Hellbardt entstanden sind, wird im Endentscheid entschieden.

(3) Der Antrag auf Befragung des Gutachters M. Falckenberg zu möglichen Kontakten zu den Prozessparteien und Herrn Prof. W. Haarmann wird abgewiesen.

(4) Diese Verfügung wird mit Zustimmung und Ermächtigung durch die Mitschiedsrichter vom Vorsitzenden allein unterzeichnet.

(5) Diese Verfügung wird den Rechtsvertretern der Parteien, den Mitschiedsrichtern und der ICC per E-Mail zugestellt. Die Parteien werden gebeten den Erhalt der Verfügung per E-Mail zu bestätigen.

Frankfurt am Main, 6. Juni 2014

Das Schiedsgericht

Dr. Georg von Segesser
Vorsitzender des Schiedsgerichts

Beilage 1:    Traktandenliste der Besprechung vom 24. März 2014 in Zürich

**Anhang 1 zu Verfügung Nr. 46 vom 6. Juni 2014**
ENTWURF GVS 21.03.2014

ICC 15362/JHN/GFG DR. ANDREAS RINGSTMEIER in seiner Eigenschaft als Insolvenzverwalter über das Vermögen der AGFAPHOTO GMBH i.L. (Deutschland) vs/ 1. AGFA-GEVAERT NV & CO. KG (Deutschland) et al.

**Traktandenliste für die Besprechung vom 24. März 2014**

Teilnehmer:

- Georg von Segesser
- Paul Oberhammer
- Arndt Overlack
- Christian Hellbardt
- Andrea Meier

1. Entwurf des Gutachterauftrags

    1.1 Zusammensetzung des Gutachterteams, Anforderungen, Qualifikationen

    1.2 Vorgehen

    1.3 Thematik

    1.4 Unabhängigkeits- und Vertraulichkeitserklärungen der Mitarbeitenden

    1.5 Berichterstattung; Ablauf

2. Rechtsfragen, bzw. Bewertungsfragen mit allfälligem rechtlichen Hintergrund

    2.1 Differenzhaftung: Nomineller Kapitalerhöhungsbetrag - Liquidationswert der in die AgfaPhoto GmbH eingebrachten Aktiven und Passiven

    2.2. Abstellen auf den Base-Case bzw. Downside-Case gemäss Gutachten Falckenberg als Grundlage

    2.3 Massgebendes Zeitfenster für die Festsetzung der Liquidationswerte. Bestehen branchenbezogene Erfahrungen für einzelne Aktiven?

    2.4 Zerschlagungsintensität, -geschwindigkeit oder geordnete Liquidation; "Bestmögliche Veräusserung" (OLG Stuttgart, AG 2008, 783, 789)

    2.5 Teilveräusserungsmöglichkeit

    2.6 Abfindungsansprüche der Mitarbeitenden

    2.7 Berücksichtigung der Kosten der Liquidation sowie der Liquiditätslage

    2.8 Risiko von Forderungsausfällen bei Leasingforderungen

    2.9 Lizenzaufwand für Warenumsetzung; Lizenzanspruch

3. Zeitplan

4. Budget

SW-04333089

*Courtesy Translation*

---

## Procedural Order No. 46

## June 6, 2014

---

### The Arbitral Tribunal

Dr. Georg von Segesser, Chairman
Dr. Arndt Overlack and Dr. Paul Oberhammer, Co-Arbitrators
Dr. Andrea Meier, legal secretary

In the ICC Proceeding No. **15362/JHN/GFG**
in the matter

**Dr. Andreas Ringstmeier,**
in his capacity as Insolvency Receiver over the assets of
**AgfaPhoto GmbH i.L.**
Brückenstrasse 21, DISCH-Haus
50667 Cologne
Germany

**Claimant**

represented by Dr. Siegfried H. Elsing, Orrick, Herrington & Sutcliffe LLP,
Heinrich-Heine-Allee 12, 40213, Düsseldorf, Germany
and
Dr. Benedikt Burger, Orrick, Herrington & Sutcliffe LLP,
Friedrichstrasse 31, 60323, Frankfurt am Main, Germany

versus

**Agfa-Gevaert N.V. & Co. KG,**
Kaiser-Wilhelm-Allee 1, 51373 Leverkusen, Germany

**Respondent 1**

**Agfa-Gevaert Healthcare GmbH,**
Tegernseer Landstrasse 161, 81539 Munich, Germany

**Respondent 2**

**Agfa-Gevaert Graphics Systems GmbH,**
Kasteler Strasse 45, 65203 Wiesbaden, Germany

**Respondent 3**

**Agfa-Gevaert N.V.,**
Septestraat 27, 2640 Mortsel, Belgium

**Respondent 4**

all represented by
Robert T. Greig and Aren Goldsmith, Clearly Gottlieb Steen & Hamilton LLP, 12, rue de
Tilsitt, 75008 Paris, France
and
Thomas Buhl, Larry Work-Dembowski, Annet Rombach,
Cleary Gottlieb Steen & Hamilton LLP, Main Tower,
Neue Mainzer Strasse 52, 60311 Frankfurt am Main, Germany

*Courtesy Translation*

ICC Case No. 15362/JHN/GFG                Procedural Order No. 46                June 6, 2014

### I.    INTRODUCTION AND PARTIES' POSITIONS

1.    In Procedural Order No. 42 of October 25, 2013, the Arbitral Tribunal recommended two auditing companies, Rödl & Partner GmbH and RölfsPartner Group, to the Parties as possible candidates for an engagement as experts appointed by the Arbitral Tribunal. In Procedural Order No. 44 of February 10, 2014, the Tribunal informed the Parties of the intent to appoint Mr. Christian Hellbardt of Rödl & Partner GmbH as expert, and granted the Parties an opportunity to submit their comments on this matter.

2.    The procedure for the preparation of the Opinion, as proposed by the Tribunal, provided that the expert should take a position with regard to the Terms of Reference, that the relevant documents be sent to him and that he could address his possible questions to the Tribunal. In addition, points of law were to be defined with him for which the Tribunal would prepare a corresponding memorandum as basis for the expert's assignment (Procedural Order No. 43). Mr. Hellbardt signed a statement of impartiality and a confidentiality agreement on January 15, 2014, prior to delivery of the relevant procedural documents.

3.    In its letter of March 6, 2014, the Tribunal explained to Mr. Hellbardt that the first priority was to work out a time plan for the preparation of the Opinion as well as a budget. The amount required for the costs of the Opinion were then to be paid in advance by the Parties, and the expert's work was not to be taken up until then. At the same time a meeting was planned with the Tribunal in order to determine the cooperation for the preparation of the Opinion. This meeting was held in Zurich on March 24, 2014. The topics of the meeting were listed in an agenda (**Annex 1**).

4.    On February 5, 2014, Claimant informed the Tribunal of following:

> "If Prof. Rödl intends to refer to other professionals of Rödl & Partner to perform the task set for him by the Arbitral Tribunal, it would be of interest to Claimant as to who, from his perspective, would be considered in this case. Purely as a precautionary measure and for reasons of the greatest transparency, Claimant points out that, in a legal dispute held before Regional Court of Düsseldorf, a partner of Prof. Rödl, Mr. Christian Hellbardt who is named on the Rödl & Partner website for its *"Unternehmensbewertung -- Valuation Services"* activities was, together with Mr. Bezant of FTI Consulting, responsible for the valuation of the enterprise Demag Cranes AG as the independent expert. From the excerpts available to Claimant of the documents, it is evident that, in his expert opinion, Mr. Hellbardt refers to the expert opinion of Mr. Bezant (*"Forecast of the operating profits of Demag AG" by FTI Consulting of July 23, 2012"*) of Demag Cranes AG and uses this as a basis for his own statements. As is generally known, Mr. Bezant acted as the expert on behalf of Respondents in the current proceedings, specifically in respect of the valuation of the contribution in kind. As things stand from the perspective of Complainant, this fact alone would however not rule out Mr. Hellbart being consulted within the framework of Prof. Rödl's senior expert opinion."

5.    In their submission of February 28, 2014, Respondents' declared following:

*Courtesy Translation*

"Respondents then contacted Mr. Bezant and asked him about his

previous contacts with Rödl & Partner in general, and with Mr. Hellbardt in particular. First of all, Respondents confirm Claimant's representation of facts and also share its opinion that this does not preclude engaging Mr. Hellbardt as super expert.

Besides the case which Claimant mentioned, Mr. Bezant drew Respondents' attention to two additional cases in which he had been involved as an expert in court disputes alongside professionals from Rödl & Partner. In both cases, FTI – as in the case Claimant referenced – had been retained as an independent expert by minority shareholders to prepare market and business plan analyses for purposes of a company valuation as part of a squeeze-out. Independently, Rödl & Partner had also been retained by those same companies to perform a company valuation pursuant to IDW S1. Rödl & Partner took into account FTI's analysis as part of its planning plausibility test.

One of these two proceedings is currently still pending. Mr. Hellbardt has so far not appeared in that case. The other proceeding, to Mr. Bezant's knowledge, has terminated in regard of the activities of FTI and Rödl & Partner.

According to Mr. Bezant, there was no intensive contact between himself and Rödl & Partner. While Mr. Bezant would not wish to rule out having met Mr. Hellbardt once in a meeting involving several people or having spoken with him, however he has no specific recollection of any such meeting or conversation. What little communication he had with Rödl & Partner staff largely took place by telephone or via e-mail. As far as he could recall, Mr. Bezant mainly had contact with Mr. Robert Frank, an employee who will shortly be leaving the firm.

Mr. Bezant's sporadic contacts with Rödl & Partner staff as part of an expert mandate in court proceedings do not constitute a conflict of interest with respect to Mr. Hellbardt. There is no danger of Mr. Hellbardt's independence and impartiality being compromised in light of the cases described.

For the sake of completeness, Respondents would finally note that Mr. Grün of PwC also acted alongside Rödl & Partner in a transaction that was concluded in 2013. Mr. Grün was engaged to prepare a Fairness Opinion on the adequacy of the transaction terms, while Rödl & Partner – independently of this – was retained to provide a value confirmation for a contribution in kind which was part of the transaction structure. While Mr. Hellbardt was involved in the assessment of the contribution's value, the merely sporadic contact between the two experts, who were working independently from one another, also does not justify any doubt as to his independence and impartiality."

6. With view to these relationships with Mr. Hellbardt brought forth by the Parties, the Tribunal added the question of independence and impartiality to the agenda for March 24, 2014. During this meeting, a remark made by Mr. Hellbardt yielded the information

*Courtesy Translation*

ICC Case No. 15362/JHN/GFG                   Procedural Order No. 46                   June 6, 2014

that telephone contact had taken place between him and Claimant's counsel with regard to the current arbitration proceeding. This prompted the Tribunal to request that Mr. Hellbardt again disclose any and all contacts he had with the Parties and their representatives.

7. Following this Mr. Hellbardt responded in his letter of March 27, 2014 and listed several contacts which existed or still exist between the auditing company Rödl & Partner and experts in the current proceedings.

8. In an e-mail of March 31, 2014, the Chairman of the Tribunal asked Mr. Hellbardt whether his statement listing the client names could be divulged to the Parties or whether he would provide a neutralized version to be distributed for reasons of confidentiality. In the same mail he asked the question, whether Mr. Hellbardt neglected to disclose his contact with Claimant's counsel for specific reasons.

9. In his e-mail of March 31, 2014, Mr. Hellbardt delivered a neutralized version of his letter and added a comment regarding his contact with Dr. Burger. This mail was forwarded to the Parties by the Tribunal on April 2, 2014.

10. In their submission of April 4, 2014, Respondents' requested that Mr. Hellbardt be prompted to disclose all contacts between himself or a representative of Rödl & Partner and Dr. Benedikt Burger or other persons at Orrick's. Mr. Hellbardt subsequently submitted a reply to Respondents' letter and request for information on April 10, 2014, and included several documents with his letter which provide information about the contact and correspondence between Rödl & Partner and Claimant's counsel.

11. On April 16, 2014, Respondents' informed that they reject Mr. Hellbardt as expert, and they made the request that he be dismissed from his position as expert without delay due to concerns of apprehension of bias. The Tribunal will, as necessary, refer to Respondents' reasons for their request in their considerations which follow.

12. In their submission of April 30, 2014 Claimant responded to Mr. Hellbardt's letter of April 10, 2014 and to Respondents' letter dated April 16, 2014. In this Claimant reported "serious doubts" (*tiefgehende Zweifel*) whether Mr. Hellbardt is suited to serve as expert. Claimant would accept a dismissal of the expert by the Tribunal. Further remarks by Claimant will, as they are currently relevant, be further gone into in the Tribunal's considerations which follow.

13. In their submission of May 7, 2014, Respondents reverted to Claimant's letter, and requested that Claimant reimburse Respondents all costs incurred based on the situation that Claimant, following the initial naming of Rödl & Partner as expert candidate in Procedural Order No. 42 of October 25, 2013 already, neglected to disclose its earlier contact with Mr. Hellbardt and neglected to point out the circumstance that Mr. Hellbardt declared himself biased at an earlier time.

14. Respondents' further requested that the Tribunal ask Max Falckenberg, as expert, to provide information concerning all contacts between himself and Parties to this arbitration proceeding at which the complete Tribunal was not present.

*Courtesy Translation*

ICC Case No. 15362/JHN/GFG                  Procedural Order No. 46                  June 6, 2014

15.    On May 16, 2014, Claimant responded to this submission by Respondents' dated May 7, 2014, and Respondents', for their part, in a submission of May 22, 2014 replied to the question of the costs and the questioning of M. Falckenberg as expert.  A further exchange of the Parties' positions regarding particular aspects concerning the request to question Mr. Falckenberg followed on June 2 and 6, 2014, respectively.

## II.    Considerations regarding the apprehension of bias

16.    The Terms of Reference have not yet been signed in this case, and consequently, the dismissal of Mr. Hellbardt is not at issue but only the question of whether or not he should be mandated as an expert.  The Tribunal assumes that in response to this question a violation of Section 1036(1) sentence 1 of the German Code of Civil Procedure suffices to refrain from appointing him.[1]

17.    Reasonable doubts as to the impartiality and non-bias suffice, and a "real danger test" is not required, just as Stein/Jonas comment on Section 1036 of the German Code of Civil Procedure.[2]  In this respect, it is a matter of the Parties' perception and ultimately not an objective test of whether the expert is actually impartial or biased.  Even an expert simply refraining from disclosing circumstances and contacts is capable of giving rise to grounds for partiality, as in particular a withholding of information can give rise to reservations by the Parties that the expert did so because he believed that the information might be adverse to his appointment.  Questions of bias generally require being examined according to a strict standard, and this is advisable in particular at the stage in time of the appointment to avoid subsequent challenge procedures later when costs have already been incurred in connection with the expert appointment.

18.    There could be no doubts in this case as to the fact that Mr. Hellbardt should have disclosed his contacts to the legal representative Dr. Burger from the outset, given that Mr. Hellbardt's description in his letter of April 10, 2014 makes it clear that a potential appointment as a Tribunal expert in this matter was concerned.  It was evidently already clear to Mr. Hellbardt at that time (2011) that strict requirements have to be imposed on the impartiality and non-bias of an expert.  After all, he declined an expert mandate due to potential bias in connection with a mandate handled by a Rödl & Partner employee against the insolvency receiver of AgfaPhoto GmbH i.L., which was also related to the core issue in this procedure of the carve-out of the CI Division from the Agfa-Gaevert Group.

19.    The fact that Mr. Hellbardt incorrectly assumed that AgfaPhoto was undercapitalized on the basis of an  analysis by a fellow attorney, and from today's point of view would not have been required to decline the mandate, has no bearing on the fact that relationships had existed that would have necessitated disclosure.  Even the fact that the Falckenberg Report would have changed or limited the basis for a further

---

[1]    The Tribunal herewith refers to its arguments in Procedural Order No. 39, para. 33 ff. in regard to applicable law.

[2]    Stein/Jenas/Schlosser, Kommentar zu ZPO, 22nd ed. 2002 Tübingen, §1036 para. 17.

*Courtesy Translation*

ICC Case No. 15362/JHN/GFG                Procedural Order No. 46                June 6, 2014

need for clarification in this case has no bearing on the disclosure obligation. Furthermore, Mr. Hellbardt was given information about this arbitration in connection with being contacted in February of 2011 in regard to a potential engagement as an expert, and the position taken by Claimant was described to him.

20.   The Tribunal finds it difficult to understand why being contacted by Claimant's legal representative was only mentioned by Mr. Hellbardt after a corresponding follow-up inquiry, and in response to an explanation by the Tribunal of the standard applicable to the disclosure of contacts.   On signing the Statement of Independence and Confidentiality on January 15, 2014, Mr. Hellbardt was quite familiar with the Parties and their representatives, and the key issue in dispute between the Parties.

21.   Due to the dilatory disclosure of the fact that there had been contacts between Claimant's representatives and Mr. Hellbardt in regard to a potential expert engagement, the Tribunal believes that reasonable doubts as to his impartiality and independence do exist.   Being mandated as the expert under these circumstances is out of the question.

## III.   DISCLOSURE OBLIGATION OF A PARTY

22.   In reference to Procedural Order No. 42 in its submission of November 25, 2013, Claimant did point out in regard to the proposed accounting firms that there had been relationships between Mr. Hellbardt and Rödl & Partner on one hand and the expert Dr. Papp on the other, thereby indicating that he had given consideration to whether there are reasons to object to appointing Mr. Hellbardt in his view. If Claimant had informed the Tribunal at that time that he had contacted Mr. Hellbardt in 2011 in regard to an engagement as an expert in this procedure, the Tribunal would very likely not have considered appointing Mr. Hellbardt.   According to an internal memo by Mr. Hellbardt dated February 9, 2011, the call with Dr. Burger went well beyond a matter of simply being contacted.   Claimant's representative summarized the facts of the case, and pointed out that the substantial liabilities that would have arisen in connection with a liquidation had not been adequately taken into consideration in the valuation.   The miscalculated estimates could be found in the management's minutes (attachment to the e-mail of Ch. Hellbardt dated April 11, 2014).   It should have been possible to expect, that Claimant would disclose this information in consideration of the aspects of procedural due diligence and fairness.   The costs incurred in connection with the attempted appointment of Mr. Hellbardt could have been avoided that way.   In its final decision, the Tribunal will therefore take this circumstance into account in connection with the issue of costs, and the Parties will then also be requested to provide itemized schedules of the costs they incurred in this regard.

## IV.   APPLICATION REGARDING MR. FALCKENBERG

23.   The Tribunal cannot grant Respondents' application to ask the expert Max Falckenberg to disclose information about contacts between him and the participants in the arbitration (including Prof. W. Haarmann).   A party filing an application to reject an expert must be genuinely familiar with the actual circumstances leading to the alleged

*Courtesy Translation*

ICC Case No. 15362/JHN/GFG                 Procedural Order No. 46                 June 6, 2014

bias, simple allegations and suspicious circumstances do not suffice in this regard. Please see the explanations provided in Procedural Order No. 39 para. 37.

24.   Simply the fact the Claimant's representative contacted Mr. Hellbardt in 2011 by no means justifies the assumption that such contacts also may have existed with Mr. M. Falckenberg.   Respondent's statements in their submission of May 22, 2014 to the effect that Mr. Falckenberg had allegedly had contacts to Prof. W. Haarmann also fail to suffice, as these merely involve unproven suspicions.   The arbitration proceedings do not serve the purpose of pursuing such groundless speculations, nor of inquiring into grounds for a rejection for a party to the arbitration.

Based on the above arguments, the Tribunal herewith issues the following

**Order:**

(1)   The Tribunal herewith refrains from appointing Mr. Christian Hellbardt as the Tribunal-appointed expert.

(2)   The issue of bearing any costs arising in connection with the preparations for the engagement of Mr. Hellbardt as the expert shall be decided in the final decision.

(3)   The application to question the expert M. Falckenberg about any contacts to the Parties to the procedure and Prof. W. Haarmann is herewith denied.

(4)   This Order shall be signed by the Chairman only with the approval and authorization of the CO-Arbitrators.

(5)   This Order will be served to the legal representatives of the Parties, the Co-Arbitrators and the ICC by e-mail. The Parties are requested to confirm receipt of the Order by e-mail.

Frankfurt am Main, June 6, 2014

The Tribunal

[*Signature*]

Dr. Georg von Segsser

Chairman of the Tribunal

Annex 1:       Agenda for the meeting of March 24, 2014 in Zurich

7/7

*Courtesy Translation*

ICC 15362/JHN/GFG DR. ANDREAS RINGSTMEIER in his capacity as the Insolvency Receiver over the Assets of AGFAPHOTO GMBH i.L. (Germany) vs/ 1. AGFA-GEVAERT NV & CO. KG (Germany) et al.

Agenda for the meeting of March 24, 2014 in Zurich
Participants:

➢ Georg von Segesser

➢ Paul Oberhammer

➢ Arndt Overlack

➢ Christian Hellbardt

➢ Andrea Meier

1.    Draft Terms of Reference

    1.1.    Composition of the expert team, requirements, qualifications

    1.2.    Approach

    1.3.    Topic

    1.4.    Statements of Independence and Confidentiality of Employees

    1.5.    Reporting; procedure

2.    Legal issues and valuation issues with

    2.1.    Differential liability: nominal amount of the capital increase – liquidation value of the Assets and liabilities contributed to AgfaPhoto GmbH

    2.2.    Reliance on the Base-Case or Downside-case based on the Falckenberg Report

    2.3.    Definite timeframe for the determination of the liquidation values. Are there industry-related empirical values for individual assets?

    2.4.    Break-up intensity, break-up speed or orderly liquidation; "Best-possible sale" (OLG Stuttgart, AG 2008, 783, 789)

    2.5.    Partial sale option

    2.6.    Severance payment entitlements of employees

    2.7.    Consideration of liquidation costs and liquidation situation

    2.8.    Risk of defaults on leasing receivables

    2.9.    License expense for sale of goods; license entitlement

3.    Time schedule

4.    Budget