Exhibit 24

---

**Verfügung Nr. 47**

**22. September 2014**

---

**Das Schiedsgericht**

Dr. Georg von Segesser, Vorsitzender
Dr. Arndt Overlack und Univ.-Prof. Dr. Paul Oberhammer, Mitschiedsrichter
Dr. Andrea Meier, juristische Sekretärin

im ICC-Verfahren Nr. **15362/JHN/GFG**
in Sachen

**Dr. Andreas Ringstmeier,**
in seiner Eigenschaft als Insolvenzverwalter über das Vermögen der
**AgfaPhoto GmbH i.L.,**
Brückenstrasse 21, DISCH-Haus
50667 Köln
Deutschland

**Kläger**

vertreten durch
Prof. Dr. Siegfried H. Elsing, Orrick, Herrington & Sutcliffe LLP,
Heinrich-Heine-Allee 12, 40213 Düsseldorf, Deutschland
sowie
Dr. Benedikt Burger, Orrick, Herrington & Sutcliffe LLP,
Friedrichstrasse 31, 60323 Frankfurt am Main, Deutschland

gegen

**Agfa-Gevaert GmbH,**
Am Coloneum 2, 50829 Köln, Deutschland

**Beklagte 1**

**Agfa-Gevaert Healthcare GmbH,**
Tegernseer Landstrasse 161, 81539 München, Deutschland

**Beklagte 2**

**Agfa-Gevaert Graphics Systems GmbH,**
Kasteler Strasse 45, 65203 Wiesbaden, Deutschland

**Beklagte 3**

**Agfa-Gevaert N.V.,**
Septestraat 27, 2640 Mortsel, Belgien

**Beklagte 4**

alle vertreten durch
Robert T. Greig und Aren Goldsmith, Cleary Gottlieb Steen & Hamilton LLP,
12, rue de Tilsitt, 75008 Paris, Frankreich
sowie
Thomas Buhl, Larry Work-Dembowski, Annett Rombach,
Cleary Gottlieb Steen & Hamilton LLP, Main Tower,
Neue Mainzer Strasse 52, 60311 Frankfurt am Main, Deutschland

## I.   ERNENNUNG DER BALMER-ETIENNE AG ALS NEUE GUTACHTERIN

1.   Nach der Nichternennung von Herrn Christian Hellbardt als Gutachter unterbreitete das Schiedsgericht den Parteien mit Schreiben vom 16. Juni 2014 acht Wirtschaftsprüfungsgesellschaften als mögliche Gutachter und lud die Parteien ein, begründete Einwände gegen eine allfällige Bestellung als vom Schiedsgericht bestellte Sachverständige für die gemäss Beilage zu Verfügung Nr. 43 beschriebenen Aufgaben einzureichen. Soweit die Parteien keine begründeten Einwände geltend machen würden, wurden sie ersucht, die vorgeschlagenen Wirtschaftsprüfungsunternehmen nach ihrer Präferenz zu nummerieren. Am 8. Juli 2014 übermittelten die Parteien ihre Stellungnahmen (**Beilage 1**).

2.   Jede vom Schiedsgericht vorgeschlagene Wirtschaftsprüfungsgesellschaft wurde von mindestens einer Partei abgelehnt. Zudem lehnten beide Parteien jeweils den von der Gegenpartei vorgeschlagenen Gutachterkandidaten ab. Da sich unterdessen in Deutschland kaum noch eine Wirtschaftsprüfungsgesellschaft finden lässt, welche für die Erstellung des Gutachtens geeignet und nicht schon mit dem Fall direkt oder indirekt befasst ist oder aus anderen Gründen von mindestens einer Partei abgelehnt wurde, nahm das Schiedsgericht am 14. August 2014 mit der Balmer-Etienne AG, Luzern, Schweiz (nachfolgend "Balmer-Etienne" oder "die Gutachterin") Kontakt auf. Nach Bekanntgabe der Namen der Parteien und deren Vertretern teilte Balmer-Etienne dem Schiedsgericht mit, dass keine ihr bekannten Interessenkonflikte bestehen und dass im Falle einer Beauftragung Herr Stephan Vollenweider als Hauptverantwortlicher für die Erstellung des Gutachtens tätig werden würde.

3.   Zur Abklärung der Eignung und Unabhängigkeit von Balmer-Etienne für den in Frage stehenden Auftrag übermittelte das Schiedsgericht ihr am 19. August 2014 einen Fragenkatalog, den Entwurf des Gutachterauftrags (**Beilage 2**) sowie von den an der Erstellung des Gutachtens beteiligten Personen zu unterzeichnende Unabhängigkeitserklärungen und Vertraulichkeitsvereinbarungen. In diesem Zusammenhang übermittelte das Schiedsgericht ebenfalls eine Liste mit den Gutachtern und Wirtschaftsprüfungsgesellschaften, die schon am vorliegenden Schiedsverfahren beteiligt sind oder, soweit dem Schiedsgericht bekannt, an Parallelverfahren beteiligt oder in einem anderen Zusammenhang für eine Partei tätig geworden sind (**Beilage 3**). Es ersuchte Balmer-Etienne, allfällige vorbestehenden Kontakte, aus denen eine besondere Beziehung entstand, offenzulegen.

4.   Auf Grundlage des ausgefüllten Fragenkatalogs und der unterzeichneten Unabhängigkeitserklärungen und Vertraulichkeitsvereinbarungen (**Beilage 4**), welche Balmer-Etienne am 28. August 2014 dem Schiedsgericht übermittelten, ist das Schiedsgericht zum Schluss gekommen, dass Balmer-Etienne in Bezug auf den in Frage stehenden Auftrag zur Erstellung eines Gutachtens geeignet und unabhängig ist.

5.   In diesem Zusammenhang macht das Schiedsgericht die Parteien darauf aufmerksam, dass Balmer-Etienne als Revisionsstelle der Anwaltskanzlei des Vorsitzenden des Schiedsgerichts, Schellenberg Wittmer AG, Zürich, tätig ist. Die mit der Revision betrauten Personen bei Balmer-Etienne werden an der Erstellung des Gutachtens allerdings nicht beteiligt sein. Das Schiedsgericht ist der Meinung, dass dies kein Grund ist, um die Unabhängigkeit von Balmer-Etienne in Zweifel zu ziehen, hielt aber eine Offenlegung dieses Umstands aus Gründen der Transparenz für angebracht.

6.   Das Schiedsgericht wird deshalb die Balmer-Etienne AG, Kauffmannweg 4, 6003 Luzern, Schweiz, als Gutachterin ernennen mit dem Auftrag, eine Bewertung der Aktiven und Passiven

der AgfaPhoto GmbH auf den Stichtag (1./2. November 2004) zu Liquidationswerten nach anerkannten Bewertungsgrundsätzen zu erstellen, sofern die Parteien dagegen keine begründeten Einwände innerhalb von 14 Tagen ab Zustellung dieser Verfügung vorbringen.

7. Mit Bezug auf die Bewertung nach deutschem Recht und deutschen Standards wird Balmer-Etienne auf die Unterstützung eines unabhängigen deutschen Experten zurückgreifen. Im Vordergrund stehen die Herren Thomas Wahlen, UHY Wahlen & Partner, Gerbermühlstrasse 7, 60594 Frankfurt am Main, Deutschland und Johann Martin Steger, Kullen Müller Zinser Treuhand GmbH, Amundsenstrasse 6, 71063 Sindelfingen, Deutschland. Nach Angaben von Herrn Stephan Vollenweider haben ihm beide Kandidaten bestätigt, dass sie, beziehungsweise ihre Unternehmen keinerlei Konflikte mit den Parteien und den Vertretern haben und auch noch nie mit der Thematik des vorliegenden Schiedsgerichtsverfahren direkt oder indirekt in Berührung waren (**Beilage 5**). Die Lebensläufe der obengenannten Kandidaten sind dieser Verfügung beigelegt (**Beilage 6**).

8. Sollten die Parteien innerhalb von 14 Tagen ab Zustellung dieser Verfügung gegen beide Kandidaten begründete Einwände geltend machen, behält sich das Schiedsgericht vor, Herrn Em. O. Univ. Prof. Dr. Gerwald Mandl, Tamsweg, Österreich, als Experten für Bewertungsfragen nach deutschem Recht und deutschen Standards beizuziehen. Lebenslauf sowie Publikationsliste von Herrn Em. O. Univ. Prof. Dr. Mandl sind dieser Verfügung beigelegt (**Beilage 7**).

## II. VERFAHREN DER ERNENNUNG DER NEUEN GUTACHTERIN UND DER ERSTELLUNG DES GUTACHTENS

9. Das Schiedsgericht antwortete mit Schreiben vom 30. Juni 2014 auf das Schreiben der Beklagten vom 19. Juni 2014, in dem diese das Schiedsgericht um verschiedene Klarstellungen in Bezug auf die in der Verfügung Nr. 46 vom 6. Juni 2014 gemachten Erläuterungen gebeten hatten. Mit Schreiben vom 8. Juli 2014 brachten die Beklagten vor, sie entnähmen dem Schreiben des Schiedsgerichts vom 30. Juni 2014, dass die Parteien zu einem späteren Zeitpunkt die Gelegenheit haben würden, zur Instruktion des neuen Gutachters und zum Entwurf des Gutachtens Stellung zu nehmen und ersuchten das Schiedsgericht um Bestätigung, dass die Möglichkeit zur Stellungnahme das Thema der Bindung an das Gutachten Falckenberg umfasse. Aus Sicht der Beklagten böten sich die kommenden Monate an, um die Relevanz des Falckenberg-Gutachtens für die Tätigkeit des neuen Gutachters schriftsätzlich durch die Parteien und ihre Gutachter zu adressieren.

10. In seiner Stellungnahme vom 24. Juli 2014 zu den Vorbringen der Beklagten vom 8. Juli 2014 brachte der Kläger vor, dass sich das Schiedsgericht im Hinblick auf das weitere Verfahren und die mit Blick auf die Gewährung des rechtlichen Gehörs eingeräumten Möglichkeiten zur Stellungnahme durch die Parteien klar und unmissverständlich geäussert habe. Im jetzigen Verfahrensstadium gehe es dabei im Hinblick auf inhaltliche Stellungnahmen der Parteien ausschliesslich um Rechtsfragen. Den Parteien werde auch rechtliches Gehör im Hinblick auf die gutachtliche Bewertung durch den Gutachter gewährt, indem der Entwurf des Liquidationsgutachtens an einer Verhandlung mit dem Gutachter und den Parteigutachtern erörtert werde. Es sei nicht nachvollziehbar, woraus die Schiedsbeklagten im jetzigen Verfahrensstadium eine Notwendigkeit ableiten wollten, sich in einem monatelangen Prozess mit der Bedeutung der Feststellungen des Gutachters Falckenberg zu beschäftigen. Nach Auffassung des Klägers wollen sich die Schiedsbeklagten durch die Hintertür eine Gelegenheit schaffen, ihr Liquidations-

wertgutachten vom 31. Mai 2013 zu "reparieren", wobei in Betracht käme, entweder ein neues nachgebessertes Gutachten einzureichen oder nachträglich zu konstruieren, dass ihr – nach Auffassung des Klägers – falsches Gutachten auch dann aufrecht erhalten werden könnte, wenn man die Feststellungen und Schlussfolgerungen Falckenbergs zugrunde legten.

11. Mit Schreiben vom 31. Juli 2014 stellten die Beklagten klar, dass sie nicht gedenkten, eine neue Liquidationsbewertung einzureichen und dass ihr Gesuch vom 8. Juli 2014 in keiner Weise den Zweck verfolge, ihre am 31. Mai und 25. Juli 2013 eingereichten Gutachten zur Liquidationsbewertung zu modifizieren oder gar zu "reparieren".

12. An dieser Stelle hält das Schiedsgericht fest, dass in Bezug auf die beabsichtigte Ernennung von Balmer-Etienne und die Erstellung des Gutachtens grundsätzlich wie üblich vorgegangen werden soll und verweist im Grundsatz auf das in den Erwägungen von Verfügung Nr. 43 vom 13. Januar 2014 vorgesehene Verfahren. Vor diesem Hintergrund war im Schreiben des Schiedsgerichts vom 30. Juni 2014 mit der Möglichkeit der Parteien zur Stellungnahme zur Instruktion des neuen Gutachters das übliche Vorgehen gemeint, wobei das übliche Vorgehen die Gelegenheit zur Stellungnahme zum Entwurf des Gutachterauftrages beinhaltet. Der Balmer-Etienne am 19. August 2014 zugestellte Entwurf des Gutachterauftrags basiert auf dem im Hinblick auf die ursprünglich beabsichtigten Ernennung von Herrn Hellbardt als Gutachter erstellten Entwurf und wurde nur angepasst, um den Verfahrensablauf korrekt wiederzugeben. Die Parteien haben bereits jeweils mit Schreiben vom 5. Februar 2014 und 6. März 2014 zu diesem Entwurf Stellung nehmen können. Angesichts der geringfügigen Änderungen erübrigt sich deshalb die Einräumung einer erneuten Möglichkeit zur Stellungnahme zum Entwurf des Gutachterauftrags.

13. Nach der Ernennung von Balmer-Etienne als Gutachterin wird sich das Schiedsgericht ohne die Parteivertreter zu einer Besprechung des Budgets und des Zeitplans für die Gutachtertätigkeit und weiterer Rahmenbedingungen gestützt auf den Gutachterauftrag (Umfang der Dokumentation und Beizug von weiteren Experten) treffen. Die Parteien werden über die Ergebnisse der Besprechung informiert. Nachdem sich die neue Gutachterin mit den Verfahrensakten vertraut gemacht hat, wird sie allfällige Rechtsfragen definieren, welche das Schiedsgericht anlässlich einer Besprechung mit der Gutachterin erörtern und ohne Präjudiz beantworten wird. Soweit sich die Parteien im bisherigen Verfahren zu den mit der Gutachterin erörterten Rechtsfragen nicht schon geäussert haben, wird das Schiedsgericht entscheiden, in welchem Zeitpunkt den Parteien noch Gelegenheit zur Stellungnahme einzuräumen ist. In der Folge wird die Gutachterin einen Entwurf ihres Gutachtens erstellen, zu welchem das Schiedsgericht und die Parteien Fragen und Kommentare übermitteln können. Diese werden zusammen mit dem Gutachtensentwurf unter Beteiligung der Parteigutachter in einer mündlichen Verhandlung mit den Parteien besprochen, worauf die Gutachterin ihr Endgutachten erstellen wird, gefolgt von den Post-Hearing Briefs der Parteien.

14. Im Hinblick auf die Bindungswirkung der Schlussfolgerungen des Falckenberg-Gutachtens auf die neue Gutachterin verweist das Schiedsgericht auf die Ausführungen in seinem Schreiben vom 30. Juni 2014 und wiederholt, dass es sich mit Ausnahme der Relevanz der Liquidationswerte noch keine Meinung zu Bewertungsfragen oder zur Relevanz der weiteren Schlussfolgerungen des Falckenberg-Gutachtens gebildet hat. Wie bereits in Verfügung Nr. 43 vom 13. Januar 2014 festgehalten, hat der Gutachter sich bei der Bewertung der auf den Stichtag bezogenen Aktiva und Passiva der AgfaPhoto GmbH zu Liquidationswerten nach den anerkannten Bewertungsgrundsätzen zur Liquidationswertermittlung zu richten.

15. Unter diesen Gesichtspunkten kann den Ausführung der Beklagten, dass der neue Gutachter generell befugt sein sollte, nach seiner eigenen Expertise und im Rahmen der "anerkannten Grundsätze der Liquidationsbewertung" festzulegen, welche Annahmen und Schlussfolgerungen des Falckenberg-Gutachtens er übernimmt und seiner Bewertung zu Grunde legt, im Grundsatz zugestimmt werden. Ebenfalls kann dem Ersuchen der Beklagten in ihrem Schreiben vom 8. Juli 2014 um Bestätigung, dass die Möglichkeit zur Stellungnahme der Parteien das Thema umfasst, inwiefern die einzelnen Bestandteile der Feststellungen von Herrn Falckenberg für die Erstellung des Liquidationsgutachtens relevant sein sollen, grundsätzlich entsprochen werden.

16. Das Schiedsgericht hält es allerdings, wie bereits in Verfügung Nr. 43 vom 13. Januar 2014 ausgeführt, für sinnvoll, die neue Gutachterin vorab die Verfahrensakten studieren zu lassen. Die neue Gutachterin soll so lange wie möglich neutral ans Werk gehen können, ohne bereits den Auffassungen der Parteien ausgesetzt zu sein. Es wäre deshalb – und auch im Hinblick auf die damit verbundene Verfahrensverzögerung – wenig effizient und sachgerecht, wenn die Relevanz des Falckenberg-Gutachtens in den kommenden Monaten schriftsätzlich durch die Parteien und ihre Gutachter adressiert werden würde. Das Schiedsgericht erachtet es als zielführender, im Hinblick auf die Relevanz der Feststellungen des Falckenberg-Gutachtens analog zur Klärung allfälliger Rechtsfragen vorzugehen. Konkret bedeutet dies, dass die Gutachterin nach dem Studium der Verfahrensakten ihre allfälligen Fragen zum Falckenberg-Gutachten bzw. zur Handhabung des Falckenberg-Gutachtens formulieren und die Punkte, in denen sie eine andere Auffassung als das Falckenberg-Gutachten vertritt, nennen soll. Dabei darf nicht übersehen werden, dass das Falckenberg-Gutachten den Fokus auf der Prüfung der Fortführbarkeit hatte, während das Gutachten von der neuen Gutachterin die Bewertung der Sacheinlage zum Liquidationswert zum Gegenstand hat. Das Schiedsgericht wird sich dann mit der neuen Gutachterin treffen, um diese Fragen zu besprechen und ohne Präjudiz der Gutachterin entsprechende Hinweise geben. Soweit sich die Parteien im bisherigen Verfahren zu den mit der Gutachterin erörterten Fragen nicht schon geäussert haben, wird das Schiedsgericht entscheiden, in welchem Zeitpunkt den Parteien noch Gelegenheit zur Stellungnahme einzuräumen ist. Die Parteien werden zumindest aber die Möglichkeit haben, das Thema Relevanz der Schlussfolgerungen des Falckenberg-Gutachtens in ihren Stellungnahmen zum Entwurf des Gutachtens oder in ihren Post Hearing Briefs zu adressieren, womit das rechtliche Gehör genügend gewahrt wird.

17. An dieser Stelle möchte das Schiedsgericht den Parteien das vorgesehene Verfahren auch angesichts der Vielzahl der in den vergangenen Monaten gemachten unaufgeforderten Eingaben seitens der Parteien noch einmal in Erinnerung rufen. Im Hinblick auf die Wahrung des rechtlichen Gehörs sind die Parteien selbstverständlich nicht gehindert, weiterhin unaufgeforderte Eingaben an das Schiedsgericht zu übermitteln. Das Schiedsgericht möchte die Parteien aber darauf hinweisen, dass es die darin vorgebrachten Argumente nach dem vorgesehenen Verfahren erst im Rahmen der Stellungnahmen der Parteien zum Entwurf des Gutachtens oder im Rahmen der Post Hearing Briefs würdigen wird. Aus Gründen der Übersichtlichkeit behält sich das Schiedsgericht vor, die Parteien aufzufordern, die Argumente, die sie in den unaufgeforderten Eingaben vorbringen, entweder in ihren Stellungnahmen zum Entwurf des Gutachtens oder in den Post Hearing Brief noch einmal zusammenzufassen. Unter dem Gesichtspunkt der Verfahrenseffizienz bietet sich deswegen die Überlegung an, ob es nicht sinnvoller wäre, diese Argumente aufzuheben und erst in den vorgenannten Schriftsätzen vorzubringen.

## III.    VORLAGE VON UNTERLAGEN AN DEN NEUEN GUTACHTER

18.    Mit Eingabe vom 23. Juli 2014 bat der Kläger das Schiedsgericht um eine verfahrensleitende Weisung, wie mit den Unterlagen verfahren werden soll, die die Beklagten dem Kläger gestützt auf die Verfügung Nr. 42 vom 25. Oktober 2013 herausgegeben hat. Der Kläger äussert die Auffassung, dass von den an den Kläger herausgegebenen Unterlagen die ungeschwärzt offen gelegten Dokumente mit weiteren Details zu der innerhalb der Agfa-Gevaert vorgestellten Schliessungsplanung vom 30. März/2. April 2004 (sog. *Baseline*-Planung K 49/K-50) dem neuen Gutachter weitergeleitet werden sollten. Die Beklagten stellten sich mit Schreiben vom 28. Juli 2014 auf den Standpunkt, dass das Ersuchen des Klägers alleine dem Zweck diene, das Schiedsgericht durch falsche und widersprüchliche Charakterisierungen zu beeinflussen. Die herausgegebenen Unterlagen enthielten nicht, wie der Kläger den Eindruck erweckt habe, den bisher in den Akten vorhandenen Unterlagen widersprechende Zahlen, sondern stützten die längst bekannten Daten ohne hiervon inhaltlich abzuweichen. Zudem widersprachen die Beklagten nachdrücklich dem Ansinnen des Klägers, dem Gutachter nur eine Auswahl der edierten Dokumente zu übermitteln. Die dem Kläger übermittelten Dokumente müssten dem Gutachter vollständig zur Verfügung gestellt werden, damit er sich selbst ein Urteil über die Relevanz einzelner Unterlagen bilden könne. Der Kläger antwortete mit Ausführungen zur Urkundenedition mit E-Mail vom 1. August 2014.

19.    Da es sich bei den in Frage stehenden Unterlagen um ungeschwärzte Dokumente handelt, welche sich als Anlagen K-49/K-50 bereits in geschwärzter Form in den Verfahrensakten dieses Schiedsverfahrens befinden, sieht das Schiedsgericht keinen Grund, weshalb diese Unterlagen nicht im geeigneten Zeitpunkt der neuen Gutachterin vorgelegt werden sollten. Jedenfalls sind sie zu den Akten zu nehmen. Die neue Gutachterin wird hierbei selber in der Lage sein, nach den anerkannten Bewertungsgrundsätzen zur Liquidationswertermittlung, über die Relevanz und die inhaltlichen Implikationen der ihr vorliegenden Unterlagen zu entscheiden.

Gestützt auf die vorstehenden Ausführungen erlässt das Schiedsgericht folgende

**Verfügung:**

(1)    Die Parteien werden eingeladen, ihre begründeten Einwände gegen die Ernennung von Herrn Stephan Vollenweider, Balmer-Etienne AG, Luzern sowie den allfälligen Beizug von Herrn Thomas Wahlen, UHY Wahlen & Partner, Frankfurt am Main, und/oder Herrn Johann Martin Steger, Sindelfingen und/oder Herrn Em. O. Univ. Prof. Dr. Gerwald Mandl, Tamsweg als unabhängigen Experten bis zum **6. Oktober 2014** vorzubringen.

(2)    Sofern die Parteien bis zum **6. Oktober 2014** keine begründeten Einwände vorbringen, wird das Schiedsgericht, Balmer-Etienne AG, Kauffmannweg 4, 6003 Luzern, Schweiz, als Gutachterin ernennen mit dem Auftrag, eine Bewertung der Aktiven und Passiven der AgfaPhoto GmbH auf den Stichtag (1./2. November 2004) zu Liquidationswerten nach anerkannten Bewertungsgrundsätzen zu erstellen.

(3)    In Absprache mit Balmer-Etienne AG und nach Berücksichtigung allfälliger begründeter Einwände der Parteien wird das Schiedsgericht einen der in Ziff. 1 genannten Herren als zusätzlichen Gutachter für Bewertungsfragen nach deutschem Recht und deutschen Standards ernennen.

(4)    Die ungeschwärzt vorliegenden Dokumente zur Schliessungsplanung (Anlagen K-49/K-50) werden zu den Akten des Verfahrens genommen.

(5)    Diese Verfügung wird mit Zustimmung und Ermächtigung durch die Mitschiedsrichter vom Vorsitzenden allein unterzeichnet.

(6)    Diese Verfügung wird den Rechtsvertretern der Parteien, den Mitschiedsrichtern, dem Experten und der ICC per E-Mail zugestellt. Die Parteien werden gebeten den Erhalt der Verfügung per E-Mail zu bestätigen

Frankfurt am Main, 22. September 2014

Das Schiedsgericht

Dr. Georg von Segesser
Vorsitzender des Schiedsgerichts

Beilage 1:    Stellungnahmen der Parteien vom 8. Juli 2014

Beilage 2:    Entwurf des Gutachterauftrags vom 19. August 2014

Beilage 3:    Liste der ins Verfahren involvierten Gutachter

Beilage 4:    Schreiben der Balmer-Etienne AG vom 28. August 2014 inkl. Beilagen

Beilage 5:    Bestätigungen der Herren Johann Martin Steger und Thomas Wahlen betreffend Unabhängigkeit

Beilage 6:    Lebensläufe der Herren Johann Martin Steger und Thomas Wahlen

Beilage 7:    Lebenslauf sowie Publikationsliste von Herrn Em. O. Univ. Prof. Dr. Mandl

Beilage 1 zu Verfügung Nr. 47



ORRICK

Orrick · Friedrichstrasse 31 · 60323 Frankfurt

ORRICK, HERRINGTON & SUTCLIFFE LLP
FRIEDRICHSTRASSE 31
60323 FRANKFURT

*tel  +49 (69) 71588-0*
*fax  +49 (69) 71588-588*

WWW.ORRICK.COM

**Per E-Mail**
Herrn Dr. Georg von Segesser
Schellenberg Wittmer
Löwenstrasse 19
Postfach 1876
CH-8021 Zürich

Herrn Dr. Arndt Overlack
Baas Overlack Witz
Erzbergerstr. 5
D-68165 Mannheim

Herrn Univ.-Prof. Dr. Paul Oberhammer
Institut für Zivilverfahrensrecht
Schenkenstrasse 8-10
AT 1010 Wien

Dr. Benedikt Burger
Rechtsanwalt • Partner

*tel* +49 (0)69-71588-221
*fax* +49 (0)69-71588-588
bburger@orrick.com

Assistentin
Sabine Schumacher

#552072281
8. Juli 2014

ICC Schiedsverfahren Nr. 15362/JHN/GFG – Dr. Andreas Ringstmeier in seiner Eigenschaft als Insolvenzverwalter über das Vermögen der AgfaPhoto GmbH i.I. ./. Agfa-Gevaert N.V. & Co. KG *et al.* – *Schreiben des Schiedsgerichts vom 16. Juni 2014*

Sehr geehrter Herr Vorsitzender,
sehr geehrte Herren Mitglieder des Schiedsgerichts,

der Schiedskläger kommt nachfolgend der Einladung des Schiedsgericht nach, zu den vom Schiedsgericht im Schreiben vom 16. Juni 2014 als Gutachterkandidaten aufgeführten WP-Gesellschaften Stellung zu nehmen, dabei insbesondere Einwände gegen deren Benennung vorzutragen und eine Rangliste der Wirtschaftsprüfungsgesellschaften nach Präferenz aufzustellen.

Hierzu nimmt der Schiedskläger wie folgt Stellung:

1.      Das Schiedsgericht hat bislang nur WP-Gesellschaften als solche benannt und nicht einzelne Berufsträger, welche dann konkret als Gutachter in Frage kämen. Vor diesem

*Orrick, Herrington & Sutcliffe LLP, eine Partnerschaft mit beschränkter Haftung nach dem Recht des US- Staates Kalifornien, ist eingetragen beim Secretary of State, State of California, Sacramento California (Registrierungs-Nr. 201996243002). Die persönliche Haftung der Partner ist beschränkt.*

*Orrick, Herrington & Sutcliffe LLP is a Limited Liability Partnership under the laws of the U.S. State of California, is registered with the Secretary of State, State of California, Sacramento California (Registration No 201996243002). The personal liability of the partners is limited.*



Seite 2

Hintergrund behält sich der Schiedskläger ausdrücklich vor, Einwände im Hinblick auf einzelne Personen vorzutragen und diese ggf. auch abzulehnen.

2. Nachstehend übermittelt der Schiedskläger seine Rangliste der vom Schiedsgericht erwähnten WP-Gesellschaften:

- (1) Dornbach GmbH, Koblenz

- (2)/(3) FIDES-Gruppe, Bremen/MDS Möhrle & Partner, Hamburg

- (4) Bansbach Schübel Brösztl & Partner GmbH, Stuttgart

- (5) Fraglich: RWT Reutlinger Wirtschaftstreuhand GmbH, Reutlingen

- [(6) Ungeeignet: Curacon GmbH, Münster]

- [(7) Ungeeignet: „HLB Deutschland", Düsseldorf bzw. deren Mitglieds-unternehmen]

- [(8) Abgelehnt: Esche Schümann Commichau, Hamburg].

In diese Liste seiner Präferenzen sind insbesondere die Hinweise eingeflossen und mitberücksichtigt, die der Schiedskläger in der nachfolgenden Ziffer 3. gibt.

3. Im Hinblick auf die konkret vom Schiedsgericht vorzugeschlagenen WP-Gesellschaften gibt der Schiedskläger die folgenden ergänzenden Hinweise:

a. MDS Möhrle & Partner ist nach den dem Schiedskläger vorliegenden Informationen auch Bestandteil des Verbundes RSM International. Hierdurch allein ergeben sich nach Auffassung des Schiedsklägers allerdings keine Ausschlussgründe: Bereits auf Seite 7f. seiner Stellungnahme vom 26. Mai 2014 hat der Schiedskläger im Hinblick auf den vom Schiedsgericht unterbreiteten Vorschlag „RSM Deutschland, Berlin" klargestellt, dass die frühere Tätigkeit von Herrn Alessandro di Nicola, Partner im Mailänder Büro von Orrick, für eine Privatperson in einer außergerichtlichen Auseinandersetzung mit RSM Italia Audit & Insurance Srl. keinen Tatbestand berührt, der Anlass zur Besorgnis der Befangenheit im Hinblick auf ein Tätigwerden eines deutschen Mitglieds des RSM-



Seite 3

Verbundes rechtfertigen könnte. Wie der Schiedskläger in der zitierten Stellungnahme herausgestellt hat, wäre dieser Sachverhalt nach Ziffer 4.3. der Grünen Liste der *IBA-Guidelines on the Conflict of Interest („IBA-Guidelines")* noch nicht einmal offenlegungspflichtig. Damit steht auch ohne Weiteres fest, dass er schon gar nicht die Besorgnis der Befangenheit begründen kann.

Dasselbe gilt für den Hinweis der Schiedsbeklagten zur RSM Deutschland, Berlin, in ihrem Schreiben vom 26. Mai 2014. Die Schiedsbeklagten hatten in diesem Zusammenhang bekanntlich mitgeteilt, dass ein Mitglied im Team der Verfahrensbevollmächtigten, Herr Larry Work-Dembowski, in den vergangenen zwei Jahren intensiv in einem anderen Schiedsverfahren mit einem ausländischen Mitglied des RSM-Netzwerkes zusammen gearbeitet habe. In seiner Stellungnahme vom 2. Juni 2014 hat der Schiedskläger auf Seite 2 im Detail dargelegt, dass dieser Berührungspunkt keinerlei Relevanz für eine eventuelle Besorgnis einer Befangenheit haben kann.

Zusammenfassend kann festgehalten werden, dass sich aus der Zugehörigkeit von MDS Möhrle & Partner zum RSM-Verbund keinerlei Gesichtspunkte ergeben, die im vorliegenden Fall die Besorgnis einer Befangenheit und damit die Ablehnung dieser Obergutachterkandidaten rechtfertigen.

b.    Die FIDES-Gruppe in Bremen ist ebenso wie Flick Gocke Schaumburg („*FGS*") Mitglied des Verbundes „Praxity". Bereits auf Seite 6 seiner Stellungnahme vom 26. Mai 2014 hat der Schiedskläger darauf hingewiesen, dass die Mitgliedsfirmen von Praxity als unabhängige Wirtschaftsprüfungsgesellschaft agieren, welche ihre Tätigkeit als eigenständig und insbesondere wirtschaftlich unabhängige Einheiten betreiben. Deshalb sind verschiedene Mitgliedsfirmen von Praxity insbesondere auch nicht daran gehindert, in derselben Sache jeweils Mandanten mit widerstreitenden Interessen zu vertreten. Wie dargelegt, stellt die gemeinsame Zugehörigkeit zu einem Verbund insbesondere wirtschaftlich unabhängiger Wirtschaftsprüfungsgesellschaften keinen Gesichtspunkt dar, der unter dem Aspekt einer eventuellen Besorgnis der Befangenheit Berücksichtigung finden könnte. Tatsächlich sind diese Fälle nach der Roten oder Orangen Liste der *IBA-Guidelines* nicht einmal offenlegungspflichtig. Damit liegt auf der Hand, dass eine gemeinsame Mitgliedschaft der FIDES-Gruppe und von FGS im Verbund Praxity keinen Grund darstellen kann, die FIDES-Gruppe im vorliegenden Fall als Obergutachter abzulehnen.



ORRICK

Seite 4

Der Vollständigkeit halber weist der Schiedskläger im übrigen darauf hin, dass der heute am Standort Bremen tätige Ebner Stolz-Partner Prof. Dr. Dietrich Grashoff vor seinem Eintritt bei Ebner Stolz bei der FIDES-Gruppe in Bremen tätig war. Auch dieser Umstand stellt aber, worauf das Schiedsgericht in seinem Schreiben vom 16. Juni 2014 ausdrücklich hingewiesen hat, keinen Umstand dar, der die Besorgnis der Befangenheit begründen könnte.

c.      Die RWT Reutlinger Wirtschaftstreuhand GmbH („*RWT*") ist nach den dem Schiedskläger vorliegenden Informationen vorwiegend auf die Beratung mittelständischer Unternehmen ausgerichtet. Ob bei RWT hinreichende Erfahrung in der Bewertung von weltweit operierenden Konzernen vorhanden ist, ist für den Schiedskläger nicht abschließend feststellbar; ebenso wenig, ob die Partner/Mitarbeiter der RWT über eine hinreichende Erfahrung in der Erstellung (schieds-)gerichtlicher Bewertungsgutachten in Bezug auf solche weltweit operierenden Unternehmen haben. Aufgrund der öffentlich zugänglichen Informationen über RWT muss dies aber bezweifelt werden.

d.      Ganz grundsätzlich bestehen Bedenken in Bezug auf die Curacon GmbH, welche weder im Hinblick auf ihre Größe noch im Hinblick auf ihr Erfahrungsprofil eine hinreichende Gewähr bietet, den vorliegend zu vergebenden Gutachtenauftrag zuverlässig und belastbar erfüllen zu können. So unterstreicht die Curacon GmbH in der Eigendarstellung auf ihrer Homepage, dass sie im Wesentlichen auf die Prüfung und Beratung von *non-profit*-Organisationen und dem Public-Sektor, dort insbesondere auf die Branchen Gesundheits- und Sozialwesen und öffentlicher Sektor spezialisiert sei (Altenheime, Behindertenhilfe, etc.). Damit steht schon nach den von Curacon GmbH selbst gegebenen Informationen fest, dass sie über keine nennenswerten Erfahrungen im Bereich Bewertung oder in Bezug auf die für Agfa Photo relevante Branche besitzt, von einer praktischen Erfahrung im Bereich einer Unternehmensliquidation ganz zu schweigen. Dieser Befund wird auch dadurch bestätigt, dass auf der Homepage unter der Überschrift „Unternehmensbewertung" keinerlei konkrete Informationen über praktische Erfahrungen gegeben werden. Unabhängig davon scheint in diesem Tätigkeitsfeld (Unternehmensbewertung) schon nach den eigenen Angaben der Curacon GmbH auch nur eine sehr geringe Zahl der Berufsträger tätig zu sein. Aus der Sicht des Schiedsklägers ist die Curacon GmbH unter gar keinen Umständen ein für den vorliegenden Gutachtenauftrag geeigneter Kandidat.



**ORRICK**

Seite 5

e.  Bei „HLB Deutschland" bzw. deren Mitgliedsunternehmen handelt es sich um ein Wirtschaftsprüfer- und Steuerberater-„Netzwerk" von 19 selbständigen und unabhängigen Gesellschaften, welche außer der gemeinsamen Verwendung des Namensbestandteils „HLB" keine nennenswerten sonstigen Verbindungen miteinander aufweisen; insbesondere liegt, soweit ersichtlich, keine übergreifende strukturelle Organisation und auch keine nennenswerte synergetische Zusammenführung von Ressourcen vor. Aus der vom Schiedsgericht vorgenommenen Bezugnahme lässt sich nicht ableiten, welche dieser 19 selbständigen Gesellschaften hier konkret tätig werden soll. Daher sieht sich der Schiedskläger auch nicht in der Lage, die Geeignetheit der konkret bei HLB ins Auge gefassten WP-Gesellschaft zu beurteilen. Generell weist der Schiedskläger in diesem Zusammenhang aber darauf hin, dass es sich bei den zum HLB-Verbund gehörenden WP-Gesellschaften jedenfalls nach den öffentlich zugänglichen Informationen durchweg um Gesellschaften mit im Verhältnis zur Berufsträgerzahl verhältnismäßig niedrigen Umsätzen handelt. Vor diesem Hintergrund drängt sich der Eindruck auf, dass die entsprechenden Gesellschaften eher kleinteiliges Geschäft betreiben und mit der Bewertung von größeren Unternehmen, insbesondere einer solchen von weltweit tätigen Konzernen keine nennenswerte Erfahrung haben. Auch dass hinreichende Ressourcen vorhanden sind, um einen komplexen Gutachtenauftrag wie den vorliegend zu vergebenden angemessen erfüllen zu können, muss nachhaltig bezweifelt werden. Daher ist der Schiedskläger der Ansicht, dass Mitgliedsfirmen aus dem HLB-Verbund für die hier in Rede stehende Aufgabe bereits grundsätzlich sogar noch weniger in Betracht kommen als die zuletzt genannten Gesellschaften, insbesondere die Curacon GmbH.

f.  Im Hinblick auf Esche Schümann Commichau („*ESC*") weist der Schiedskläger darauf hin, dass ihn sein Gutachter FGS darüber unterrichtet hat, dass FGS gegenwärtig ein wirtschaftlich bedeutsames Mandat von ESC übernimmt, bei dem aktuell die Aktenübergabe noch nicht abgeschlossen ist. Wie bei jeder Mandatsübernahme kann nicht ausgeschlossen werden, dass es zu Meinungsverschiedenheiten wie z.B. der Einschaltung der Steuerberaterkammer kommen kann. Vor diesem Hintergrund hat der Schiedskläger ernste Bedenken, dass ESC hier über die nötige Unabhängigkeit und Unparteilichkeit verfügen würde, als Obergutachter auch über die gutachtlichen Feststellungen von FGS neutral zu urteilen und lehnt ESC ausdrücklich auf der Grundlage einer bestehenden Besorgnis der Befangenheit ab.



Seite 6

Der guten Ordnung halber sei des Weiteren erwähnt, dass ein bei FGS im Bereich Arbeitsrecht tätiger Mitarbeiter bis zu seinem Eintritt bei FGS im Jahre 2012 bei ESC in Hamburg tätig war. Nach den Ausführungen des Schiedsgerichts in seinem Schreiben vom 16. Juni 2014 stellt dies keinen Ablehnungsgrund dar. Der guten Ordnung halber legt der Schiedskläger diesen Umstand aber vorsorglich gleichwohl offen.

4.    Im Übrigen nimmt der Schiedskläger zur Kenntnis, dass das Schiedsgericht sich in dem eingangs angeführten Schreiben auch ausdrücklich vorbehalten hat, Herrn Creutzmann, der ausweislich seiner Homepage keinen Professorentitel trägt, zum Obergutachter zu ernennen. Der Schiedskläger hatte Herrn Creutzmann mit Schreiben vom 2. Juni 2014 bekanntlich unter anderem auf der Grundlage einer aktuell bestehenden besonderen Nähe zu den Schiedsbeklagten bzw. deren Gutachtern aus dem Gesichtspunkt der Besorgnis der Befangenheit heraus abgelehnt. Hieran, wie auch insgesamt an den Vorbehalten gegenüber Herrn Creutzmann, hält der Schiedskläger ausdrücklich fest. Sollte Herr Creutzmann gleichwohl zum Gutachter bestellt werden, behält sich der Schiedskläger insoweit alle Rechte vor.

Mit freundlichen Grüßen

_____

Dr. Benedikt Burger
Rechtsanwalt

CLEARY GOTTLIEB STEEN & HAMILTON LLP

MAIN TOWER
NEUE MAINZER STRASSE 52
60311 FRANKFURT AM MAIN
+ 49 (69) 97103-0
TELEFAX + 49 (69) 97103-199
WWW.CLEARYGOTTLIEB.COM

NEW YORK • WASHINGTON, DC • PARIS • BRÜSSEL • LONDON
KÖLN • MOSKAU • ROM • MAILAND • HONGKONG
PEKING • BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL

FRANKFURT AM MAIN

THOMAS M. BUHL
RECHTSANWALT
AVOCAT AU BARREAU DE PARIS

PROF. DR. RICHARD KREINDLER
ATTORNEY AT LAW (USA)
MEMBER OF THE NEW YORK BAR
AVOCAT AU BARREAU DE PARIS

DR. STEPHAN BARTHELMESS
RECHTSANWALT
MEMBER OF THE NEW YORK BAR

WARD A. GREENBERG
ATTORNEY AT LAW (USA)
MEMBER OF THE NEW YORK BAR

DR. KLAUS RIEHMER
RECHTSANWALT

DR. GABRIELE APFELBACHER
RECHTSANWÄLTIN
MEMBER OF THE NEW YORK BAR

DR. THOMAS KOPP
RECHTSANWALT

DR. J.F. DANIEL WEYDE
RECHTSANWALT, STEUERBERATER
MEMBER OF THE NEW YORK BAR

DR. TILL MÜLLER-IBOLD
RECHTSANWALT
AVOCAT AU BARREAU DE BRUXELLES

HANNO SPERLICH
RECHTSANWALT

DR. OLIVER SCHRÖDER
RECHTSANWALT

MANUEL METZNER*
RECHTSANWALT
MEMBER OF THE NEW YORK BAR

KÖLN△

DR. WOLFGANG KNAPP*
RECHTSANWALT
AVOCAT AU BARREAU DE BRUXELLES

PROF. DR. DIRK SCHROEDER
RECHTSANWALT

DR. ROMINA POLLEY
RECHTSANWÄLTIN

PATRICK R. BOCK
ATTORNEY AT LAW (USA)
MEMBER OF THE DC AND ILLINOIS BARS

DR. MICHAEL BREMS*
RECHTSANWALT
MEMBER OF THE NEW YORK BAR

SILKE HEINZ*
RECHTSANWÄLTIN

DR. TILMAN KUHN*
RECHTSANWALT

RÜDIGER HARMS*
RECHTSANWALT

8. Juli 2014

PER E-MAIL

Dr. Georg von Segesser
Schellenberg Wittmer
Löwenstraße 19
Postfach 1876
8021 Zürich
Schweiz

Dr. Arndt Overlack
Baas Overlack Witz, Rechtsanwälte
Erzbergerstraße 5
68165 Mannheim

Prof. Dr. Paul Oberhammer
Universität Wien
Schenkenstraße 8-10
1010 Wien
Österreich

Betr:   ICC Schiedsverfahren Nr. 15362/JHN/GFG

Sehr geehrter Herr Vorsitzender, sehr geehrte Herren Mitglieder des Schiedsgerichts,

die Schiedsbeklagten nehmen Bezug auf das Schreiben des Schiedsgerichts vom 16. Juni 2014, in dem sie zur Stellungnahme zu den dort für die Position des Obergutachters vorgeschlagenen Wirtschaftsprüfungsgesellschaften eingeladen werden.

*KEIN PARTNER DER LLP

△THEODOR-HEUSS-RING 9  50668 KÖLN  +49 (221) 80040-0  TELEFAX +49 (221) 80040-199

CLEARY GOTTLIEB STEEN & HAMILTON LLP IST EINE *LIMITED LIABILITY PARTNERSHIP* NACH DEM RECHT DES STAATES NEW YORK, USA. DIE PERSÖNLICHE HAFTUNG DER PARTNER IST IN DEM IM STAAT NEW YORK GESETZLICH GEREGELTEN UMFANG BESCHRÄNKT DIE BÜROS AN DEN O.G. STANDORTEN WERDEN VON CLEARY GOTTLIEB STEEN & HAMILTON LLP ODER EINEM VERBUNDENEN UNTERNEHMEN BETRIEBEN.

### A. Stellungnahme zu den Vorschlägen des Schiedsgerichts

Die Gesellschaften *Bansbach Schübel Brösztl & Partner GmbH* („Bansbach") und *FIDES Gruppe* („FIDES") kommen wegen bestehender Interessenskonflikte aus der Sicht der Schiedsbeklagten von vornherein als Obergutachter nicht in Betracht.

Bansbach wurde im Rahmen der Agfa-Schiedsverfahren von den Schiedsbeklagten in der Vergangenheit mit einer Anfrage für eine Parteigutachtertätigkeit kontaktiert. Im Rahmen dieser Kontaktaufnahme wurde u.a. auch das hiesige Schiedsverfahren adressiert. FIDES ist Mitglied des weltweiten *„Praxity"*-Netzwerkes, einem Zusammenschluss unabhängiger Wirtschaftsprüfungsgesellschaften, dem auch die Parteigutachter der Gegenseite von Flick Gocke Schaumburg angehören.[1]

Im Übrigen weisen die Schiedsbeklagten darauf hin, dass keine der acht vorgeschlagenen Gesellschaften über die notwendige Erfahrung und Expertise verfügt, um die hier erforderliche, mit komplexen Fragen befrachtete Unternehmensbewertung fachgerecht durchführen zu können.

Die Schiedsbeklagten haben u.a. die Internetseiten der vorgeschlagenen Unternehmen bzw. Netzwerke konsultiert und fanden dort keine Hinweise auf vertiefte Kenntnisse im Bereich der Unternehmensbewertung, erst recht nicht mit Bezug auf global agierende Konzerngesellschaften. Es handelt sich ausnahmslos um multidisziplinäre Einheiten, die neben Steuer-, Rechts- und anderen Beratungsangeboten auch bestimmte Wirtschaftsprüfungsleistungen offerieren. Sofern auf den entsprechenden Internetseiten überhaupt konkrete Ansprechpartner für den Bereich Unternehmensbewertung genannt werden, sind diese nach den Recherchen der Schiedsbeklagten und Auskunft ihrer Experten im Markt unbekannt. Ebenso wenig stellen diese Unternehmen bei einschlägigen Fachveranstaltungen Referenten oder sind durch nennenswerte Publikationen im Bereich der Unternehmensbewertung hervorgetreten.

Die Schiedsbeklagten vermuten, dass das Schiedsgericht in der sog. Lünendonk-Liste[2] auf die zur Debatte stehenden Wirtschaftsprüfungsgesellschaften gestoßen ist. Die Lünendonk-Liste enthält eine Auflistung der *„Führende[n] Wirtschaftsprüfungs- und Steuerberatungs-Gesellschaften in Deutschland 2013"*[3], sortiert nach der Umsatzstärke in Deutschland im Jahr 2013.[4] Die aufgelisteten Gesellschaften haben ihre Umsätze allerdings über ein breites Spektrum an Beratungsleistungen generiert. Rückschlüsse auf ihre Aktivitäten im Bereich der Unternehmensbewertung lassen sich daraus nicht ziehen, so dass die Lünendonk-Liste kein tauglicher Anknüpfungspunkt für die Suche nach einem geeigneten Gutachter darstellen kann.

---

[1]    http://www.praxity.com/participating-firms/Pages/A-Z%20Directory.aspx.

[2]    http://luenendonk.de.

[3]    http://luenendonk-shop.de/out/pictures/0/lue_wp_liste_pi_f300614(1)_fl.pdf.

[4]    Die vorgeschlagenen Gesellschaften befinden sich auf den Positionen 13 (Dornbach), 15 (Bansbach), 16 (MDS Möhrle), 19 (FIDES), 20 (Curacon), 22 (RWT) und 23 (Esche Schümann) bzw. auf Position 3 der in Deutschland tätigen Netzwerke (HLB Deutschland).

Da die vorgeschlagenen Gesellschaften aus den genannten Gründen mangels einschlägiger Erfahrungen und Kompetenzen für die hiesige Bewertungsaufgabe nicht in Betracht kommen, sehen sich die Schiedsbeklagten auch nicht in der Lage, eine Rangliste nach Präferenz zu erstellen. Die Schiedsbeklagten widersprechen allen vorgeschlagenen Kandidaten gleichermaßen.

### B.  Weitere Stellungnahme zu den Herren Andersch und Creutzmann

Ausweislich seines Schreibens vom 16. Juni 2014 behält sich das Schiedsgericht vor, im Falle der Unmöglichkeit der Auswahl eines Gutachters aus seiner Vorschlagsliste „*eine der zuletzt von den Parteien an erster Stelle genannten Wirtschaftsprüfungsgesellschaften* [Prof. Andreas Creutzmann oder Tammo Andersch] *bzw. eine Fachperson bei einer dieser Wirtschaftsprüfungsgesellschaften als Sachverständigen zu bestimmen*".[5]

Wie bereits in der Vergangenheit – zuletzt mit Schreiben vom 6. Juni 2014 – dargelegt, halten die Schiedsbeklagten Herrn Andersch (einen Restrukturierungs- und Sanierungsspezialisten) für inhaltlich ungeeignet, der hier in Rede stehenden Aufgabe einer gesellschaftsrechtlichen Unternehmensbewertung gerecht zu werden. Weder Herr Andersch noch weitere Mitarbeiter der Andersch AG Wirtschaftsprüfungsgesellschaft verfügen ausweislich ihres Internetauftritts über Erfahrung im Bereich der Unternehmensbewertung. Die Erstellung von Sanierungs- und Finanzierungsgutachten, die vollkommen anderen Prämissen und Methoden folgt, hat mit einer den anerkannten Bewertungsgrundsätzen folgenden Unternehmensbewertung nichts gemein.

Die Schiedsbeklagten haben diesbezüglich auch Rücksprache mit Herrn Stefan Schöniger, Partner im Bereich Corporate Finance Valuation bei KPMG, gehalten, der Tammo Andersch aus der gemeinsamen Zeit bei KPMG bis zum Jahr 2012 kennt. Herrn Schöniger ist nicht bekannt, dass Herr Andersch während seiner Tätigkeit bei KPMG Unternehmensbewertungen eigenverantwortlich durchgeführt hat. Sofern Herr Andersch gelegentlich im Rahmen seiner Restrukturierungstätigkeit auf Unternehmensbewertungs-expertise angewiesen war, habe er laut Herrn Schöniger Kollegen aus dem Bewertungsbereich zur Unterstützung beigezogen.

Mit einer Bestellung von Herrn Andersch würde das Schiedsgericht im Ergebnis seinem eigenen Anforderungsprofil für den Sachverständigen nicht gerecht werden. Erst vor wenigen Tagen hat das Schiedsgericht klargestellt, dass der Gutachter „*die Bewertung der Sacheinlage zum Liquidationswert*" vornehmen solle, bestimmt von den in Ziffer 2.2 des Entwurfs des Gutachterauftrages niedergelegten Maßstäben, also den „*anerkannten Bewertungsgrundsätzen zu Liquidationswerten*" folgen soll.[6] Es grenzt die Tätigkeit des neuen Gutachters explizit von der Finanzierungsanalyse des Gutachters Falckenberg ab, die „*den Fokus auf der Prüfung der Fortführbarkeit*" hatte.[7] Die Expertise von Herrn Andersch deckt sich weitgehend mit derjenigen des Herrn Falckenberg, weshalb die (zutreffende)

---

[5]    Schreiben des Schiedsgerichts vom 16. Juni 2014, S. 2.
[6]    Schreiben des Schiedsgerichts vom 30. Juni 2014, S. 3, 4.
[7]    Schreiben des Schiedsgerichts vom 30. Juni 2014, S. 3.

3

Auffassung des Schiedsgerichts, der Gutachter müsse für die Durchführung einer Unternehmensbewertung geeignet sein, die Bestellung eines Sanierungsspezialisten wie Herrn Andersch *per se* ausschließt.[8]

Einen ausgewiesenen und anerkannten Bewertungsspezialisten findet das Schiedsgericht in Herrn Creutzmann. Sofern das Schiedsgericht im Hinblick auf die Kapazitäten der Creutzmann & Co. GmbH zur Durchführung eines so komplexen Projektes wie dem hier anstehenden Bedenken hegt, regen die Schiedsbeklagten an, dass das Schiedsgericht sich zunächst selbst mit Herrn Creutzmann in Verbindung setzt, um seine Möglichkeiten (einschließlich solcher zur Beiziehung externer Unterstützung) zur Umsetzung des hiesigen Gutachtenprojekts zu eruieren.

Mit freundlichen Grüßen

Thomas M. Buhl
Rechtsanwalt

cc:     Herr Gustav Flecke-Giammarco
        Dr. Andrea Meier
        Prof. Dr. Siegfried Elsing
        Dr. Benedikt Burger

---

[8] Die Schiedsbeklagten weisen zusätzlich darauf hin, dass bezüglich Herrn Andersch der Verdacht naheliegt, dass der Schiedskläger oder seine Verfahrensbevollmächtigten ihn, bevor er dem Schiedsgericht (erstmals) als Kandidat vorgeschlagen wurde, in unzulässiger Weise kontaktiert haben. Der Schiedskläger hat diesen Verdacht bisher nicht entkräftet.

4

Entwurf 19. August 2014

Beilage 2 zu Verfügung Nr. 47

---

## AUFTRAG AN DEN GUTACHTER DES SCHIEDSGERICHTS
("Gutachterauftrag")

---

**Das Schiedsgericht**

Dr. Georg von Segesser, Vorsitzender
Dr. Arndt Overlack und Univ.-Prof. Dr. Paul Oberhammer, Mitschiedsrichter
Dr. Andrea Meier, juristische Sekretärin

im ICC-Verfahren Nr. **15362/JHN/GFG**
in Sachen

**Dr. Andreas Ringstmeier,**
in seiner Eigenschaft als Insolvenzverwalter über das Vermögen der
**AgfaPhoto GmbH i.L.,**
Brückenstrasse 21, DISCH-Haus
50667 Köln
Deutschland

**Kläger**

vertreten durch
Prof. Dr. Siegfried H. Elsing, Orrick, Herrington & Sutcliffe LLP,
Heinrich-Heine-Allee 12, 40213 Düsseldorf, Deutschland
sowie
Dr. Benedikt Burger, Orrick, Herrington & Sutcliffe LLP,
Friedrichstrasse 31, 60323 Frankfurt am Main, Deutschland


gegen


**Agfa-Gevaert GmbH,**
Am Coloneum 2 – 6, 50829 Köln, Deutschland

**Beklagte 1**

**Agfa-Gevaert Healthcare GmbH,**
Tegernseer Landstrasse 161, 81539 München, Deutschland

**Beklagte 2**

**Agfa-Gevaert Graphics Systems GmbH,**
Kasteler Strasse 45, 65203 Wiesbaden, Deutschland

**Beklagte 3**

**Agfa-Gevaert N.V.,**
Septestraat 27, 2640 Mortsel, Belgien

**Beklagte 4**

alle vertreten durch
Robert T. Greig und Aren Goldsmith, Cleary Gottlieb Steen & Hamilton LLP,
12, rue de Tilsitt, 75008 Paris, Frankreich
sowie
Thomas Buhl, Larry Work-Dembowski, Annett Rombach,
Cleary Gottlieb Steen & Hamilton LLP, Main Tower,
Neue Mainzer Strasse 52, 60311 Frankfurt am Main, Deutschland

GVS 02820399

ICC-Verfahren Nr. 15362/JHN/GFG                                     Entwurf 19. August 2014
Entwurf Gutachterauftrag

Nach Rücksprache mit den Parteien erteilt das Schiedsgericht folgenden Gutachterauftrag:

## 1.      Verfahrensgeschichte

Das Schiedsgericht erteilte dem Sachverständigen Max Falckenberg am 9. Dezember 2011 den Auftrag, ein Gutachten über "die für die Fortführung des CI-Geschäftsbereichs notwendige Finanzierung …" zu erstellen. Nach Vorlage des finanziellen Gutachtens am 16. Juli 2012 und im Anschluss an die Beratung vom 19. November 2012 lud das Schiedsgericht die Parteien mit Verfügung Nr. 37 vom 17. Dezember 2012 ein, Sachverständigengutachten einzureichen, die auf den Stichtag bezogen die Aktiva und Passiva der AgfaPhoto GmbH zu Liquidationswerten bewerten. Die Parteigutachten sollten die Grundlagen der Bewertung wiedergeben, so dass ein allfällig vom Schiedsgericht zu bestellender Gutachter ("Gutachter") bei seiner eigenen Bewertung diese Gutachten für sein Gutachten mitberücksichtigen kann. Die Parteien wurden zudem aufgefordert, dem Schiedsgericht einen gemeinsamen Vorschlag zur Person eines allfälligen vom Schiedsgericht zu bestellenden Gutachters oder Negativlisten mit allen Personen bzw. Unternehmen, die hierzu nicht in Frage kämen, vorzulegen.

Die Parteien reichten ihre jeweiligen Gutachten per 1. Juni 2013 und ihre wechselseitigen Stellungnahmen am 25. Juli 2013 ein. Da sich die Parteien nicht auf einen gemeinsamen Vorschlag zur Person eines Gutachters einigen konnten, unterbreitete das Schiedsgericht den Parteien mit Verfügung Nr. 42 vom 25. Oktober 2013 entsprechende Vorschläge. Am 25. November 2013 und am 10. Dezember 2013 äusserten sich die Parteien zum Gutachterauftrag und zum Inhalt des einzuholenden Liquidationswertgutachtens. Unter Berücksichtigung der eingegangenen Stellungnahmen der Parteien führte das Schiedsgericht mit einem Kandidaten Gespräche, sah allerdings von der Erteilung eines Auftrages als Gutachter ab, da wegen früheren Berührungspunkten mit dem Fall eine Auftragserteilung nicht ratsam erschien.

Am 8. Mai 2014 teilte das Schiedsgericht den Parteien mit, dass es einen neuen Gutachter zur Erstellung des einzuholenden Liquidationswertgutachtens ernennen würde. Alle vom Schiedsgericht am 8. Mai bzw. 16. Juni 2014 vorgeschlagenen Kandidaten wurden am 26. Mai bzw. 8. Juli 2014 jeweils von mindestens einer Partei abgelehnt.

Weil jede Partei auch die von der jeweiligen Gegenpartei vorgeschlagenen Gutachterkandidaten ablehnte und die Liste der Kandidaten ohnehin reduziert werden musste, da viele Wirtschaftsprüfungsgesellschaften mit dem Fall in der einen oder anderen Art befasst sind, bestimmte das Schiedsgericht Herrn Stephan Vollenweider, Balmer-Etienne AG, Luzern als Gutachter, nachdem es die Eignung der Balmer-Etienne AG und von Herrn Stephan Vollenweider für die Erteilung des Gutachterauftrags anhand von Angaben von Herrn Vollenweider zu einem Fragenkatalog abgeklärt hatte.

## 2.      Aufgaben und Verantwortung des Gutachters

### 2.1    Aufgaben des Gutachters

Der Gutachter hat wie folgt vorzugehen:

Der Gutachter soll Zugang zu den Dokumenten und Akten dieses Schiedsverfahrens haben (vgl. Absatz 2.4 nachfolgend) und kann nach vorgängiger Rücksprache mit dem Vorsitzenden des Schiedsgerichts weitere Informationen von den Parteien verlangen, die er für die Erstattung seines Berichts für relevant hält.

Das Gutachten soll die Thematik gemäss Ziff. 2.2 behandeln. Der Gutachter soll sein Gutachten erst fertigstellen, nachdem die Parteien und das Schiedsgericht Gelegenheit hatten, den Entwurf zu kommentieren und dem Gutachter im Rahmen einer mündlichen Verhandlung Fragen zu stellen. Eine mündliche Verhandlung muss dann nicht stattfinden, wenn die Parteien einvernehmlich darauf verzichten. In diesem Fall können die Parteien dem Gutachter ihre Fragen schriftlich stellen.

### 2.2 Thematik des Gutachtens

Der Gutachter wird mit der Erstellung eines Gutachtens beauftragt, das die auf den Stichtag (1./2. November 2004) bezogenen in die AgfaPhoto GmbH als Sacheinlage eingebrachten Aktiva und Passiva nach den anerkannten Bewertungsgrundsätzen zu Liquidationswerten bewertet. Zu diesem Zweck soll der Gutachter zu den von den Parteien jeweils am 1. Juni 2013 eingereichten Parteigutachten zum Liquidationswert unter Beizug der Verfahrensakten Stellung nehmen und – gegebenenfalls auch unter Einbeziehung etwaiger neuer, im Rahmen der Urkundenedition herausgegebener Dokumente – den Liquidationswert feststellen.

Das Gutachten von Max Falckenberg vom 16. Juli 2012 dient insofern als Grundlage, als das Schiedsgericht gestützt darauf zur Einsicht gelangt ist, dass für die Bestimmung des Werts der Sacheinlage im Hinblick auf die Differenzhaftung der Liquidationswert massgebend ist.

### 2.3 Kommunikation

Der Gutachter darf mit den Schiedsrichtern kommunizieren (und umgekehrt). Das Schiedsgericht wird die Parteien in angemessener Form über den Inhalt dieser Kommunikation unterrichten.

Der Gutachter soll keine Schiedspartei oder Drittpartei (z.B. einen Zeugen) ohne vorgängige schriftliche Erlaubnis des Vorsitzenden des Schiedsgerichts kontaktieren.

### 2.4 Zugang zu Dokumenten und Akten

Der Gutachter soll Zugang zu allen Eingaben und Sachverständigengutachten der Parteien in diesem Schiedsverfahren haben, einschliesslich Anlagen zu den Sachverständigengutachten.

Der Gutachter ist berechtigt, von einer Partei die Edition weiterer Unterlagen zu verlangen, welche er nach billigem Ermessen für die Erfüllung seiner Aufgabe für nützlich hält. Nach Rücksprache mit dem Vorsitzenden des Schiedsgerichts soll der Gutachter dieses Gesuch rechtzeitig der betreffenden Partei unterbreiten, zusammen mit einer präzisen Umschreibung der verlangten Dokumente und einer kurzen Erklärung, warum er diese(s) Dokument(e) für relevant hält. Die andere Partei soll eine Kopie dieses Gesuchs erhalten.

Wenn die Partei, an welche der Gutachter sein Gesuch um Edition weiterer Dokumente gerichtet hat, Einwände gegen das Editionsgesuch erhebt, wird der Gutachter in Absprache mit dem Vorsitzenden des Schiedsgerichts versuchen, gemeinsam mit der Partei eine Lösung zu finden. Wenn der Gutachter keine befriedigende Lösung hinsichtlich des betreffenden Editionsgesuchs erzielen kann, wird das Schiedsgericht über das Gesuch und die Einwände entscheiden.

Sämtliche Informationen sind i.S.v. Abschnitt 2.5 nachfolgend vertraulich zu behandeln.

### 2.5    Unparteilichkeit, Unabhängigkeit und Vertraulichkeit

Der Gutachter muss frei von Konflikten sein. Die "IBA Guidelines on Conflicts of Interest in International Arbitration" sind anwendbar.

Vor Unterzeichnung dieses Gutachterauftrags hat der Gutachter dem Schiedsgericht und den Parteivertretern eine ordnungsgemäss unterzeichnete Unabhängigkeitserklärung und Vertraulichkeitsvereinbarung unterbreitet. Mitarbeiter, die der Gutachter für seine Gutachtertätigkeit beizieht, haben ebenfalls eine Unabhängigkeitserklärung und Vertraulichkeitsvereinbarung zu unterzeichnen.

### 2.6    Berichterstattung

Sollte der Gutachter nach Durchsicht der Akte zum Schluss kommen, dass er vom Schiedsgericht klärende Feststellungen zu Rechtsfragen oder zur Handhabung der Schlussfolgerungen des Gutachters Falckenberg benötigt, erhält er Gelegenheit, dem Schiedsgericht konkrete Fragen zu unterbreiten, welche dieses in einem Memorandum beantworten wird.

Danach wird der Gutachter unter Berücksichtigung der Verhaltensregeln seines Berufsstands, der Unabhängigkeitserklärung und Vertraulichkeitsvereinbarung für einen Gutachter des Schiedsgerichts und dieses Gutachterauftrags bezüglich der Thematik gemäss Abschnitt 2.2 vorstehend einen schriftlichen Gutachtensentwurf ausarbeiten und diesen allen Mitgliedern des Schiedsgerichts und den Parteivertretern bis spätestens [.] zusenden.

Falls der Gutachtensentwurf auf Sachverhaltsfragen des Rechtsstreits zwischen den Parteien Bezug nimmt, soll er dies mit angemessener Genauigkeit tun, indem er sich auf die betreffende Randziffer einer schriftlichen Eingabe und/oder die Nummer der relevanten Beilage bezieht (z.B. "vgl. Beilage K-" oder "vgl. Klagebegründung Rz. 35" etc.).

Die Parteien sollen dem Schiedsgericht am oder bis zum [.] Kommentare und Fragen betreffend den Gutachtensentwurf unterbreiten.

Die Kommentare und Fragen der Parteien und allfällige Kommentare und Fragen des Schiedsgerichts sollen zusammen mit dem Gutachtensentwurf unter Beteiligung der Parteisachverständigen in einer auf den [.] angesetzten mündlichen Verhandlung besprochen werden. Im Anschluss daran soll der Gutachter sein schriftliches Gutachten bis spätestens [.] fertigstellen.

**2.7    Weitere Aufgaben des Gutachters**

In Absprache mit den Parteien kann das Schiedsgericht dem Gutachter im Verlauf des Schiedsverfahrens weitere Aufgaben zuweisen.

**2.8    Teilnahme an der Beweisverhandlung**

Der Gutachter soll an der Beweisverhandlung teilnehmen und dort allfällige Fragen der Parteien und/oder der Schiedsrichter betreffend seinen Obergutachtensentwurf beantworten.

**2.9    Vergütung**

Die Vergütung des Gutachters wird wie folgt geregelt:

2.9.1. Der Gutachter rechnet alle auf die Schiedsbeklagten insgesamt entfallenden Gutachterkosten nur gegenüber der Schiedsbeklagten zu 4) ab. Die Schiedsbeklagte zu 4) ist alleinige Komplementärin der Schiedsbeklagten zu 1) und indirekte Mehrheitsgesellschafterin der Schiedsbeklagten zu 2) und 3).

2.9.2. Der Schiedskläger und die Schiedsbeklagte zu 4) haben den Gutachter für seine Dienste mit einer Tagespauschale von insgesamt [EUR/CHF] [.] netto (zuzüglich allfällige Mehrwertsteuer) und für seine angemessenen Auslagen (Reisespesen etc.) insgesamt zu gleichen Teilen zu entschädigen (50% Schiedskläger, 50% Schiedsbeklagte zu 4)). Der Gutachter rechnet gegenüber dem Schiedskläger und der Schiedsbeklagten zu 4) jeweils mit einer eigenen Rechnung ab über jeweils 50% des Gesamtrechnungsbetrages netto zuzüglich allfällige Mehrwertsteuer ab.

2.9.3. Der Gutachter hat dem Schiedsgericht vor Aufnahme seiner Tätigkeit eine Kostenschätzung unterbreitet (inklusive allfällige Mehrwertsteuer). Den Betrag der Kostenschätzung haben der Schiedskläger und die Schiedsbeklagte zu 4) jeweils zu 50% zu bevorschussen, und zwar auf ein Konto des Vorsitzenden des Schiedsgerichts bei der Credit Suisse, Zürich unter der Rubrik ICC 15362.

Der Gutachter soll alle an den Schiedskläger und die Schiedsbeklagte zu 4) adressierten Rechnungen (sowohl Rechnungen über den Vorschuss als auch Rechnungen nach der Fertigstellung seiner Arbeit) an den Vorsitzenden des Schiedsgerichts senden. Der Vorsitzende des Schiedsgerichts übernimmt die Verteilung der Rechnungen an den Schiedskläger und die Schiedsbeklagte zu 4) und löst die entsprechenden Zahlungen aus.

2.9.4. Der Gutachter erklärt sich damit einverstanden, dass seine Gesamtvergütung den Betrag von [EUR/CHF] [.] netto (zuzüglich allfällige Mehrwertsteuer) nicht übersteigt. Falls der Gutachter mit weiteren Aufgaben betraut wird, wird er mit einer Tagespauschale von [EUR/CHF] [.] netto (zuzüglich allfällige Mehrwertsteuer) entschädigt.

**2.10    Haftung**

Mit Ausnahme der Bestimmungen gemäss Vertraulichkeitsvereinbarung ist der Gutachter für Handlungen oder Unterlassungen im Zusammenhang mit dem Schiedsverfahren nicht haftbar, ausser wenn die Handlung oder Unterlassung nachweislich ein absichtliches Fehlverhalten oder grobe Fahrlässigkeit darstellt.

### 2.11    Annahme der Ernennung

Durch Unterzeichnung dieses Auftrags erklärt der Gutachter, dass er seine Ernennung annimmt und dass er sein Amt in Übereinstimmung mit der Unabhängigkeitserklärung und Vertraulichkeitsvereinbarung für einen Gutachter des Schiedsgerichts, diesem Gutachterauftrag und mit aller notwendigen Sorgfalt ausübt.

### 2.12    Ergänzung des Gutachterauftrags

Dieser Gutachterauftrag kann zu einem späteren Zeitpunkt aufgrund einer Parteivereinbarung oder einer Verfügung des Schiedsgerichts nach Rücksprache mit den Parteien abgeändert oder ergänzt werden.

Dieser Gutachterauftrag wurde nach Anhören der Parteivertreter zwischen dem Schiedsgericht und dem Gutachter fertiggestellt und zwecks Unterzeichnung durch die Parteivertreter, den Gutachter und die Mitglieder des Schiedsgerichts in Zirkulation gesetzt.

ICC-Verfahren Nr. 15362/JHN/GFG                                    Entwurf 19. August 2014
Entwurf Gutachterauftrag

---

Schiedsort: Frankfurt am Main, Deutschland

**Der Gutachter:**

_____

Datum: …………….……….……….……

**Die Parteien:**

_____    _____
Für den Kläger                                    Für die Beklagten

Vertreten durch:                                  Vertreten durch:

Datum: …………….……….……….……          Datum: ……………….………….………

**Das Schiedsgericht:**

_____    _____
Dr. Arndt Overlack                                Univ.-Prof. Dr. Paul Oberhammer
Mitschiedsrichter                                 Mitschiedsrichter

Datum: ……………….………….………          Datum: ……………….………….………

_____
Dr. Georg von Segesser
Vorsitzender des Schiedsgerichts

Datum: ……………….………….………

Beilage: -  Unabhängigkeitserklärung und Vertraulichkeitsvereinbarung für einen
            Gutachter des Schiedsgerichts

## Liste der ins Verfahren involvierten Gutachter

**1.      Wirtschaftsprüfungsgesellschaften**

|     | Gesellschaft | Experte |
| --- | --- | --- |
| 1. | **Alvarez & Marsal Holdings, LLC, London** | Merryck Lowe |
| 2. | **Audecon AG\*\*\*** | |
| 3. | **BDO AG, Schweiz\*\*\*** <br><br> **BDO AG, Hamburg\*\*\*** | Werner Schiesser |
| 4. | **Deloitte & Touche GmbH** | |
| 5. | **DHPG Dr. Harzem & Partner KG, Bonn\*\*\*** | |
| 6. | **Dipl.-Kfm. Hans M. Klein + Partner\*\*\*** | |
| 7. | **Dr. Grasberger & Partner Unternehmensberatung\*\*\*** | |
| 8. | **Ebner Stolz Mönning Bachem GmbH & CO KG, Stuttgart** | Dr. Wolfgang Russ <br> Dr. Matthias Popp <br> Andreas Gienger <br> Dr. Stephan Eberl |
| 9. | **Ernst & Young AG, Zürich** | Louis Siegrist <br> Thomas Stenz <br> Chris Tattersall |
| 10. | **Falk & Co. Unternehmensgruppe, Heidelberg\*\*\*** | Klaus Heiniger |
| 11. | **Flick Gocke Schaumburg, Bonn** | Dr. JoachimSchmitt <br> Dr. Torsten Kohl <br> Jeanette Witte <br> Dr. Ferit Schnieders |
| 12. | **FTI Consulting Limited, London** | Mark Bezant |
| 13. | **KPMG International Cooperative** | |
| 14. | **PKF Fasselt Schlage\*\*\*** | |
| 15. | **PwC (PricewaterhouseCoopers AG), Frankfurt am Main** | Dr. Peter Bartels <br> Andreas Grün |

| 16. | **RBS RoeverBroennerSusat GMbH & Co. KG (Teilrechtsnachfolger von Susat)** | Dr. Christian Kirnberger (heute Partner bei **Warth & Klein Grant Thornton**) |
|---|---|---|
| 17. | **Roland Berger Strategy Consultants GmbH** | Max Falckenberg (heute Partner bei **McKinsey**) |
| 18. | **Rödl und Partner GbR, Nürnberg** | Christian Hellbardt |
| 19. | **Treuhand- und Revisionsaktiengesellschaft Niederrhein Wirtschaftsprüfungsgesellschaft Steuerberatungsgesellschaft** | Dr. Ring, Herr von Lackum, |

\*\*\* Nicht direkt an der Transaktion oder am vorliegende Verfahren beteilgt, dafür in ein Parallelerfahren involviert oder in einem anderen Zusammenhang für eine Partei des vorliegenden Verfahrens tätig geworden

## 2.    Rechtsgutachter

| | **Rechtsgutachter** |
|---|---|
| 1. | **Prof. Dr. Ulrich Haas**, Universität Zürich |
| 2. | **Prof. Dr. Martin Henssler**, Universität zu Köln |
| 3. | **Prof. Dr. Hartwig Henze**, Richter am Bundesgerichtshof a.D. |
| 4. | **Prof. Dr. Heinz-Peter Mansel**, Universität zu Köln |
| 5. | **Prof. Dr. Hanno Merkt**, Albert-Ludwigs-Universität Freiburg, Richter am Oberlandesgericht Karlsruhe |
| 6. | **Dr. Andreas Pentz**, Rechtsanwälte Rowedder Zimmermann Hass |
| 7. | **Prof. Dr. Thomas Pfeiffer**, Universität Heidelberg |
| 8. | **Prof. Dr. Gerhard Wagner**, Universität Bonn |

Case 1:14-mc-91289-PBS    Document 8-14    Filed 09/26/14    Page 28 of 33



SW Zürich

R – 1. Sep. 2014

AVS / LUHN



Balmer-Etienne AG
Kauffmannweg 4
CH-6003 Luzern

Telefon +41 41 228 11 11
Telefax +41 41 228 11 00

www.balmer-etienne.ch
info@balmer-etienne.ch

Ihre Kontaktperson:
Stephan Vollenweider
Telefon +41 41 228 11 64
stephan.vollenweider@balmer-etienne.ch

Schellenberg Wittmer AG
Herr Dr. Georg von Segesser
Löwenstrasse 19
Postfach 1876
8021 Zürich

Luzern, 28. August 2014
sv/nlu  S:\03 Zuerich\Kunden\SCH\Schellenberg Wittmer AG\Schiedgutachten\Brief Fragenkatalog_20140825.docx

## Anfrage betreffend Gutachten / Fragenkatalog

Sehr geehrter Herr von Segesser

Wir beziehen uns auf Ihr Schreiben vom 19. August 2014 betreffend Ihrer Anfrage zu einem Gutachten. Nachfolgend finden Sie unsere Antworten zu Ihrem Fragenkatalog und weitere Beilagen.

### FRAGENKATALOG

### 1. Kapazitäten und Verfügbarkeit

> Das Projekt soll innerhalb der nächsten sechs Monate abgeschlossen werden. Verfügt Balmer-Etienne über genügend Kapazitäten und personelle Ressourcen zur Erstellung des in Frage stehenden Gutachtens?

Gerne bestätigen wir Ihnen, dass die Balmer-Etienne AG über die notwendigen personellen Ressourcen zur Erstellung des in Frage stehenden Gutachtens verfügt.

Der vorgesehene Experte wird hauptsächlich für diesen Auftrag abgestellt. Ebenso stellen wir eine fachlich kompetente Stellvertretung sicher.
Vor allem für die logistische Abwicklung des Mandates wird der Experte durch eine Assistentin unterstützt, welche ebenfalls hauptsächlich für diesen Auftrag abgestellt wird.

balmeretienne

## 2. Expertise und Erfahrung

Aufgabe wird es sein, die Aktiven und Passiven einer im Rahmen einer komplexen Unternehmens-transaktion mit internationalem Bezug (Ausgliederung eines einzelnen Geschäftsbereichs aus einem bestehenden Konzern in einen in diesem Zusammenhang neu aufgestellten Konzern mit anschlies-sendem Verkauf an einen Dritten) zu Liquidationswerten zu bewerten. Es stellen sich z. B. Fragen im Zusammenhang mit der Abwicklung einzelner Unternehmensteile, der Verwertung von Aktiven, dem Abbau von Personal sowie der Veräusserung überlebensfähiger Betriebsteile. Die Bewertung findet nach deutschem Recht und deutschen Standards statt.

Über welche für die Wahrnehmung dieser Aufgabe relevante praktische Expertise und Erfahrung ver-fügt Balmer-Etienne? Bitte beachten Sie, dass auch der Beizug eines weiteren unabhängigen Exper-ten mit Kenntnissen in Bewertungsfragen nach deutschen Standards für spezifische Fragen in Be-tracht kommen würde.

Balmer-Etienne AG verfügt über ausreichende Erfahrung sowohl im Rahmen des vorliegenden Bewer-tungsverfahrens als auch im Zusammenhang mit der Erstellung von Gutachten. Sie hat bereits an mehreren teilweise vergleichbaren Mandaten gearbeitet (vgl. dazu beiliegende Referenzliste).

Insbesondere durch die sehr grossen Gutachtensaufträge in den Fällen SAirGroup und Erb haben wir die notwendige Erfahrung, um inhaltlich und logistisch mit komplexen Strukturen und umfangreichen Datenbeständen (Papier und elektronisch) umzugehen.

Im Bezug auf die Bewertung nach deutschem Recht und deutschen Standards Aufträgen würde die Balmer-Etienne AG den Beizug eines unabhängigen deutschen Experten sehr befürworten. Dieser könnte zum einen aus einer deutschen Partnergesellschaft in unserem UHY-Netzwerk rekrutiert oder allenfalls durch das Schiedsgericht bestimmt werden.

## 3. Referenzen

Bitte nennen Sie uns Referenzen von Balmer-Etienne im Zusammenhang mit der in Ziff. 2 genannten für den in Frage stehenden Gutachterauftrag erforderlichen Expertise und Erfahrung.

In Beilage 1 finden Sie eine Referenzliste bezüglich Gutachtensaufträge. Gerne geben wir Ihnen im Bedarfsfall auch Referenzen bei verschiedenen Gerichten an.

balmeretienne

## 4. Experten im spezifischen Bereich

Welche(r) Experte(n) sind/ist bei Balmer-Etienne im oben genannten Bereich tätig und welche Qualifikationen und Referenzen bringen diese/bringt dieser mit?

Für die Mandatsleitung ist Herr Stephan Vollenweider vorgesehen. Stephan Vollenweider ist Partner der Balmer-Etienne AG, leitet den Bereich Wirtschaftsberatung und ist Hauptverantwortlich in unserem Internationalen Netzwerk (UHY). Zudem ist er Mitglied der Geschäftsleitung. Im Bezug auf seine Qualifikation verweisen wir auf das beiliegende CV Stephan Vollenweider.

Stephan Vollenweider hatte bei mehreren in Beilage 1 aufgeführten Mandaten die Hauptverantwortung. Er ist ein ausgewiesener Bewertungsspezialist und ist sich den Umgang mit (Schieds-) Gutachten gewohnt.

Zudem stehen Herrn Vollenweider folgende weiteren Spezialisten zur Verfügung:

- Herr Roland Furger (vgl. CV Roland Furger) als Stellvertreter und zusätzlicher Bewertungsexperte
- Frau Sabrina Cabiddu (vgl. CV Sabrina Cabiddu) als Assistentin

All diese Personen haben bereits an verschiedenen Gutachtensaufträgen gearbeitet und sind mit den gerichtlichen Rahmenbedingungen vertraut.

## 5. Erfahrung als Sachverständige in internationalen Schiedsverfahren?

Verfügt Balmer-Etienne über Erfahrung als Sachverständige in internationalen Schiedsverfahren? Falls ja, bitte machen Sie uns Angaben diesbezüglich.

Nein, die Balmer-Etienne AG verfügt über keine Erfahrung als Sachverständiger in internationalen Schiedsverfahren.

Wie bereits unter Ziffer 3 und 4 erläutert, verfügt die Balmer-Etienne AG über ausreichende Erfahrung bei der Erstellung von Gutachten oder im Zusammenhang mit Schiedsverfahren im nationalen Umfeld. Erfahrungen bei internationalen Schiedsverfahren haben wir jedoch keine. Durch den Beizug eines unabhängigen deutschen Experten für Bewertungsfragen lässt sich u. E. dieser Aspekt, soweit es den Bewertungs- resp. Gutachtensauftrag betrifft, lösen.

balmeretienne

## 6. Honorarstruktur

Bitte machen Sie uns Angaben zu Ihrer Honorarstruktur.

Unsere Honorarverrechnung erfolgt nach effektivem Zeitaufwand. Abhängig von der Ausbildung und Erfahrung der jeweiligen Mitarbeitenden gelten zurzeit die folgenden Stunden- /Tagessätze (in CHF):

|  | Stundensatz | Tagessatz |
|---|---|---|
| Experte S. Vollenweider | 350 | 3 000 |
| Stellvertretung R. Furger | 330 | 2 800 |
| Experten | 260 – 280 | 2 200 – 2 400 |
| Sachbearbeiter / Assistentin | 190 | 1 600 |
| Sekretariat / Administration | 120 | 1 000 |

Zuzüglich allgemeine Bürospesen, Reisekosten und Mehrwertsteuer. Die angegebenen Stundensätze entsprechen den Honorarempfehlungen der Schweizerischen Treuhand- und Revisionskammer, bei welcher wir Mitglied sind.

Wir hoffen Ihnen mit diesen Angaben zu dienen und stehen für Fragen gerne zur Verfügung.

Freundliche Grüsse
Balmer-Etienne AG

Stephan Vollenweider
lic. oec. HSG
dipl. Wirtschaftsprüfer

Roland Furger
lic. oec., dipl. Wirtschaftsprüfer

- Auswahl von Mandaten für Gerichte und Gutachtertätigkeiten
- Diverse CV (Beraterprofile)
- 3 Unabhängigkeitserklärungen und Vertraulichkeitsvereinbarungen

Beilage 1

# Auswahl von Mandaten für Gerichte und Gutachtertätigkeiten der Balmer-Etienne AG

| Auftraggeber | Auftragsinhalt |
| --- | --- |
| Amtsgericht Hochdorf | • Schiedsgutachten in Bewertungsfragen |
| Amtsgericht Luzern-Land | • Bewertung Einzelunternehmung "Patentanwalt" im Zusammenhang Scheidungsverfahren<br><br>• Bewertung Arztpraxis im Zusammenhang mit Scheidungsverfahren; ergänzende Fragen zur Bilanzanalyse |
| Amtsgericht Sursee | • Bewertungsgutachten |
| Amtsgericht Willisau | • Bewertung einer Ingenieur AG im Zusammenhang mit Unternehmenskauf |
| Ausserordentlicher Konkursverwalter Biber Holding AG | • Expertengutachten zu Bewertungs- und Finanzfragen |
| Bezirksgericht Horgen | • Bewertungsgutachten bei einem "Squezze-out Verfahren" im Zusammenhang mit einer dekotierten Gesellschaft |
| Bezirksgericht Schwyz | • Scheidungsfall: Bewertungsgutachten zu Unternehmung mit Standorten in der ganzen Schweiz<br><br>• Expertise zu Forderungen aus Verantwortlichkeitsansprüchen gegenüber Revisionsstelle |
| Gericht Winterthur (Aufsichtsbehörde) | • Ausseramtliche Konkursverwaltung im Konkursfall (Konkursmasse CHF 45 Mio.) |
| Gerichtspräsidium Kulm, Kanton Aargau | • Expertise i. R. Auseinandersetzung betreffend Erbteilung und Herabsetzung mit Bewertung mehrerer Unternehmungen (inkl. Immobilien) für verschiedene Stichtage (bis 10 Jahre zurück) und Beantwortung umfangreicher Fragen |
| Gläubigerausschuss Carrier 1, Zürich | • Expertengutachten zu Bewertungs- und Finanzfragen / Verantwortlichkeitsfragen |
| Kantonsgericht Aarau | • Schiedsgutachten i. R. Auseinandersetzung Erbteilung mit Bewertung Kommanditgesellschaft und Aktiengesellschaft für verschiedene Stichtage; Beantwortung vielfältiger Fragen an den Experten |
| Kantonsgericht Obwalden | • Beurteilung Verantwortlichkeiten in Konkursfall<br><br>• Expertise zu Schadensumme in Brandfall<br><br>• Expertise zur Vermögensermittlung im Rahmen eines Scheidungsfalls<br><br>• Expertise Verantwortlichkeit Verwaltungsrat und Revisionsstelle |

Beilage 1

| Auftraggeber | Auftragsinhalt |
| --- | --- |
| Kantonsgericht Zug | • Expertise betreffend Verwendung / Missbrauch einer Marke<br>• Expertise in nationalem Konkursfall / Verantwortlichkeitsfragen<br>• Bewertung einer internationalen Unternehmensgruppe im Zusammenhang mit einem Scheidungsverfahren |
| Schiedsgericht | • Bewertung eines Verdienstausfalles aus einem Garagenbetrieb infolge Unfallinvalidität |
| Schiedsgutachten | • Schiedsgutachten im Rahmen eines Unternehmensverkaufs; Expertise zu Bilanzierungsfragen nach Swiss GAAP FER |
| Staatsanwaltschaft III des Kantons Zürich | • Expertengutachten im Fall SAir Group<br>• Expertengutachten im Fall Erb |

August 2014

Referenzliste Wirtschaftsberatung