# Exhibit 26

14.APR.2011  10:15    0041442155296    ▲    NR.399  S.1/28

SW ZURICH

34015- 013

# SCHELLENBERG WITTMER

Schellenberg Wittmer
Rechtsanwälte
Löwenstrasse 19 / Postfach 1876
8021 Zürich / Schweiz
www.swlegal.ch

Dr. Georg von Segesser
Partner / Rechtsanwalt
D   +41 44 215 5254
or  +41 44 215 5252
F   +41 44 215 5296
or  +41 44 215 5200

georg.vonsegesser@swlegal.ch

Eingegangen

**1.4. April 2011**

10:354

CLEARY GOTTLIEB STEEN & HAMILTON LLP
FRANKFURT

Verzeichnet im

CLEARY GOKANTONALEN ABWALTEREGISTER HAMILTON LLP

FRANKFURT

## EINGEGANGEN

**14. April 2011**

| FRIST: 18.04.11 | Kommentat zu 4 | BEARBEITER: SAT |
| FRIST: 18.04.11 | Bemerkungen Ectiv. | BEARBEITER: SAT |
| FRIST: | Sachverst. Auftrag | BEARBEITER: |

## PER TELEFAX UND POST

| Reference No. | 080699/01766582/UHN |
| Date | 13. April 2011 |
| No. of pages | 28 (inklusive Deckblatt) |
| Subject | ICC Schiedsverfahren Nr. 15362/JHN – Verfügung Nr. 20 |

**DR. ANDREAS RINGSTMEIER in seiner Eigenschaft als Insolvenzverwalter über das Vermögen der AGFAPHOTO GMBH i.L. (Deutschland) vs/ 1. AGFA-GEVAERT NV & CO. KG (Deutschland) et al.**

An

**Einschreiben / AR**

Herrn Professor Dr. Siegfried H. Elsing
Orrick Hölters & Elsing
Immermannstrasse 40
DE 40210 Düsseldorf

**(Klägervertreter)**

T  +49 211 36 787 0
F  +49 211 36 787 175
selsing@orrick.com

**Einschreiben / AR**

Herrn Dr. Benedikt Burger
Herrn Christoph Mangold
Orrick Hölters & Elsing
Friedrichstrasse 31
DE 60323 Frankfurt am Main

**(Klägervertreter)**

T  +49 69 71 588 221
F  +49 69 715 88 588
bburger@orrick.com
cmangold@orrick.com

**Einschreiben / AR**

Herrn Robert T. Greig
Herrn Aren Goldsmith
Frau Carine Dupeyron
Frau Toshiki Enomoto
Cleary Gottlieb Steen & Hamilton LLP
12, rue de Tilsitt
FR 75008 Paris
**(Beklagtenvertreter)**

T  +33 1 40 74 68 00
F  +33 1 40 74 68 88
rgreig@cgsh.com
agoldsmith@cgsh.com
cdupeyron@cgsh.com
tenomoto@cgsh.com

This fax contains confidential information and may also be subject to legal professional privilege. If you are not the intended recipient, please notify us by telephone immediately and destroy it without making a copy. Any unauthorised disclosure or reproduction of this fax or its contents is strictly prohibited.

ZURICH GENEVA

SW ZURICH

---

**Einschreiben / AR**

Herrn Thomas M. Buhl
Herrn Klaus Banke
Herrn Larry Work-Dembowski
Frau Annett Rombach
Cleary Gottlieb Steen & Hamilton LLP
Main Tower
Neue Mainzer Str. 52
DE 60311 Frankfurt am Main

**(Beklagtenvertreter)**

T  +49 69 97 103 0
**F  +49 69 97 103 199**
tbuhl@cgsh.com
kbanke@cgsh.com
lwork-dembowski@cgsh.com
arombach@cgsh.com

---

cc

Herrn Professor Dr. Wilhelm Haarmann
Haarmann Partnerschaftsgesellschaft
Neue Mainzer Strasse 75
DE 60311 Frankfurt am Main

**(Mitschiedsrichter)**

T  +49 69 920 59 105
**F  +49 69 920 59 990**
wilhelm.haarmann@haarmann.com

---

Herrn Univ.-Prof. Dr. Paul Oberhammer
Institut für Zivilverfahrensrecht
Schenkenstrasse 8-10
AT 1010 Wien

**(Mitschiedsrichter)**

T  +43 1 42 77 350 40
**F  +43 1 42 77 9350**
paul.oberhammer@univie.ac.at

---

Herrn Jan Heiner Nedden
Counsel
Secretariat of the ICC
International Court of Arbitration
38, Cours Albert 1er
FR 75008 Paris

T  +33 1 49 53 28 44
**F  +33 1 49 53 57 77**
ica3@iccwbo.org

---

Sehr geehrte Damen und Herren

Im Schiedsverfahren Nr. **15362/JHN** senden wir Ihnen anbei die Verfügung Nr. 20 vom 13. April 2011. Das Original folgt per Post.

Mit freundlichen Grüssen

*MRich*

Madeleine Richardson
Assistentin Dr. Georg von Segesser

Beilage

SW ZURICH

---

## VERFÜGUNG Nr. 20

### 13. April 2011

---

## Das Schiedsgericht

Dr. Georg von Segesser, Vorsitzender
Prof. Dr. Wilhelm Haarmann und Prof. Dr. Paul Oberhammer, Mitschiedsrichter
Dr. Andrea Meier, juristische Sekretärin

im ICC-Verfahren Nr. **15362/JHN**

in Sachen

**Dr. Andreas Ringstmeier,**
in seiner Eigenschaft als Insolvenzverwalter über das Vermögen
der **AgfaPhoto GmbH i.L.,**
Magnusstrasse 13
50670 Köln
Deutschland

                                                                    **Kläger**

vertreten durch Prof. Dr. Siegfried H. Elsing, Orrick Hölters & Elsing,
Immermannstrasse 40, 40210 Düsseldorf, Deutschland
sowie
Dr. Benedikt Burger und Dr. Christoph Mangold, Orrick Hölters & Elsing,
Friedrichstrasse 31, 60323 Frankfurt am Main, Deutschland

gegen

**Agfa-Gevaert N.V. & Co. KG,**
Kaiser-Wilhelm-Allee 1, 51373 Leverkusen, Deutschland

                                                                    **Beklagte 1**

**Agfa-Gevaert Healthcare GmbH,**
Tegernseer Landstrasse 161, 81539 München, Deutschland

                                                                    **Beklagte 2**

**Agfa-Gevaert Graphics Systems GmbH,**
Kasteler Strasse 45, 65203 Wiesbaden, Deutschland

                                                                    **Beklagte 3**

**Agfa-Gevaert N.V.,**
Septestraat 27, 2640 Mortsel, Belgien

                                                                    **Beklagte 4**

alle vertreten durch Robert T. Greig und Aren Goldsmith,
Cleary Gottlieb Steen & Hamilton LLP, 12, rue de Tilsitt, 75008 Paris, Frankreich
sowie
Thomas Buhl, Klaus Banke, Larry Work-Dembowski und Annett Rombach,
Cleary Gottlieb Steen & Hamilton LLP, Main Tower, Neue Mainzer Strasse 52,
60311 Frankfurt am Main, Deutschland

Gestützt auf Verfügung Nr. 19 vom 15. März 2011 begann das Schiedsgericht seine Suche nach einem möglichen Sachverständigen des Schiedsgerichts.

1. Das Profil für den Sachverständigen des Schiedsgerichts ("der Sachverständige"), welches der Suche zugrunde lag, lautete wie folgt:

"Das Schiedsgericht sucht eine Person mit Fachkenntnis in den Bereichen Finanzierung und Restrukturierung im Zusammenhang mit einer Aufspaltung einer internationalen Unternehmung in zwei separate Einheiten. Der Sachverständige sollte über Sachkenntnis in allen Bereichen im Zusammenhang mit der Finanzierung und dem Aufbau eines überlebensfähigen Geschäfts auf einer Stand-alone-Basis nach Aufspaltung von zwei Einheiten eines internationalen Konzerns verfügen. Die Fakten, welche beiden Fällen zugrunde liegen, sind dieselben und zeigen, dass Lease Streams, Factoring-Strukturen und die Bezahlung von Kundenforderungen für die Lebensfähigkeit der von der Muttergesellschaft/-gruppe ausgegliederten Geschäftseinheiten relevant waren. Angesichts dieses Hintergrunds zu beiden Fällen sucht das Schiedsgericht einen Sachverständigen, welcher Erfahrung mit ähnlichen Situationen hat und vorzugsweise aus einer Finanzberatungs- oder Buchhaltungs-/Revisionsunternehmung mit besonderer Sachkompetenz betreffend Restrukturierungsszenarien und Ausgliederungstatbeständen stammt. Verlangte Sprachen sind Deutsch und Englisch. Da die neue Gesellschaft, welche für die neue Gruppe gegründet wurde, eine deutsche Gesellschaft ist, verfügt der Sachverständige vorzugsweise über Kenntnisse des deutschen Marktes in diesem Bereich."

2. Gestützt darauf übermittelt das Schiedsgericht den Parteien zur Kommentierung und Begutachtung die folgenden vier Kandidaten:

- Max Falckenberg, Roland Berger Strategy Consultants

- Jan-Dominik Remmen, Deloitte AG

- Axel Koch, Helbling Corporate Finance AG

- Marcus Bartl, BDO Austria GmbH Wirtschaftsprüfungs- und Steuerberatungsgesellschaft

3. Die Lebensläufe der obgenannten Kandidaten sind dieser Verfügung beigelegt **(Beilagen 1 – 4)**.

SW ZURICH

ICC Verfahren Nr. 15362/JHN        Verfügung Nr. 20        13. April 2011

4. Mit Bezug auf Herrn Max Falckenberg macht das Schiedsgericht die Parteien darauf aufmerksam, dass Herr Falckenberg im November 2010 Panelmitglied bei einer Konferenz war, welche von der Anwaltskanzlei des Mitschiedsrichters Prof. W. Haarmann organisiert wurde. Herr Falckenberg ersetzte einen anderen Partner von Roland Berger, welcher an einer Teilnahme an der Konferenz verhindert war. Abgesehen von der Teilnahme auf dem Panel gab es keine weiteren Kontakte zwischen dem Mitschiedsrichter und dem Kandidaten. Das Schiedsgericht ist überzeugt, dass dies kein Grund ist, welcher die Unabhängigkeit des Kandidaten in Frage stellt, hielt aber eine Offenlegung dieses Umstands aus Gründen der Transparenz für angebracht.

5. Mit Bezug auf Herrn Jan-Dominik Remmen möchte das Schiedsgericht die Parteien darauf aufmerksam machen, dass Herr Remmen in einer peripheren Rolle an einem Beratungsprojekt für Haarmann Hemmelrath & Partner ("HH") beteiligt war, mit welchem die verschiedenen strategischen Optionen der Partner von HH geprüft wurden. Er nahm an einem Scoping Meeting teil (wo er Prof. Haarmann traf) und entwarf danach die Rechtsstruktur der HH Unternehmensgruppe. In der Folge wurden ein anderer Partner von Deloitte und ein freischaffender Rechtsberater zu gemeinsamen Liquidatoren ernannt. Herr Remmen war an der Liquidation nicht beteiligt. Das Schiedsgericht ist der Meinung, dass dies kein Grund ist, um die Unabhängigkeit des Kandidaten in Zweifel zu ziehen, hielt aber eine Offenlegung dieses Umstands aus Gründen der Transparenz für angebracht.

6. Nach Erhalt der Kommentare der Parteien zu den vier Kandidaten wird das Schiedsgericht einen von ihnen als Sachverständigen ernennen.

7. Als **Beilage 5** ist dieser Verfügung der Entwurf eines Auftrags für einen Sachverständigen des Schiedsgerichts ("Sachverständigenauftrag") beigelegt. Die Parteien sind eingeladen, ihre Kommentare zu diesem Entwurf beizubringen und unter Abschnitt 2.2 lit. b und lit. c zusätzliche Fragen an den Sachverständigen aufzulisten.

8. Der Entwurf des Sachverständigenauftrags wird nach Erhalt der Kommentare der Parteien gemäss dem vorangehenden Abschnitt fertiggestellt. Nach Ernennung des Sachverständigen durch das Schiedsgericht wird dieses den fertiggestellten Entwurf dem Sachverständigen unterbreiten und entweder ein Kick-off-Meeting oder ein Konferenzgespräch durchführen, um dem Sachverständigen zu ermöglichen, den Entwurf zu kommentieren und danach mit seiner Arbeit zu beginnen.

ICC Verfahren Nr. 1536... Verfügung Nr. 20 13. April 2011

---

Gestützt auf die vorangehenden Erwägungen erlässt das Schiedsgericht folgende

## VERFÜGUNG:

(1) Die Parteien werden eingeladen, ihre Kommentare und Erwägungen zu den vier Kandidaten für das Amt eines vom Schiedsgericht bestellten Sachverständigen bis zum **18. April 2011** einzureichen.

(2) Die Parteien werden eingeladen, ihre Bemerkungen zum Entwurf des Sachverständigenauftrags bis zum **18. April 2011** einzureichen.

(3) Diese Verfügung wird mit Zustimmung und Ermächtigung durch die Mitschiedsrichter vom Vorsitzenden allein unterzeichnet.

(4) Diese Verfügung wird den Rechtsvertretern der Parteien vorab per Telefax und danach im Doppel mit Einschreiben gegen Rückschein sowie den Mitschiedsrichtern und der ICC per Telefax und danach mit normaler Post zugestellt.

Frankfurt, 13. April 2011

Das Schiedsgericht

Dr. Georg von Segesser,
Vorsitzender

Beilagen 1 – 4: Lebensläufe der Kandidaten Max Falckenberg, Jan-Dominik Remmen, Axel Koch und Marcus Bartl

Beilage 5: Sachverständigenauftrag im Entwurf

# CURRICULUM VITAE

## Max Falckenberg



Max Falckenberg (Jahrgang 1969) ist Partner im Competence Center Corporate Performance von Roland Berger Strategy Consultants. Nach Abschluss seines Studiums hat Herr Falckenberg ca. 5 Jahre bei der KPMG mit Schwerpunkt in der Restrukturierung, Litigation support sowie im M&A in Büros in Deutschland und in London gearbeitet. Im Jahr 1999 hat er das Examen zum Wirtschaftsprüfer in den USA abgelegt (Certified Public Accountant). Seit dem Jahr 2000 ist Herr Falckenberg in unserem Hause tätig. Er ist zusätzlich Mitglied der Geschäftsführung unserer Gesellschaft für Interim-Management, die in Restrukturierungssituationen z.B. einen Chief Restructuring Officer (CRO) stellt.

Sein Studium der Betriebswirtschaftslehre hat er an den Universitäten in Passau, der Humboldt-Universität zu Berlin sowie an der University of Berkeley, California (USA) absolviert und 1995 sein Examen zum Diplom-Kaufmann abgelegt. Herr Falckenberg verfügt über mehr als 15 Jahre Berufserfahrung in der Restrukturierung von Unternehmen.

Max Falckenberg hat während seiner Berufszeit mehrere Dutzend international tätige Unternehmen in verschiedenen Industrien mit Schwerpunkt Restrukturierung, Refinanzierung sowie M&A beraten. Er ist in der Industrie national und international als angesehener Experte sowie regelmäßiger Referent bekannt und hält regelmäßig Vorträge an Universitäten. Herr Falckenberg hat darüber hinaus während seiner Berufszeit Unternehmen in Litigation Verfahren unterstützt und ist aktuell auch in einem internationalen Arbitration Verfahren als neutraler Sachverständiger tätig.

Im Rahmen seiner Restrukturierungsprojekte hat Herr Falckenberg regelmäßig Erfahrung mit Factoring und anderen Finanzierungsfragen zu lösen und in

Stand: März 2011

Case 1:14-mc-91289-PBS Document 8-17 Filed 09/26/14 Page 9 of 60

Finanzierungskonzepten abzubilden. In einem der aktuellen Fälle wurde vor 3 Monaten das Factoring neu eingeführt und damit eine ABS Finanzierung abgelöst, so dass hier auch detaillierte Kenntnisse über die aktuelle Marktlage vorliegen. Auch wurde hier eine komplexe gesellschaftsrechtliche Umstrukturierung vorgenommen.

**Übersicht über ausgewählte Projekte**

- Erstellung Restrukturierungskonzept und Begleitung der Umsetzung für einen europäischen Spezialpapierhersteller (japanische Muttergesellschaft)

- Restrukturierung und Refinanzierung eines führenden Herstellers von Wellpappenrohpapier

- Restrukturierungskonzept und Vorbereitung der Umsetzungsbegleitung sowie Verkaufsunterstützung eines weltweit tätigen Herstellers von Transportbändern und Hafenanlagen

- Restrukturierung- und Refinanzierungskonzept für eine weltweit tätige Gruppe (Automobilzulieferer, Textilzulieferer und Großhandel für Kurzwaren) sowie Umsetzungsbegleitung. Dabei auch Sonderthemen wie gesellschaftsrechtliche Neustrukturierung inkl. Hebung stiller Reserven, Aufsetzen Factoring sowie Sales&Lease Back und auch Schließung von nationalen und internationalen Betriebsstätten

- Restrukturierung und Refinanzierung inklusive Umsetzungsbegleitung der Top 5 Containerreederei

- Performance Konzept für internationalen Marktführer in der Touristik

- Restrukturierung und Implementierung sowie Unterstützung bei M&A Aktivitäten für international tätiges Bau- und Bergbauunternehmen

Stand: März 2011

# Deloitte.



## Jan-Dominik Remmen

Director
Head of Reorganisation Services Switzerland
Corporate Finance

Deloitte AG
General-Gulsan-Quai 38
8022 Zürich
Switzerland

Direct: +41 (0) 44 421 6432
Main: +41 (0) 44 421 6000
Fax: +41 (0) 44 421 6633
jaremmen@deloitte.ch
www.deloitte.ch

**Experience and qualifications**

Jan-Dominik Remmen is the Head of Reorganisation Services in Switzerland. He joined the Swiss firm from the Munich office of Deloitte Germany where he co-headed Corporate Restructuring Services. He has led international assignments throughout Europe, US and Asia focusing on Reorganisation and Corporate Finance projects for US, Canadian, UK, Swiss and German clients, both industrial conglomerates and financial institutions alike as well as Private Equity and Opportunity Funds.

Jan provides professional advice to the management and stakeholders of underperforming and financially distressed businesses with a view to maximising recoveries and protecting Investments. He assists clients in a variety of contexts including: (i) Debt Advisory Services, (ii) Independent Corporate Business Review and Liquidity Review, (iii) Performance Improvement, (iv) Turnaround Planning and Management, (v) Corporate Exit Management Services, (vi) Special Situations e.g. Fast Track M&A, Distressed Sales and (vii) Cash and Working Capital Management. Further, Jan has significant experience in preparing and leading complex transactions in special situations, such as Carve outs, MBOs, asset deals and debt restructuring.

Jan has over 10 years financial and operational restructuring experience having joined the German firm of Deloitte in 2005 after 3 years as a principal consultant at a leading international management consulting firm focusing on turnaround cases and complex transactions. Prior to this, he worked in the Valuations, Lead Advisory and Due Diligence groups of another Big Four firm in Germany, Switzerland and the UK.

Jan has significant experience in a wide range of industries including manufacturing. Further, he has led a broad array of projects ranging from financial and operational restructurings to valuations, to special reviews, internal audit and forensic assignments as well as vendor assistance and transaction services mandates. He has authored investigative reports providing the evidence used in the context of arbitration and court proceedings supporting the legal teams involved.

Jan is a Member of the International Insolvency Institute and has published widely in leading industry journals. He holds a Masters of Science in Finance from London Business School, a Diploma (Masters equivalent) of Industrial Engineering from the Technical University of Berlin and a Bachelor in Business Administration from Georgetown University.

**Example Projects.**

**Selection of operational and financial restructuring, Litigation support, and Valuation assignments**

- Corporate Finance Advisor to ThyssenKrupp. Broad range of projects varying from Reorganisation, Mergers & Acquisitions, transaction support/due diligence, purchase price allocations, benchmarking of operations, operational due diligence, forensic work and IFRS implementation projects. Projects included the damage assessment in connection with a post-acquisition dispute, leading to an out of court settlement. Revenue of group companies involved between EUR 100m and 1 bn. Transaction sizes between EUR 10 and 400m
- Appointed as restructuring advisor to a Swiss consortium of banks and their client company with respect to the review of the business plan, the valuation of the company and an assessment of the liquidation value as well as the development of options in the context of the financial restructuring. Value of debt CHF 60m
- Corporate Finance advisor to a German Landesbank and key municipal bank in German speaking area. Advice in the context of the financial restructuring of key portfolio company with more than EUR10bn under management.
- Corporate Finance advisor to a FTSE100 multinational. Review of strategic options available to shareholders regarding all of the Central and Eastern European as well as certain western European holdings, held and managed by an intermediate Swiss company. Assisting regional CFO in executing

# Deloitte.

a series of disposal and liquidation mandates and reviewing of restructuring and business plans. Transaction sizes between EUR 10m and 100m

- Restructuring advisor to European Directors of CHEMTURA in the context of the Chapter 11 proceedings in the United States. Focus on valuation and assessment of financial position post insolvency . Debt involved >USD 500m
- Exclusive financial advisor to two opportunity funds sponsored by a preeminent US investment bank in connection with the acquisition of a leading retailer in insolvency
- Member of the advisory team to WaterfordWedgwood. Review of strategic options available to shareholders regarding the German and Swiss holdings in the context of the administration of WaterfordWedgwood and Rosenthal, the German porcelain maker and German subsidiary of WW
- Restructuring advisor to an international packaging group with its main business activities in Germany in the context of a strategic realignment of the group. Led working capital optimisation work stream. Cost saving >EUR 100m and a release in working capital of EUR 30m
- Restructuring advisor to Novartis in Switzerland, Germany and Austria. Led German speaking team, part of a global team to achieve a CHF 100 million plus reduction in working capital and reengineering of process to ensure sustainability of benefits identified
- Restructuring Advisor to Commerzbank. Assistance in renegotiating debt facilities at two German Mittelstand companies with existing creditor groups. Senior debt in both cases around EUR 20m
- Review of strategic options available to shareholders regarding GHP Holding, the leading direct marketing group in Germany in the context of an Independent Business Review (IBR) and provided transaction support to the vendor in the context of the financial and restructuring due diligence
- Review of strategic options available to a preeminent Dutch family regarding one of its German holdings, including disposal, extensive restructuring program, liquidation and insolvency. Exclusive financial advisor in the subsequent sale to a competitor
- Design and implementation of restructuring program at a leading German textile group with the view to consolidate operations, establish presence in Asia, unify different sales forces and make more efficient use of capital employed. Group with sales > EUR 400m
- Restructuring advisor to a MDAX listed chemical group. Co-led design and implementation of restructuring program with the aim to cut cost base by 100 Mio. Euro. Subprojects included strategic sourcing, site reengineering, operations reengineering, deployment of quality system, managing business by contribution margins, optimize innovation process and optimizing the supply chain. Definition of site strategy and recommendations for adjustments to overhead in preparation of project
- Restructuring advisor to RAG, now trading under EVONIK. Advice in the context of the Carve out of logistic operations and realising maximum shareholder value. Transaction value > EUR 100m
- Financial advisor to Novartis Germany. Led project leading to the separation of the distribution business and the production arm. Tax neutral transfer of production related assets into shelf company under the "Umwandlungsgesetz". Transformed shelf company into fully operating company in line with the regulatory requirements, commercial, labour and tax law Transaction value > EUR 100m
- Financial advisor to Bundesministerium für Verkehr, Bau und Wohnungswesen (BMVBW), the German Federal Ministry of Transport & Housing. Review of studies and reports produced by the German Federal Finance Ministry and advisors to the German government in connection with the planned floatation of Deutsche Bahn AG. Co-led team preparing report presented to the Federal Minister of Transport and his state secretaries
- Bombardier Inc. - CF advisory assistance to Bombardier in connection with the disposal of certain non-core, underperforming assets in Germany. Transaction sizes between EUR 1 and 10 m
- 

| Education | 1993 | Bachelor of Business Administration, Georgetown University (United States) |
| | 1997 | Diploma of Industrial Engineering. Berlin Technical University (Germany) |
| | 2000 | Master of Science in Finance, London Business School (UK) |

| Professional bodies | III | Member, International Insolvency Institute (USA) |
| | AmCham | Member, Swiss American Chamber of Commerce |

| Employment record | 1996 - 2002 | Ernst & Young, Corporate Finance, Berne, Düsseldorf and London | Senior Manager (from 2002) |
| | 2002 - 2005 | Droege & Comp., Düsseldorf | Principal Consultant |
| | 2005 - 2009 | Deloitte & Touche, Munich | Director – Deputy Head of Corporate Restructuring Germany |
| | 2009 - 2011 | Deloitte, Zurich | Director – Head of Reorganisation Services Switzerland |



**International Chamber of Commerce**

*The world business organization*

**International Centre for Expertise**

**Centre international d'expertise de la CCI**

**Case No.: 329**

*Confidential: for the sole use of ICC and communication to the parties. To be completed in English.*

## CURRICULUM VITAE

NAME: **KOCH**                    FIRST NAME: **AXEL**

DATE OF BIRTH: December 7th, 1971              NATIONALITY(IES): Swiss, German

PERSONAL ADDRESS:

Toblerstrasse 70
8044 Zurich, Switzerland

TELEPHONE:  +41 44 743 84 70   FAX: +41 44 743 84 10   MOBILE: +41 79 704 67 22

E-MAIL:  Axel.Koch@helbling.ch

BUSINESS ADDRESS *(including company or firm name where applicable)*:

Helbling Corporate Finance AG
Hohlstrasse 614
8048 Zurich, Switzerland

TELEPHONE:  +41 44 743 84 70   FAX: +41 44 743 84 10   MOBILE: +41 79 704 67 22

E-MAIL: Axel.Koch@helbling.ch   WEB SITE: www.helbling-group.com

*Please indicate which address you wish to be used for correspondence:*

☐ PERSONAL                    ☒ BUSINESS

8/00

**Case No.: 329**

*Confidential: for the sole use of ICC and communication to the parties. To be completed in English.*

CURRENT PROFESSIONAL ACTIVITY(IES) AND POSITION(S):

Partner and Managing director
(Helbling Corporate Finance)

PROFESSIONAL EXPERIENCE:

15 years of Corporate restructuring and M&A being Partner of a professional service company in this specific field

ACADEMIC DEGREES / QUALIFICATIONS:

lic. oec. HSG (1995) – Master of Business Administration
Executive Education, Harvard Business School/ USA

ADDITIONAL INFORMATION *(Use separate sheet if necessary.)*:

See appendix for additional information

LANGUAGES *(Please indicated, where appropriate, whether or not you consider yourself to be able to conduct expertise proceedings in the languages listed without the assistance of an interpreter or translator.)*:

☐ ARABIC  ☒ ENGLISH  ☐ FRENCH  ☒ GERMAN

☐ ITALIAN  ☐ RUSSIAN  ☐ SPANISH  ☐ OTHER _____

Please indicate other languages in which you are well skilled:

Date: _Zurich, March 17th, 2011_____  Signature: _____

6/00

14.APR.2011  10:17    0041442155296    NR.595    S.14

SW ZURICH

# ICC

**International Chamber of Commerce**

*The world business organization*

**International Centre for Expertise    Centre international d'expertise de la CCI**

**CASE Ref.: EXP/329**

## EXPERT'S
## DECLARATION OF ACCEPTANCE
## STATEMENT OF INDEPENDENCE
## STATEMENT OF INSURANCE

*(Please mark the relevant box or boxes)*

I, the undersigned,

Name  **KOCH**_____    First Name  **AXEL**_____

## ACCEPTANCE

☒    hereby declare that **I accept** to serve as expert under the ICC Rules for Expertise in the instant case. In so declaring, I confirm that I have familiarized myself with the requirements of the ICC Rules for Expertise and am able and available to serve as an expert in accordance with all of the requirements of those Rules and accept to be remunerated in accordance therewith.

## NON-ACCEPTANCE

☐    hereby declare that **I decline** to serve as expert in the subject case (if you wish to state the reasons for checking this box, please do so).

## INDEPENDENCE

*(If you accept to serve as expert, please also check one of the two following boxes. The choice of which box to check will be determined after you have taken into account, inter alia, whether there exists any past or present relationship, direct or indirect, with any of the parties or their counsel, whether financial, professional or of another kind and whether the nature of any such relationship is such that disclosure is called for pursuant to the criteria set out below. Any doubt should be resolved in favor of disclosure.)*

☒    **I am independent** of each of the parties and intend to remain so; to the best of my knowledge, there are no facts or circumstances, past or present, that need be disclosed because they might be of such nature as to call into question my independence in the eyes of any of the parties.

**OR**

☐    **I am independent** of each of the parties and intend to remain so; **however** I wish to call your attention to the following facts or circumstances which I hereafter disclose because they might be of such a nature as to call into question my independence in the eyes of any of the parties (use separate sheet if necessary).

7/09

14.APR.2011  10:18    0041442155296                                NR.899    S.04/28

SW ZURICH



**International Chamber of Commerce**

*The world business organization*

## INSURANCE

☒    **I hereby declare** that I have the necessary professional and personal insurance to cover my activity as an expert.

Date:    Zurich, March 17th, 2011          Signature: *[signature]*

Articles 3.3: "The Expert

Before a proposal, a prospective expert shall sign a statement of independence and disclose in writing to the Centre any facts or circumstances which might be of such a nature as to call into question the expert's independence in the eyes of the Person filing the Request for Proposal. The Centre shall provide such information in writing to such Person and shall fix a time limit for any comments from such Person."

Articles 7.4: "The Expert

Before an appointment, a prospective expert shall sign a statement of independence and disclose in writing to the Centre any facts or circumstances which might be of such a nature as to call into question the expert's independence in the eyes of the parties. The Centre shall provide such information to the parties in writing and fix a time limit for any comments from them."

7/09

Case 1:14-mc-91289-PBS    Document 8-17    Filed 09/26/14    Page 16 of 60

ICC CV.doc



**International Chamber of Commerce**
*The world business organization*

**International Centre for Expertise**
**Centre international d'expertise de la CCI**

**Case No.: 329**

*Confidential: for the sole use of ICC and communication to the parties. To be completed in English.*

## *CURRICULUM VITAE*

NAME: Bartl                                    FIRST NAME: Marcus

DATE OF BIRTH: 14.11.1977                       NATIONALITY(IES): Austria

PERSONAL ADDRESS: Weingartenweg 9a, 2463 Stixneusiedl, Austria

TELEPHONE: +43-1-53737        FAX: +43-1-53737-53        MOBILE: +43-664-80037 416

E-MAIL: BARTL@BDO.AT

BUSINESS ADDRESS *(including company or firm name where applicable)*:

BDO Austria GmbH Wirtschaftsprüfungs- und Steuerberatungsgesellschaft
Kohlmarkt 8-10, Entrance Wallnerstraße 1
1010 Vienna

TELEPHONE: +43-1-53737        FAX: +43-1-53737-53        MOBILE: +43-664-80037 416

E-MAIL: BARTL@BDO.AT                WEBSITE: WWW.BDO.AT

*Please indicate which address you wish to be used for correspondence:*

☐ PERSONAL                                    ☒ BUSINESS

6/00

ICC CV.doc

**Case No.: 329**                                                                                      **Page 2**

***Confidential: for the sole use of ICC and communication to the parties. To be completed in English.***

CURRENT PROFESSIONAL ACTIVITY(IES) AND POSITION(S):

Tax Consultant
Certified Public Accountant
Certified Valuation Analyst
Head of BDO FAS Financial Advisory Services in Vienna
Director of BDO Austria
Member of the Senate for Business and Organization for the KWT (Austrian chamber of Chartered Public Accountants and Tax Consultants)
Member of the task group for business valuation

PROFESSIONAL EXPERIENCE:

Entry at BDO Austria in 2002,
Tax Consultant since 2005,
Certified Public Accountant since 2006,
Authorised signatory since 2007
Certified Valuation Analysts since 2010

Experience in:
Restructuring Advisory
- i.e. insolvency of Eybl Group, advisory of liquidator
- i.e. insolvency of Cosmos, expert

Mergers & Acquisitions
Due Diligence Reports
Company Valuation, Valuation of international and national industrial groups & financial institutions
- i.e. Valuation of Raiffeisen Zentralbank/Raiffeisen International in 2009
- i.e. Squeeze Out Bank Austria Creditanstalt in 2010

Economical Feasibility Studies
National and international Auditing Projects

ACADEMIC DEGREES / QUALIFICATIONS:

Master's Degree from the Vienna University of Economics and Business Administration
Master's Degree from the Vienna University in Laws
Certified Valuation Analyst (Member of International Association of Consultants, Valuators and Analysts)

ADDITIONAL INFORMATION (Use separate sheet if necessary.):

8/00

14.APR.2011   10:18      0041442155296            NR.399    S.17/28

SW ZURICH

ICC CV.doc

LANGUAGES (Please indicated, where appropriate, whether or not you consider yourself to be able to conduct expertise proceedings in the languages listed without the assistance of an interpreter or translator.):

☐ ARABIC        ☒ ENGLISH        ☐ FRENCH        ☒ GERMAN

☐ ITALIAN       ☐ RUSSIAN        ☐ SPANISH       ☐ OTHER _____

Please indicate other languages in which you are well skilled:

Date: _March 31st, 2011_____        Signature: _____

6/00



**International Chamber of Commerce**
*The world business organization*

**International Centre for Expertise**   **Centre international d'expertise de la CCI**

**CASE Ref.: EXP/329**

## EXPERT'S

## DECLARATION OF ACCEPTANCE
## STATEMENT OF INDEPENDENCE
## STATEMENT OF INSURANCE

*(Please mark the relevant box or boxes)*

I, the undersigned,

Name  BARTL _____   First Name   Marcus _____

# ACCEPTANCE

☒   hereby declare that **I accept** to serve as expert under the ICC Rules for Expertise in the instant case. In so declaring, I confirm that I have familiarized myself with the requirements of the ICC Rules for Expertise and am able and available to serve as an expert in accordance with all of the requirements of those Rules and accept to be remunerated in accordance therewith.

# NON-ACCEPTANCE

☐   hereby declare that **I decline** to serve as expert in the subject case (if you wish to state the reasons for checking this box, please do so).

# INDEPENDENCE

*(If you accept to serve as expert, please also check one of the two following boxes. The choice of which box to check will be determined after you have taken into account, inter alia, whether there exists any past or present relationship, direct or indirect, with any of the parties or their counsel, whether financial, professional or of another kind and whether the nature of any such relationship is such that disclosure is called for pursuant to the criteria set out below. Any doubt should be resolved in favor of disclosure.)*

☐    **I am independent** of each of the parties and intend to remain so; to the best of my knowledge, there are no facts or circumstances, past or present, that need be disclosed because they might be of such nature as to call into question my independence in the eyes of any of the parties.

**OR**

☒ **I am independent** of each of the parties and intend to remain so; **however** I wish to call your attention to the following facts or circumstances which I hereafter disclose because they might be of such a nature as to call into question my independence in the eyes of any of the parties (use separate sheet if necessary):

7/09

SW ZURICH



**International Chamber of Commerce**

*The world business organization*

BDO AG Switzerland, a member company of the BDO network not affiliated to BDO Austria GmbH has acted as expert in an ICC case in 2009 for Agfaphoto Holding GmbH:

ICC Case No. 14802/JHN
AGFAPHOTO Holding GmbH, Köln vs,
AGFA-GEVAERT N.V. & Co. KG, Leverkusen
AGFA-GEVAERT HEALTHCARE GmbH, München
AGFA-GEVAERT GRAPHICS SYSTEMS GmbH, Wiesbaden
AGFA-GEVAERT N.V., Mortsel

## INSURANCE

☒ **I hereby declare** that I have the necessary professional and personal insurance to cover my activity as an expert.

Date: _March, 31st 2011_

Signature: _____

*Articles 3.3: "The Expert*

*Before a proposal, a prospective expert shall sign a statement of independence and disclose in writing to the Centre any facts or circumstances which might be of such a nature as to call into question the expert's independence in the eyes of the Person filing the Request for Proposal. The Centre shall provide such information in writing to such Person and shall fix a time limit for any comments from such Person."*

*Articles 7.4: "The Expert*

*Before an appointment, a prospective expert shall sign a statement of independence and disclose in writing to the Centre any facts or circumstances which might be of such a nature as to call into question the expert's independence in the eyes of the parties. The Centre shall provide such information to the parties in writing and fix a time limit for any comments from them."*

7/09

Beilage 5 zu Verfügung Nr. 20 vom 13. April 2011
Entwurf GVS 13. April 2011

---

ICC Schiedsverfahren Nr. 15362/JHN

# AUFTRAG
# AN DEN SACHVERSTÄNDIGEN DES SCHIEDSGERICHTS
("Sachverständigenauftrag")

---

## Das Schiedsgericht

Dr. Georg von Segesser, Vorsitzender
Prof. Dr. Wilhelm Haarmann und Univ.-Prof. Dr. Paul Oberhammer, Mitschiedsrichter
Dr. Andrea Meier, juristische Sekretärin

im ICC-Verfahren Nr. **15362/JHN**

in Sachen

**Dr. Andreas Ringstmeier,**
in seiner Eigenschaft als Insolvenzverwalter über das Vermögen
der **AgfaPhoto GmbH i.L.,**
Magnusstrasse 13
50670 Köln
Deutschland

**Kläger**

vertreten durch Prof. Dr. Siegfried H. Elsing, Orrick Hölters & Elsing,
Immermannstrasse 40, 40210 Düsseldorf, Deutschland
sowie
Dr. Benedikt Burger und Dr. Christoph Mangold, Orrick Hölters & Elsing,
Friedrichstrasse 31, 60323 Frankfurt am Main, Deutschland

gegen

**Agfa-Gevaert N.V. & Co. KG,**
Kaiser-Wilhelm-Allee 1, 51373 Leverkusen, Deutschland

**Beklagte 1**

**Agfa-Gevaert Healthcare GmbH,**
Tegernseer Landstrasse 161, 81539 München, Deutschland

**Beklagte 2**

**Agfa-Gevaert Graphics Systems GmbH,**
Kasteler Strasse 45, 65203 Wiesbaden, Deutschland

**Beklagte 3**

**Agfa-Gevaert N.V.,**
Septestraat 27, 2640 Mortsel, Belgien

**Beklagte 4**

alle vertreten durch Robert T. Greig und Aren Goldsmith, Cleary Gottlieb
Steen & Hamilton LLP, 12, rue de Tilsitt, 75008 Paris, Frankreich
sowie
Thomas Buhl, Klaus Banke, Larry Work-Dembowski und Annett Rombach,
Cleary Gottlieb Steen & Hamilton LLP, Main Tower, Neue Mainzer
Strasse 52, 60311 Frankfurt am Main, Deutschland

SW ZURICH

## 1. Verfahrensgeschichte

Nach der mündlichen Verhandlung vom 8. bis 11. Dezember 2010 gelangte das Schiedsgericht zum Schluss, dass in Bezug auf die für die Fortführung des CI-Geschäftsbereichs notwendige Finanzierung aus Sicht des Einbringungsstichtags und der zu diesem Zeitpunkt zu berücksichtigenden Erkenntnisse ("Wurzeltheorie") auf der Basis einer zugrunde zu legenden Planung hergeleitet aus einem vorhandenen Fortführungskonzept und/oder unabhängig davon aufgrund einer zum damaligen Zeitpunkt zu erwartenden wirtschaftlichen Entwicklung (ggf. Best Case/Worst Case) mit der Perspektive von einem Jahr ab Stichtag weiterer Klärungsbedarf besteht. Zur Klärung dieser Fragen beschloss es, einen Sachverständigen zu ernennen und ihn mit der Erstellung eines Gutachtens zu beauftragen. Da ein Teil der dem Sachverständigen zu unterbreitenden Fragen sich auch auf das Parallelverfahren ICC Nr. 15365/JHN bezieht, entschied das Schiedsgericht, den Sachverständigen für beide Verfahren zu ernennen.

Mit Verfügung Nr. 16 wurden die Parteien aufgefordert, vier bis sechs Namen von Personen zu nennen, die über die verlangten Qualifikationen verfügen, und danach die Vorschläge der Gegenseite zu kommentieren. Die Parteien konnten sich auf keinen Kandidaten einigen. Aus diesem Grund wählte das Schiedsgericht selbst vier Personen als mögliche Sachverständige aus und unterbreitete deren Namen den Parteien zur Kommentierung. Nach sorgfältiger Prüfung der Kommentare der Parteien ernannte das Schiedsgericht _____ als Sachverständigen.

## 2. Aufgaben und Verantwortung des Sachverständigen

### 2.1 Aufgaben des Sachverständigen

Der Sachverständige hat wie folgt vorzugehen:

Der Sachverständige soll Zugang zu den Dokumenten und Akten dieses Schiedsverfahrens haben (vgl. Absatz 2.4 nachfolgend) und kann weitere Informationen von den Parteien verlangen, die er für die Erstattung seines Berichts für relevant hält.

Das Sachverständigengutachten soll alle Fragen gemäss Absatz 2.2 nachfolgend behandeln. Der Sachverständige soll sein Gutachten fertigstellen, nachdem die Parteien und das Schiedsgericht entweder mündlich in einer Verhandlung oder schriftlich den Entwurf kommentiert und weitere Fragen unterbreitet haben.

### 2.2 Vom Sachverständigen zu beantwortende Fragen

Der Sachverständige soll folgende Fragen beantworten:

SW ZURICH

**a)      Fragen des Schiedsgerichts**

**Grundthematik des Sachverständigengutachtens:**

Die für die Fortführung des CI-Geschäftsbereichs notwendige Finanzierung aus Sicht des Einbringungsstichtags und der zu diesem Zeitpunkt zu berücksichtigenden Erkenntnisse ("Wurzeltheorie") auf der Basis einer zugrunde zu legenden Planung hergeleitet aus einem vorhandenen Fortführungskonzept und/oder unabhängig davon aufgrund einer zum damaligen Zeitpunkt zu erwartenden wirtschaftlichen Entwicklung (ggf. Best Case/Worst Case) mit der Perspektive von einem Jahr ab Stichtag.

**Frage 1:**

Über welche Liquidität verfügte AgfaPhoto GmbH ab Stichtag für einen Zeitraum von einem Jahr bei einer Stand-alone-Betrachtung?

**Frage 2:**

War diese Liquidität ausreichend für die Fortführung des Geschäfts von AgfaPhoto GmbH aus Sicht eines Kaufmanns bei einer Stand-alone-Betrachtung?

**Frage 3:**

Aus welchen Quellen stammten die liquiden Mittel von AgfaPhoto GmbH?

**Frage 4:**

Welche Finanzierungsmöglichkeiten standen AgfaPhoto GmbH am Stichtag bei einer Stand-alone-Betrachtung zur Verfügung?

**Frage 5:**

Welche Finanzierungsmöglichkeiten waren durch Factoring gegeben?

**Frage 6:**

Mit welchen Gewinnen konnte realistischerweise gerechnet werden? Auf der Grundlage welcher Annahmen? Aus welcher Quelle? Welche prognostizierten/geplanten Gewinne verwirklichten sich nicht und warum?

**Frage 7:**

Welchen Einfluss hatte das "Netting"-Verfahren auf die Finanzierungsmöglichkeiten von AgfaPhoto GmbH?

**Frage 8:**

Falls AgfaPhoto GmbH am Stichtag über genügende Finanzierungsmöglichkeiten verfügte, warum wurden diese nicht benutzt? Welche Auswirkung hatte dies?

**Frage 9:**

War AgfaPhoto GmbH am Stichtag bereits überschuldet und/oder war die Insolvenz eine voraussehbare Bedrohung, und/oder wie wahrscheinlich war die Insolvenz zu diesem Zeitpunkt?

SW ZURICH

ICC Verfahren Nr. 15362/JHN | Entwurf Sachverständigenauftrag | GVS 13. April 2011

**Frage 10:**

Welche Auswirkung hatte die Ausgliederung des operativen Geschäfts in die Agfa-Photo GmbH auf die Liquiditätssituation der AgfaPhoto GmbH?

**Frage 11:**

Wie würden Sie die Cashflow-Planung von AgfaPhoto GmbH am Stichtag bewerten? War diese konsistent mit den anderen Kennzahlen? War sie konservativ? War sie realistisch? War sie optimistisch? War sie aggressiv?

**Frage 12:**

Gibt es noch etwas anderes, das Sie in Bezug auf die Liquiditätssituation von Agfa-Photo GmbH zum Zeitpunkt des Stichtags und im Jahr danach erwähnen möchten?

b)    **Fragen des Klägers:**

[...]

c)    **Fragen der Beklagten:**

[...]

**2.3    Kommunikation**

Der Sachverständige darf mit den Schiedsrichtern kommunizieren (und umgekehrt). Das Schiedsgericht wird die Parteien in angemessener Form über den Inhalt dieser Kommunikation unterrichten.

Der Sachverständige soll keine Schiedspartei oder Drittpartei (z.B. einen Zeugen) ohne vorgängige schriftliche Erlaubnis des Schiedsgerichts kontaktieren.

**2.4    Zugang zu Dokumenten und Akten**

Der Sachverständige soll Zugang zu allen Eingaben und Sachverständigengutachten der Parteien in diesem Schiedsverfahren haben, einschliesslich Anlagen zu den Sachverständigengutachten.

Der Sachverständige ist berechtigt, von einer Partei die Edition weiterer Unterlagen zu verlangen, welche er nach billigem Ermessen für die Erfüllung seiner Aufgabe für nützlich hält. Nach Rücksprache mit dem Schiedsgericht soll der Sachverständige dieses Gesuch rechtzeitig der betreffenden Partei unterbreiten, zusammen mit einer präzisen Umschreibung der verlangten Dokumente und einer kurzen Erklärung, warum er diese(s) Dokument(e) für relevant hält. Die andere Partei soll eine Kopie dieses Gesuchs erhalten.

Wenn die Partei, an welche der Sachverständige sein Gesuch um Edition weiterer Dokumente gerichtet hat, Einwände gegen das Editionsgesuch erhebt, wird der Sachverständige in Absprache mit dem Schiedsgericht versuchen, gemeinsam mit der Partei eine Lösung zu finden. Wenn der Sachverständige keine befriedigende

Case 1:14-mc-91289-PBS  Document 8-17  Filed 09/26/14  Page 25 of 60

| | Beilage 5 zu Verfügung Nr. 20 vom 13. April 2011 |
|---|---|
| ICC Verfahren Nr. 15362/JHN  Entwurf Sachverständigenauftrag | GVS 13. April 2011 |

Lösung hinsichtlich des betreffenden Editionsgesuchs erzielen kann, wird das Schiedsgericht über das Gesuch und die Einwände entscheiden.

Sämtliche Informationen sind i.S.v. Abschnitt 2.5 nachfolgend vertraulich zu behandeln.

### 2.5 Vertraulichkeit

Vor Unterzeichnung dieses Sachverständigenauftrags hat der Sachverständige dem Schiedsgericht und den Parteivertretern eine ordnungsgemäss unterzeichnete Vertraulichkeitsvereinbarung unterbreitet (vgl. Unabhängigkeitserklärung und Vertraulichkeitsvereinbarung für einen Sachverständigen des Schiedsgerichts in Annex A zur Verfügung Nr. [..]).

### 2.6 Unparteilichkeit und Unabhängigkeit

Der Sachverständige muss frei von Konflikten sein. Die "IBA Guidelines on Conflicts of Interest in International Arbitration" sind anwendbar.

Vor Unterzeichnung dieses Sachverständigenauftrags hat der Sachverständige dem Schiedsgericht und den Parteivertretern eine ordnungsgemäss unterzeichnete Unabhängigkeitserklärung unterbreitet (vgl. Unabhängigkeitserklärung und Vertraulichkeitsvereinbarung für einen Sachverständigen des Schiedsgerichts in Annex A zur Verfügung Nr. [..]).

### 2.7 Berichterstattung

Unter Berücksichtigung der Verhaltensregeln seines Berufsstands, der Unabhängigkeitserklärung und Vertraulichkeitsvereinbarung für einen Sachverständigen des Schiedsgerichts und dieses Sachverständigenauftrags wird der Sachverständige bezüglich der Fragen in Abschnitt 2.2 vorstehend einen schriftlichen Gutachtensentwurf ausarbeiten und diesen allen Mitgliedern des Schiedsgerichts und den Parteivertretern bis spätestens '_____ zusenden.

Falls der Gutachtensentwurf auf Sachverhaltsfragen des Rechtsstreits zwischen den Parteien Bezug nimmt, soll er dies mit angemessener Genauigkeit tun, indem er sich auf die betreffende Randziffer einer schriftlichen Eingabe und/oder die Nummer der relevanten Beilage bezieht (z.B. "vgl. Beilage K-" oder "vgl. Klagebegründung Rz. 35" etc.).

Die Parteien sollen dem Schiedsgericht am oder bis zum |_____ Fragen betreffend seinen schriftlichen Gutachtensentwurf unterbreiten.

Der schriftliche Gutachtensentwurf soll mit dem Sachverständigen in der Beweisverhandlung vom 5. bis 9. September 2011 besprochen werden. Im Anschluss daran soll der Sachverständige sein schriftliches Gutachten bis spätestens |_____ fertig stellen.

SW ZURICH

### 2.8 Weitere Aufgaben des Sachverständigen

In Absprache mit den Parteien kann das Schiedsgericht dem Sachverständigen im Verlauf des Schiedsverfahrens weitere Aufgaben zuweisen.

### 2.9 Teilnahme an der Beweisverhandlung

Der Sachverständige soll an der Beweisverhandlung teilnehmen und dort allfällige Fragen der Parteien und/oder der Schiedsrichter betreffend seinen Gutachtensentwurf beantworten.

### 2.10 Vergütung

Die Parteien haben den Sachverständigen (i) für seine Dienste mit einer Tagespauschale von EUR \_\_\_ (inkl. MwSt.) und (ii) für seine angemessenen Auslagen (Reisespesen etc.) zu gleichen Teilen zu entschädigen.

Der Sachverständige erklärt sich damit einverstanden, dass seine Gesamtvergütung den Betrag von EUR \_\_\_ nicht übersteigt. Er hat dem Schiedsgericht vor Aufnahme seiner Tätigkeit eine Kostenschätzung (inkl. MwSt.) zu unterbreiten. Den Betrag der Kostenschätzung haben die Parteien in gleichen Teilen zu bevorschussen.

Falls der Sachverständige mit weiteren Aufgaben betraut wird, wird er mit einer Tagespauschale von EUR \_\_\_ entschädigt.

Der Sachverständige soll seine Rechnung nach Fertigstellung seiner Arbeit an den Vorsitzenden des Schiedsgerichts senden.

### 2.11 Haftung

Mit Ausnahme der Bestimmungen gemäss Vertraulichkeitsvereinbarung ist der Sachverständige für Handlungen oder Unterlassungen im Zusammenhang mit dem Schiedsverfahren nicht haftbar, ausser wenn die Handlung oder Unterlassung nachweislich ein absichtliches Fehlverhalten oder grobe Fahrlässigkeit darstellt.

### 2.12 Annahme der Ernennung

Durch Unterzeichnung dieses Auftrags erklärt der Sachverständige, dass er seine Ernennung annimmt und dass er sein Amt in Übereinstimmung mit der Unabhängigkeitserklärung und Vertraulichkeitsvereinbarung für einen Sachverständigen, diesem Sachverständigenauftrag und mit aller notwendigen Sorgfalt ausübt.

### 2.13 Ergänzung des Sachverständigenauftrags

Dieser Sachverständigenauftrag kann zu einem späteren Zeitpunkt aufgrund einer Parteivereinbarung oder einer Verfügung des Schiedsgerichts nach Rücksprache mit den Parteien abgeändert oder ergänzt werden.

Dieser Sachverständigenauftrag wurde anlässlich der Telefonkonferenz vom |_____| zwischen dem Schiedsgericht, dem Sachverständigen und den Parteivertretern fertiggestellt und zwecks Unterzeichnung in Zirkulation gesetzt.

Schiedsort: Frankfurt am Main, Deutschland

**Der Sachverständige**

_____

Datum:

**Die Parteien**

_____

Für den Kläger
Vertreten durch:
Datum:

_____

Für die Beklagten
Vertreten durch:
Datum:

**Das Schiedsgericht**

_____

Prof. Dr. Wilhelm Haarmann
Datum:

_____

Univ.-Prof. Dr. Paul Oberhammer
Datum:

_____

Dr. Georg von Segesser
Datum:

Case 1:14-mc-91289-PBS Document 8-17 Filed 09/26/14 Page 28 of 60

# BEILAGE A
## zur Verfügung Nr. [ ]

## Unabhängigkeitserkärung und Vertraulichkeitserklärung

### für einen

### Sachverständigen des Schiedsgerichts

Ich, _____, erkläre was folgt:

1. Ich wurde vom Schiedsgericht ernannt, um als unabhängiger Sachverständiger ("Sachverständiger") im ICC-Schiedsverfahren Nr. 15362/JHN zu amten.

2. Ich bin von allen Parteien dieses Schiedsverfahrens unabhängig und beabsichtige, dies zu bleiben; nach meinem besten Wissen existieren weder vergangene noch gegenwärtige Tatsachen oder Umstände, welche offengelegt werden müssen, die meine Unabhängigkeit in den Augen der Parteien oder des Schiedsgerichts in Frage stellen könnten.

3. Ich habe die "IBA Guidelines on Conflicts of Interest in International Arbitration" gelesen und verstanden, und ich bin damit einverstanden, an diese gebunden zu sein.

4. Ich habe die Verfügung Nr. [...] und den Sachverständigenauftrag für einen vom Schiedsgericht ernannten Sachverständigen ("Sachverständigenauftrag") gelesen und verstanden. Ich bin einverstanden, an die Bedingungen der Verfügung Nr. [..], des Sachverständigenauftrags und die Vertraulichkeitsvereinbarung gebunden zu sein.

5. Ich anerkenne, dass das Schiedsgericht und die Parteien dieses Schiedsverfahrens die ausdrücklich beabsichtigten Begünstigten der Verpflichtungen sind, welche ich in dieser Vertraulichkeitsvereinbarung eingehe.

6. Ich bestätige mein Verständnis, dass ich möglicherweise Zugang zu Dokumenten, welche als vertraulich bezeichnet werden ("Dokumente"), und zu gewissen Informationen im Eigentum von Parteien dieses Schiedsverfahrens oder von Einheiten, welche mit den Parteien zusammenarbeiten ("Informationen"), erhalten werde und dass dieser Zugang gemäss den Bestimmungen, Voraussetzungen und Einschränkungen dieser Verfügung, des Sachverständigenauftrags und dieser Vertraulichkeitsvereinbarung zu erfolgen hat.

Case 1:14-mc-91289-PBS Document 8-17 Filed 09/26/14 Page 29 of 60

ICC Schiedsverfahren Nr. 16302/JHN   Unabhängigkeitserklärung des Sachverständigen          [..] April 2011

7.  Während der Erfüllung meiner Verpflichtungen als Sachverständiger erkläre ich mich damit einverstanden:

(i)   die Dokumente nicht preiszugeben und die Informationen nicht für irgendwelche andere Zwecke als die Erfüllung meiner Pflichten unter der Verfügung Nr. [..], dem Sachverständigenauftrag und dieser Vertraulichkeitsvereinbarung zu verwenden;

(ii)  die Dokumente und Informationen an niemand anderen als das Schiedsgericht und nur zum Zwecke der Erstellung meines Gutachtens in diesem Schiedsverfahren in Übereinstimmung mit der Verfügung Nr. [..], dem Sachverständigenauftrag und dieser Vertraulichkeitsvereinbarung preiszugeben und/oder zur Verfügung zu stellen, und

(iii) meine Erwägungen und Ergebnisse wie auch alle resultierenden Empfehlungen an niemand anderen als das Schiedsgericht in Übereinstimmung mit der Verfügung Nr. [..], dem Sachverständigenauftrag und dieser Vertraulichkeitsvereinbarung zu kommunizieren.

8.  Keine Bestimmung dieser Vertraulichkeitsvereinbarung soll mich am Gebrauch von auf andere Weise rechtmässig erlangter Informationen hindern. Im Besonderen bin ich nicht an irgendwelche Vertraulichkeits- und Nichtgebrauchsverpflichtungen gebunden, so weit ich klar aufzeigen kann, dass der betreffende Teil der Dokumente oder Informationen (i) Drittparteien vor der Offenlegung bekannt war, (ii) sich im Zeitpunkt der Offenlegung in der öffentlichen Sphäre befand, (iii) nicht durch meinen Fehler Teil der öffentlichen Sphäre wurde oder (iv) mir durch eine Drittpartei ohne Verletzung irgendwelcher Rechtspflichten oder Vertraulichkeitsverpflichtungen zugänglich gemacht wurde.

9.  Ich bin mir bewusst, dass ich auf dem ordentlichen Rechtsweg belangt werden kann, wenn ich die Bestimmungen dieser Vertraulichkeitsvereinbarung, der Verfügung Nr. [..] oder des Sachverständigenauftrags verletze.


_____          _____
Ort und Datum                            Unterschrift


                                         _____
                                         Name in Blockschrift


                                         _____
                                         Adresse

SW ZURICH

37015- 015

# SCHELLENBERG<sup>®</sup> WITTMER

| Eingegangen |
|---|
| **1 2. April 2011** |
| CLEARY GOTTLIEB STEEN & HAMILTON LLP FRANKFURT |

Schellenberg Wittmer
Attorneys at Law
Löwenstrasse 19 / P.O. Box 1876
8021 Zurich / Switzerland
www.swlegal.ch

Dr Georg von Segesser
Partner / Attorney at Law / FCIArb.
D  +41 44 215 5254
or  +41 44 215 5252
F  +41 44 215 5200

CLEARY GOTTLIEB STEEN & HAMILTON LLP
FRANKFURT

georg.vonsegesser@swlegal.ch

Listed in the
Cantonal Attorney Registry

**BY TELEFAX AND BY MAIL**

**EINGEGANGEN**

**1 2. April 2011**

| FRIST: 18.04.11 | Comments / Counsd. y: Candidate as Expert | BEARBEITER: SAT |
| FRIST: 18.04.11 | Comment draft Tob for Expert | BEARBEITER: SAT |
| FRIST: | | BEARBEITER: |

| Reference No. | 080710/01762489 /MRI |
|---|---|
| Date | 12 April 2011 |
| No. of pages | 30 (including cover) |
| Subject | **ICC Arbitration Case No. 15365/JHN** |

**DR ANDREAS RINGSTMEIER in his capacity as Insolvency Receiver over the assets of AGFAPHOTO GMBH (i.l.) (Germany) vs/ 1. AGFA-EUROPE N.V. (Belgium) et al.**

| To | Prof Dr Siegfried H Elsing<br>Orrick Hölters & Elsing<br>Immermannstrasse 40<br>DE 40210 Düsseldorf<br>**(Representative of Claimant)** | T +49 211 36 787 0<br>F **+49 211 36 787 175**<br>selsing@orrick.com |
|---|---|---|
| | Dr Benedikt Burger<br>Dr Christoph Mangold<br>Orrick Hölters & Elsing<br>Friedrichstrasse 31<br>DE 60323 Frankfurt am Main<br>**(Representative of Claimant)** | T +49 69 71 588 221<br>F **+49 69 715 88 588**<br>bburger@orrick.com<br>cmangold@orrick.com |
| | Robert T Greig<br>Aren Goldsmith<br>Ms Carine Dupeyron<br>Ms Toshiki Enomoto<br>Cleary Gottlieb Steen & Hamilton LLP<br>12, rue de Tilsitt<br>FR 75008 Paris<br>**(Representative of Respondents)** | T +33 1 40 74 68 00<br>F **+33 1 40 74 68 88**<br>rgreig@cgsh.com<br>agoldsmith@cgsh.com<br>cdupeyron@cgsh.com<br>tenomoto@cgsh.com |
| | Thomas M Buhl<br>Klaus Banke<br>Larry Work-Dembowski<br>Annett Rombach<br>Cleary Gottlieb Steen & Hamilton LLP<br>Main Tower<br>Neue Mainzer Strasse 52<br>DE 60311 Frankfurt am Main<br><br>**(Representatives of Respondents)** | T +49 69 97 103 0<br>F **+49 69 97 103 199**<br>tbuhl@cgsh.com<br>kbanke@cgsh.com<br>lwork-dembowski@cgsh.com<br>arombach@cgsh.com |

This fax contains confidential information and may also be subject to legal professional privilege. If you are not the intended recipient, please notify us by telephone immediately and destroy it without making a copy. Any unauthorised disclosure or reproduction of this fax or its contents is strictly prohibited.

ZURICH GENEVA

cc   Prof Dr Wilhelm Haarmann            T  +49 69 920 59 105
     Haarmann Partnerschaftsgesellschaft   **F  +49 69 920 59 990**
     Neue Mainzer Strasse 75             wilhelm.haarmann@haarmann.com
     DE 60311 Frankfurt am Main
     **(Co-Arbitrator)**

     Univ-Prof Dr Paul Oberhammer        T  +43 1 42 77 350 40
     Institut für Zivilverfahrensrecht     **F  +43 1 42 77 9350**
     Schenkenstrasse 8-10                paul.oberhammer@univie.ac.at
     AT 1010 Wien
     **(Co-Arbitrator)**

     Jan Heiner Nedden                   **T  +33 1 49 53 28 44**
     Counsel                             **F  +33 1 49 53 57 77**
     Secretariat of the ICC              ica3@iccwbo.org
     International Court of Arbitration
     38, Cours Albert 1er
     FR 75008 Paris

Sirs

Please find attached copy of Procedural Order No 23 of 12 April 2011. The original will follow by mail.

Yours sincerely

Madeleine Richardson
Assistant to Dr Georg von Segesser

Encs

Case 1:14-mc-91289-PBS    Document 8-17    Filed 09/26/14    Page 32 of 60

## PROCEDURAL ORDER No 23

### 12 April 2011

## The Arbitral Tribunal

Dr. Georg von Segesser, Chairman,
Prof. Dr. Wilhelm Haarmann and Prof. Dr. Paul Oberhammer, Co-Arbitrators
Dr. Andrea Meier, Legal Secretary

in ICC Arbitration No **15365/JHN**
in the matter of

**Dr. Andreas Ringstmeier,**
in his capacity as Insolvency Receiver over the assets of **AgfaPhoto GmbH i.L.**
Magnusstrasse 13
50670 Cologne
Germany

**Claimant**

represented by Prof. Dr. Siegfried H. Elsing, Orrick Hölters & Elsing,
Immermannstrasse 40, 40210 Düsseldorf, Germany
and
Dr. Benedikt Burger and Dr. Christoph Mangold, Orrick Hölters & Elsing,
Friedrichstrasse 31, 60323 Frankfurt am Main, Germany

versus

**Agfa Healthcare N.V. (formerly trading as Agfa Europe N.V.),**
Business Park E19, Battelsesteenweg 455 i,
2800 Mechelen, Belgium

**Respondent 1**

**Agfa-Gevaert Ges.m.b.H.,**
Euro Plaza, Lehrbachgasse 2, 1121 Vienna, Austria

**Respondent 2**

**Agfa s.r.o.,**
Litvínovská 609/3, 190 00 Prag 9, Prosek, Czech Republic

**Respondent 3**

**Agfa-Gevaert S.A.,**
274-276 Avenue Napoléon Bonaparte, BP 301,
92506 Rueil-Malmaison Cedex, France

Respondent 4

**Agfa Deutschland Vetriebsgesellschaft mbH & Cie,**
Im Mediapark 5, 50670 Cologne, Germany

Respondent 5

**Agfa Hungaria KFT.,**
Kapás u. 6-12, 1027 Budapest, Hungary

Respondent 6

**Agfa-Gevaert Lda.,**
Centro Regus, Quinta da Fonte Rua dos Malhões,
Edificio D. Pedro I, 2770-071 Paço d' Arcos, Portugal

Respondent 7

**Agfa-Gevaert S.A.,**
Calle Provenza 392, 08025 Barcelona, Spain

Respondent 8

**Agfa-Gevaert AG/SA,**
Stettbachstrasse 7, 8600 Dübendorf, Switzerland

Respondent 9

**Agfa Graphics N.V. (formerly trading as Agfa België N.V.),**
Prins Boudewijnlaan 5, 2550 Kontich, Belgium

Respondent 10

**OY Agfa-Gevaert AB,**
Suomalaistentie 7, Post Box 8, 02270 Espoo, Finland

Respondent 11

**Agfa-Gevaert B.V.,**
Polakweg 10-11, Postbus 12, 2288 GG Rijswijk, The Netherlands

Respondent 12

**Agfa-Gevaert AB,**
Torshamnsgatan 32c, 164 93 Kista, Sweden

Respondent 13

**Agfa-Gevaert Ltd. (UK)**
27 Great West Road, Brentford TW8 9AX, Middlesex, United Kingdom

Respondent 14

all Respondents represented by Mr Robert T. Greig, Mr Aren Goldsmith,
Ms Carine Dupeyron and Ms Toshiki Enomoto, Clearly Gottlieb
Steen & Hamilton LLP, 12 rue de Tilsitt, 75008 Paris, France
and
Mr Thomas Buhl, Mr Klaus Banke, Mr Larry Work-Dembowski, and
Ms Annett Rombach, Cleary Gottlieb Steen & Hamilton LLP, Main Tower,
Neue Mainzer Strasse 52, 60311 Frankfurt am Main, Germany

With reference to Procedural Order No. 22 of 16 March 2011 the Arbitral Tribunal has started a search for a possible candidate to be appointed as expert by the Tribunal.

1.    The profile for the Tribunal appointed expert (the Expert) on which the search has been based was as follows:

"The Tribunal is looking for a person with expertise in financing and restructuring issues in the context of a separation of an international company into two separate sections. The Expert should be knowledgeable in all aspects which relate to the financing and the setting up of a viable business to be able to stand alone after the separation of two sections of an international group of companies. The facts which underlay both cases are the same and reveal that lease streams and factoring structures and the payment of receivables were relevant for the viability of the business sections which were carved out from the parent company/group. With this background of both cases the Tribunal is looking for an Expert who has experience with similar situations and will most probably come from a financial consulting or accounting/auditing firm with special knowledge of restructuring scenarios and carve-out situations. Languages which are required are German and English. As the new company which was created for the new group is a German company, it would be preferable if the Expert had some knowledge about the German market in this area".

2.    Based thereupon the Tribunal submits to the Parties for their comments and considerations the following four candidates:

- Max Falckenberg, Roland Berger Strategy Consultants

- Jan-Dominik Remmer, Deloitte AG

- Axel Koch, Helbling Corporate Finance AG

- Marcus Bartl, BDO Austria GmbH Wirtschaftsprüfungs- und Steuerberatungsgesellschaft

3.    The CVs of the above candidates are attached to this Procedural Order (**Exhibits 1 - 4**).

4.    With regard to Mr Max Falckenberg, the Tribunal would like to draw the Parties' attention to the fact that last November 2010 Mr Falckenberg appeared on a panel of a conference organized by the firm of the Co-Arbitrator Prof. W. Haarmann.

ICC Arbitration No 15365/JHiv              Procedural Order No 23                    12 April 2011

Mr Falckenberg had to replace another partner of Roland Berger who was not able to attend the conference. Other than this participation on the panel there were no further contacts between the Co-Arbitrator and the candidate and the Tribunal is convinced that this is not a reason which would put the independence of the candidate in question. Nevertheless, it was held appropriate for reasons of transparency to disclose the above.

5.   With regard to Mr Jan-Dominik Remmen, the Tribunal would like to draw the Parties' attention to the fact that Mr Remmen has been involved in a peripheral role with Haarmann Hemmelrath & Partners ("HH") in a consulting project to examine the various strategic options available to the partners of HH. He attended a scoping meeting (at which he met Professor Haarmann), and subsequently mapped out the legal structure of the HH group of entities. Subsequently, another partner of Deloitte and a freelance legal consultant were appointed joint liquidators. Mr Remmen had no involvement in the liquidation. In the opinion of the Tribunal the above is not a reason to put the independence of the candidate in question. Nevertheless, it was held appropriate for reasons of transparency to disclose the above.

6.   After receipt of the comments by the Parties to the four candidates the Tribunal will appoint one of the candidates as Expert.

7.   As **Exhibit 5**, draft Terms of Reference for a Tribunal Appointed Expert ("ToR for Expert") are attached to this Procedural Order, and the Parties are invited to submit their comments to the draft ToR for Expert and list under para 2.2 lit. b and lit. c additional questions for the Expert.

8.   Once the draft ToR for Expert has been finalized upon receipt of the Parties comments as by the preceding paragraph and after appointment of the Expert by the Tribunal the finalized draft will be submitted to the Expert and either a kick-off meeting or a conference call will be held to allow the Expert to comment on the finalized draft and thereupon to start with his task.

Based on the above considerations the Arbitral Tribunal issues the following

GVS 01762478.docx                                                            4/5

## ORDER:

1.    The Parties are invited to submit their comments and considerations to the four candidates to be nominated as Expert on or before **18 April 2011**.

2.    The Parties are invited to comment on or before **18 April 2011** to the draft ToR for Expert.

3.    This order is signed by the Chairman alone, with the approval and authorization of the Co-Arbitrators.

4.    This order is communicated to the Parties' representatives first by telefax and thereupon in duplicate by registered mail against return receipt, and to the Co-Arbitrators and to the ICC by telefax and ordinary mail.

Frankfurt, 12 April 2011

The Arbitral Tribunal

Dr Georg von Segesser, Chairman

Exhibits 1 – 4:    CVs of candidates Max Falckenberg, Jan-Dominik Remmen, Axel Koch, and Marcus Bartl

Exhibit 5:    draft ToR for Expert

# CURRICULUM VITAE

## Max Falckenberg



Max Falckenberg (Jahrgang 1969) ist Partner im Competence Center Corporate Performance von Roland Berger Strategy Consultants. Nach Abschluss seines Studiums hat Herr Falckenberg ca. 5 Jahre bei der KPMG mit Schwerpunkt in der Restrukturierung, Litigation support sowie im M&A in Büros in Deutschland und in London gearbeitet. Im Jahr 1999 hat er das Examen zum Wirtschaftsprüfer in den USA abgelegt (Certified Public Accountant). Seit dem Jahr 2000 ist Herr Falckenberg in unserem Hause tätig. Er ist zusätzlich Mitglied der Geschäftsführung unserer Gesellschaft für Interim-Management, die in Restrukturierungssituationen z.B. einen Chief Restructuring Officer (CRO) stellt.

Sein Studium der Betriebswirtschaftslehre hat er an den Universitäten in Passau, der Humboldt-Universität zu Berlin sowie an der University of Berkeley, California (USA) absolviert und 1995 sein Examen zum Diplom-Kaufmann abgelegt. Herr Falckenberg verfügt über mehr als 15 Jahre Berufserfahrung in der Restrukturierung von Unternehmen.

Max Falckenberg hat während seiner Berufszeit mehrere Dutzend international tätige Unternehmen in verschiedenen Industrien mit Schwerpunkt Restrukturierung, Refinanzierung sowie M&A beraten. Er ist in der Industrie national und international als angesehener Experte sowie regelmäßiger Referent bekannt und hält regelmäßig Vorträge an Universitäten. Herr Falckenberg hat darüber hinaus während seiner Berufszeit Unternehmen in Litigation Verfahren unterstützt und ist aktuell auch in einem internationalen Arbitration Verfahren als neutraler Sachverständiger tätig.

Im Rahmen seiner Restrukturierungsprojekte hat Herr Falckenberg regelmäßig Erfahrung mit Factoring und anderen Finanzierungsfragen zu lösen und in

Stand: März 2011

Finanzierungskonzepten abzubilden. In einem der aktuellen Fälle wurde vor 3 Monaten das Factoring neu eingeführt und damit eine ABS Finanzierung abgelöst, so dass hier auch detaillierte Kenntnisse über die aktuelle Marktlage vorliegen. Auch wurde hier eine komplexe gesellschaftsrechtliche Umstrukturierung vorgenommen.

**Übersicht über ausgewählte Projekte**

- Erstellung Restrukturierungskonzept und Begleitung der Umsetzung für einen europäischen Spezialpapierhersteller (japanische Muttergesellschaft)

- Restrukturierung und Refinanzierung eines führenden Herstellers von Wellpappenrohpapier

- Restrukturierungskonzept und Vorbereitung der Umsetzungsbegleitung sowie Verkaufsunterstützung eines weltweit tätigen Herstellers von Transportbändern und Hafenanlagen

- Restrukturierung- und Refinanzierungskonzept für eine weltweit tätige Gruppe (Automobilzulieferer, Textilzulieferer und Großhandel für Kurzwaren) sowie Umsetzungsbegleitung. Dabei auch Sonderthemen wie gesellschaftsrechtliche Neustrukturierung inkl. Hebung stiller Reserven, Aufsetzen Factoring sowie Sales&Lease Back und auch Schließung von nationalen und internationalen Betriebsstätten

- Restrukturierung und Refinanzierung inklusive Umsetzungsbegleitung der Top 5 Containerreederei

- Performance Konzept für internationalen Marktführer in der Touristik

- Restrukturierung und Implementierung sowie Unterstützung bei M&A Aktivitäten für international tätiges Bau- und Bergbauunternehmen

Stand: März 2011

*Courtesy Translation*

<u>Excerpt from Max Falckenberg's Curriculum Vitae of March 2011</u>

Max Falckenberg (born 1969) is a partner in the Corporate Performance Competence Center of Roland Berger Strategy Consultants.  Following the conclusion of his studies Mr. Falckenberg worked for KPMG for about five years.  There his main focus was in the areas of restructuring, litigation support as well as M&A in offices in Germany and in London.  In 1999 he passed the U.S. examination as a Certified Public Accountant (CPA).  Mr. Falckenberg has been working with our firm since the year 2000.  In addition, he serves on our Board of Management for Interim Management, which, *i.e.*, provides a Chief Restructuring Officer (CRO) for restructuring situations.

[FRANKFURT 429255_1]

# Deloitte.



## Jan-Dominik Remmen

Director
Head of Reorganisation Services Switzerland
Corporate Finance

Deloitte AG
General-Guisan-Quai 38
8022 Zürich
Switzerland

Direct: +41 (0) 44 421 6432
Main: +41 (0) 44 421 6000
Fax: +41 (0) 44 421 6633
jaremmen@deloitte.ch
www.deloitte.ch

**Experience and qualifications**

Jan-Dominik Remmen is the Head of Reorganisation Services in Switzerland. He joined the Swiss firm from the Munich office of Deloitte Germany where he co-headed Corporate Restructuring Services. He has led international assignments throughout Europe, US and Asia focusing on Reorganisation and Corporate Finance projects for US, Canadian, UK, Swiss and German clients, both industrial conglomerates and financial institutions alike as well as Private Equity and Opportunity Funds.

Jan provides professional advice to the management and stakeholders of underperforming and financially distressed businesses with a view to maximising recoveries and protecting investments. He assists clients in a variety of contexts including: (i) Debt Advisory Services, (ii) Independent Corporate Business Review and Liquidity Review, (iii) Performance Improvement, (iv) Turnaround Planning and Management, (v) Corporate Exit Management Services, (vi) Special Situations e.g. Fast Track M&A, Distressed Sales and (vii) Cash and Working Capital Management. Further, Jan has significant experience in preparing and leading complex transactions in special situations, such as Carve outs, MBOs, asset deals and debt restructuring.

Jan has over 10 years financial and operational restructuring experience having joined the German firm of Deloitte in 2005 after 3 years as a principal consultant at a leading international management consulting firm focusing on turnaround cases and complex transactions. Prior to this, he worked in the Valuations, Lead Advisory and Due Diligence groups of another Big Four firm in Germany, Switzerland and the UK.

Jan has significant experience in a wide range of industries including manufacturing. Further, he has led a broad array of projects ranging from financial and operational restructurings to valuations, to special reviews, internal audit and forensic assignments as well as vendor assistance and transaction services mandates. He has authored investigative reports providing the evidence used in the context of arbitration and court proceedings supporting the legal teams involved.

Jan is a Member of the International Insolvency Institute and has published widely in leading industry journals. He holds a Masters of Science in Finance from London Business School, a Diploma (Masters equivalent) of Industrial Engineering from the Technical University of Berlin and a Bachelor in Business Administration from Georgetown University.

**Example Projects.**

**Selection of operational and financial restructuring, Litigation support, and Valuation assignments**

- Corporate Finance Advisor to ThyssenKrupp. Broad range of projects varying from Reorganisation, Mergers & Acquisitions, transaction support/due diligence, purchase price allocations, benchmarking of operations, operational due diligence, forensic work and IFRS implementation projects. Projects included the damage assessment in connection with a post-acquisition dispute, leading to an out of court settlement. Revenue of group companies involved between EUR 100m and 1 bn. Transaction sizes between EUR 10 and 400m
- Appointed as restructuring advisor to a Swiss consortium of banks and their client company with respect to the review of the business plan, the valuation of the company and an assessment of the liquidation value as well as the development of options in the context of the financial restructuring. Value of debt CHF 60m
- Corporate Finance advisor to a German Landesbank and key municipal bank in German speaking area. Advice in the context of the financial restructuring of key portfolio company with more than EUR10bn under management.
- Corporate Finance advisor to a FTSE100 multinational. Review of strategic options available to shareholders regarding all of the Central and Eastern European as well as certain western European holdings, held and managed by an intermediate Swiss company. Assisting regional CFO in executing

# Deloitte.

a series of disposal and liquidation mandates and reviewing of restructuring and business plans. Transaction sizes between EUR 10m and 100m

- Restructuring advisor to European Directors of CHEMTURA in the context of the Chapter 11 proceedings in the United States. Focus on valuation and assessment of financial position post insolvency . Debt involved >USD 500m
- Exclusive financial advisor to two opportunity funds sponsored by a preeminent US Investment bank in connection with the acquisition of a leading retailer In Insolvency
- Member of the advisory team to WaterfordWedgwood. Review of strategic options available to shareholders regarding the German and Swiss holdings in the context of the administration of WaterfordWedgwood and Rosenthal, the German porcelain maker and German subsidiary of WW
- Restructuring advisor to an international packaging group with its main business activities in Germany in the context of a strategic realignment of the group. Led working capital optimisation work stream. Cost saving >EUR 100m and a release in working capital of EUR 30m
- Restructuring advisor to Novartis in Switzerland, Germany and Austria. Led German speaking team, part of a global team to achieve a CHF 100 million plus reduction In working capital and reengineering of process to ensure sustainability of benefits identified
- Restructuring Advisor to Commerzbank. Assistance in renegotiating debt facilities at two German Mittelstand companies with existing creditor groups. Senior debt in both cases around EUR 20m
- Review of strategic options available to shareholders regarding GHP Holding, the leading direct marketing group in Germany in the context of an Independent Business Review (IBR) and provided transaction support to the vendor in the context of the financial and restructuring due diligence
- Review of strategic options available to a preeminent Dutch family regarding one of its German holdings, including disposal, extensive restructuring program, liquidation and insolvency. Exclusive financial advisor in the subsequent sale to a competitor
- Design and implementation of restructuring program at a leading German textile group with the view to consolidate operations, establish presence In Asia, unify different sales forces and make more efficient use of capital employed. Group with sales > EUR 400m
- Restructuring advisor to a MDAX listed chemical group, Co-led design and implementation of restructuring program with the aim to cut cost base by 100 Mio. Euro. Subprojects included strategic sourcing, site reengineering, operations reengineering, deployment of quality system, managing business by contribution margins, optimize Innovation process and optimizing the supply chain. Definition of site strategy and recommendations for adjustments to overhead in preparation of project
- Restructuring advisor to RAG, now trading under EVONIK. Advice in the context of the Carve out of logistic operations and realising maximum shareholder value. Transaction value > EUR 100m
- Financial advisor to Novartis Germany. Led project leading to the separation of the distribution business and the production arm. Tax neutral transfer of production related assets Into shelf company under the "Umwandlungsgesetz". Transformed shelf company into fully operating company in line with the regulatory requirements, commercial, labour and tax law Transaction value > EUR 100m
- Financial advisor to Bundesministerium für Verkehr, Bau und Wohnungswesen (BMVBW), the German Federal Ministry of Transport & Housing. Review of studies and reports produced by the German Federal Finance Ministry and advisors to the German government in connection with the planned floatation of Deutsche Bahn AG, Co-led team preparing report presented to the Federal Minister of Transport and his state secretaries
- Bombardier Inc. - CF advisory assistance to Bombardier In connection with the disposal of certain non-core, underperforming assets in Germany. Transaction sizes between EUR 1 and 10 m
- 

| Education | | |
|---|---|---|
| | 1993 | Bachelor of Business Administration, Georgetown University (United States) |
| | 1997 | Diploma of Industrial Engineering, Berlin Technical University (Germany) |
| | 2000 | Master of Science in Finance, London Business School (UK) |

| Professional bodies | | |
|---|---|---|
| | III | Member, International Insolvency Institute (USA) |
| | AmCham | Member, Swiss American Chamber of Commerce |

| Employment record | | | |
|---|---|---|---|
| | 1996 - 2002 | Ernst & Young, Corporate Finance, Berne, Düsseldorf and London | Senior Manager (from 2002) |
| | 2002 - 2005 | Droege & Comp., Düsseldorf | Principal Consultant |
| | 2005 - 2009 | Deloitte & Touche, Munich | Director – Deputy Head of Corporate Restructuring Germany |
| | 2009 - 2011 | Deloitte, Zurich | Director – Head of Reorganisation Services Switzerland |

**ICC**

**International Chamber of Commerce**

*The world business organization*

**International Centre for Expertise**

**Centre international d'expertise de la CCI**

**Case No.: 329**

***Confidential: for the sole use of ICC and communication to the parties. To be completed in English.***

### CURRICULUM VITAE

NAME: **KOCH**                    FIRST NAME: **AXEL**

DATE OF BIRTH: December 7th, 1971          NATIONALITY(IES): Swiss, German

PERSONAL ADDRESS:

Toblerstrasse 70
8044 Zurich, Switzerland

TELEPHONE: +41 44 743 84 70   FAX: +41 44 743 84 10   MOBILE: +41 79 704 67 22

E-MAIL: Axel.Koch@helbling.ch

BUSINESS ADDRESS *(including company or firm name where applicable)*:

Helbling Corporate Finance AG
Hohlstrasse 614
8048 Zurich, Switzerland

TELEPHONE: +41 44 743 84 70   FAX: +41 44 743 84 10   MOBILE: +41 79 704 67 22

E-MAIL: Axel.Koch@helbling.ch   WEB SITE: www.helbling-group.com

*Please indicate which address you wish to be used for correspondence:*

☐ PERSONAL                    ☒ BUSINESS



6/00

Case 1:14-mc-91289-PBS Document 8-17 Filed 09/26/14 Page 43 of 60

SW ZURICH

ICC CV_completed.doc

**Case No.: 329**                                                   **Page 2**

*Confidential: for the sole use of ICC and communication to the parties. To be completed in English.*

<u>CURRENT PROFESSIONAL ACTIVITY(IES) AND POSITION(S):</u>

Partner and Managing director
(Helbling Corporate Finance)

<u>PROFESSIONAL EXPERIENCE:</u>

15 years of Corporate restructuring and M&A being Partner of a professional service company in this specific field

<u>ACADEMIC DEGREES / QUALIFICATIONS:</u>

lic. oec. HSG (1995) – Master of Business Administration
Executive Education, Harvard Business School/ USA

<u>ADDITIONAL INFORMATION</u> *(Use separate sheet if necessary.)*:

See appendix for additional information

<u>LANGUAGES</u> *(Please indicated, where appropriate, whether or not you consider yourself to be able to conduct expertise proceedings in the languages listed <u>without the assistance of an interpreter or translator.</u>):*

| ☐ ARABIC | ☒ ENGLISH | ☐ FRENCH | ☒ GERMAN |
| ☐ ITALIAN | ☐ RUSSIAN | ☐ SPANISH | ☐ OTHER _____ |

Please indicate other languages in which you are well skilled:

Date: _Zurich, March 17th, 2011_ ___          Signature: _____

6/00

**ICC** SW ZURICH

**International Chamber of Commerce**

*The world business organization*

## International Centre for Expertise    Centre international d'expertise de la CCI

**CASE Ref.: EXP/329**

# EXPERT'S

## DECLARATION OF ACCEPTANCE
## STATEMENT OF INDEPENDENCE
## STATEMENT OF INSURANCE

*(Please mark the relevant box or boxes)*

I, the undersigned,

Name **KOCH**_____ First Name **AXEL** _____

## ACCEPTANCE

☒ hereby declare that **I accept** to serve as expert under the ICC Rules for Expertise in the instant case. In so declaring, I confirm that I have familiarized myself with the requirements of the ICC Rules for Expertise and am able and available to serve as an expert In accordance with all of the requirements of those Rules and accept to be remunerated in accordance therewith.

## NON-ACCEPTANCE

☐ hereby declare that **I decline** to serve as expert in the subject case (if you wish to state the reasons for checking this box, please do so).

## INDEPENDENCE

*(If you accept to serve as expert, please also check one of the two following boxes, The choice of which box to check will be determined after you have taken Into account, inter alia, whether there exists any past or present relationship, direct or indirect, with any of the parties or their counsel, whether financial, professional or of another kind and whether the nature of any such relationship is such that disclosure is called for pursuant to the criteria set out below. Any doubt should be resolved in favor of disclosure.)*

☒ **I am independent** of each of the parties and intend to remain so; to the best of my knowledge, there are no facts or circumstances, past or present, that need be disclosed because they might be of such nature as to call into question my independence in the eyes of any of the parties.

   **OR**

☐ **I am independent** of each of the parties and intend to remain so; **however** I wish to call your attention to the following facts or circumstances which I hereafter disclose because they might be of such a nature as to call into question my independence in the eyes of any of the parties (use separate sheet if necessary).

7/09

SW ZURICH



**International Chamber of Commerce**

*The world business organization*

# INSURANCE

☒ **I hereby declare** that I have the necessary professional and personal insurance to cover my activity as an expert.

Date:    Zurich, March 17th, 2011

Signature:

---

*Articles 9.3: "The Expert*

*Before a proposal, a prospective expert shall sign a statement of independence and disclose in writing to the Centre any facts or circumstances which might be of such a nature as to call into question the expert's independence in the eyes of the Person filing the Request for Proposal. The Centre shall provide such information in writing to such Person and shall fix a time limit for any comments from such Person."*

*Articles 7.4: "The Expert*

*Before an appointment, a prospective expert shall sign a statement of independence and disclose in writing to the Centre any facts or circumstances which might be of such a nature as to call into question the expert's independence in the eyes of the parties. The Centre shall provide such information to the parties in writing and fix a time limit for any comments from them."*

7/09



**International Chamber of Commerce**

*The world business organization*

# International Centre for Expertise
# Centre international d'expertise de la CCI

### Case No.: 329

*Confidential: for the sole use of ICC and communication to the parties. To be completed in English.*

## CURRICULUM VITAE

NAME: Bartl                                    FIRST NAME: Marcus

DATE OF BIRTH: 14.11.1977                      NATIONALITY(IES): Austria

PERSONAL ADDRESS: Weingartenweg 9a, 2463 Stixneusiedl, Austria

TELEPHONE: +43-1-53737      FAX: +43-1-53737-53      MOBILE: +43-664-80037 416

E-MAIL: BARTL@BDO.AT

BUSINESS ADDRESS *(Including company or firm name where applicable):*

BDO Austria GmbH Wirtschaftsprüfungs- und Steuerberatungsgesellschaft
Kohlmarkt 8-10, Entrance Wallnerstraße 1
1010 Vienna

TELEPHONE: +43-1-53737      FAX: +43-1-53737-53      MOBILE: +43-664-80037 416

E-MAIL: BARTL@BDO.AT              WEBSITE: WWW.BDO.AT

*Please indicate which address you wish to be used for correspondence:*

☐ PERSONAL                              ☒ BUSINESS

6/00

ICC CV.doc

**Case No.: 329**                                                                                       **Page 2**

*Confidential: for the sole use of ICC and communication to the parties. To be completed in English.*

CURRENT PROFESSIONAL ACTIVITY(IES) AND POSITION(S):

Tax Consultant
Certified Public Accountant
Certified Valuation Analyst
Head of BDO FAS Financial Advisory Services in Vienna
Director of BDO Austria
Member of the Senate for Business and Organization for the KWT (Austrian chamber of Chartered Public Accountants and Tax Consultants)
Member of the task group for business valuation

PROFESSIONAL EXPERIENCE:

Entry at BDO Austria in 2002,
Tax Consultant since 2005,
Certified Public Accountant since 2006,
Authorised signatory since 2007
Certified Valuation Analysts since 2010

Experience in:
Restructuring Advisory
- i.e. insolvency of Eybl Group, advisory of liquidator
- i.e. insolvency of Cosmos, expert

Mergers & Acquisitions
Due Diligence Reports
Company Valuation, Valuation of international and national industrial groups & financial institutions
- i.e. Valuation of Raiffeisen Zentralbank/Raiffeisen International in 2009
- i.e. Squeeze Out Bank Austria Creditanstalt in 2010

Economical Feasibility Studies
National and international Auditing Projects

ACADEMIC DEGREES / QUALIFICATIONS:

Master's Degree from the Vienna University of Economics and Business Administration
Master's Degree from the Vienna University in Laws
Certified Valuation Analyst (Member of International Association of Consultants, Valuators and Analysts)

ADDITIONAL INFORMATION *(Use separate sheet if necessary.)*:

6/00

SW ZURICH

ICC CV.doc

**LANGUAGES** *(Please indicated, where appropriate, whether or not you consider yourself to be able to conduct expertise proceedings in the languages listed <u>without the assistance of an interpreter or translator.</u>):*

☐ ARABIC    ☒ ENGLISH    ☐ FRENCH    ☒ GERMAN

☐ ITALIAN    ☐ RUSSIAN    ☐ SPANISH    ☐ OTHER _____

Please indicate other languages in which you are well skilled:

Date: _March 31st, 2011_____    Signature: _____

**ICC**

**International Chamber of Commerce**

*The world business organization*

**International Centre for Expertise**     **Centre international d'expertise de la CCI**

**CASE Ref.: EXP/329**

# EXPERT'S
## DECLARATION OF ACCEPTANCE
## STATEMENT OF INDEPENDENCE
## STATEMENT OF INSURANCE

*(Please mark the relevant box or boxes)*

I, the undersigned,

Name   BARTL _____ First Name   Marcus _____

## ACCEPTANCE

☒ hereby declare that I **accept** to serve as expert under the ICC Rules for Expertise in the instant case. In so declaring, I confirm that I have familiarized myself with the requirements of the ICC Rules for Expertise and am able and available to serve as an expert in accordance with all of the requirements of those Rules and accept to be remunerated in accordance therewith.

## NON-ACCEPTANCE

☐ hereby declare that I **decline** to serve as expert in the subject case (if you wish to state the reasons for checking this box, please do so).

## INDEPENDENCE

*(If you accept to serve as expert, please also check one of the two following boxes. The choice of which box to check will be determined after you have taken into account, inter alia, whether there exists any past or present relationship, direct or indirect, with any of the parties or their counsel, whether financial, professional or of another kind and whether the nature of any such relationship is such that disclosure is called for pursuant to the criteria set out below. Any doubt should be resolved in favor of disclosure.)*

☐ **I am independent** of each of the parties and intend to remain so; to the best of my knowledge, there are no facts or circumstances, past or present, that need be disclosed because they might be of such nature as to call into question my independence in the eyes of any of the parties.

    **OR**

☒ I am independent of each of the parties and intend to remain so; **however** I wish to call your attention to the following facts or circumstances which I hereafter disclose because they might be of such a nature as to call into question my independence in the eyes of any of the parties (use separate sheet if necessary):

7/09



**International Chamber of Commerce**

*The world business organization*

BDO AG Switzerland, a member company of the BDO network not affiliated to BDO Austria GmbH has acted as expert in an ICC case in 2009 for Agfaphoto Holding GmbH:

ICC Case No. 14802/JHN
AGFAPHOTO Holding GmbH, Köln vs.
AGFA-GEVAERT N.V. & Co. KG, Leverkusen
AGFA-GEVAERT HEALTHCARE GmbH, München
AGFA-GEVAERT GRAPHICS SYSTEMS GmbH, Wiesbaden
AGFA-GEVAERT N.V., Mortsel

## INSURANCE

☒ **I hereby declare** that I have the necessary professional and personal insurance to cover my activity as an expert.

Date: _March, 31st 2011_   Signature: _[signature]_

---

*Articles 3.3: "The Expert*

*Before a proposal, a prospective expert shall sign a statement of independence and disclose in writing to the Centre any facts or circumstances which might be of such a nature as to call into question the expert's independence in the eyes of the Person filing the Request for Proposal. The Centre shall provide such information in writing to such Person and shall fix a time limit for any comments from such Person."*

*Articles 7.4: "The Expert*

*Before an appointment, a prospective expert shall sign a statement of independence and disclose in writing to the Centre any facts or circumstances which might be of such a nature as to call into question the expert's independence in the eyes of the parties. The Centre shall provide such information to the parties in writing and fix a time limit for any comments from them."*

7/09

Exhibit 5 to Procedural Order No 23 of 12 April 2011

Draft GVS 12 April 2011

---

## ICC Arbitration No 15365/JHN

## TERMS OF REFERENCE
## FOR A TRIBUNAL-APPOINTED EXPERT

### ("ToR for Expert")

---

## The Arbitral Tribunal
Dr. Georg von Segesser, Chairman,
Prof. Dr. Wilhelm Haarmann and Univ.-Prof. Dr. Paul Oberhammer, Co-Arbitrators
Dr. Andrea Meier, Legal Secretary

in ICC Arbitration No **15365/JHN**
in the matter of

**Dr. Andreas Ringstmeier,**
in his capacity as Insolvency Receiver over the assets of **AgfaPhoto GmbH i.L.**
Magnusstrasse 13
50670 Cologne
Germany

**Claimant**

represented by Prof. Dr. Siegfried H. Elsing, Orrick Hölters & Elsing, Immermannstrasse 40,
40210 Düsseldorf, Germany
and
Dr. Benedikt Burger and Dr. Christoph Mangold, Orrick Hölters & Elsing, Friedrichstrasse 31,
60323 Frankfurt am Main, Germany

versus

**Agfa Healthcare N.V. (formerly trading as Agfa Europe N.V.),**
Business Park E19, Battelsesteenweg 455 i,
2800 Mechelen, Belgium

**Respondent 1**

**Agfa-Gevaert Ges.m.b.H.,**
Euro Plaza, Lehrbachgasse 2, 1121 Vienna, Austria

**Respondent 2**

**Agfa s.r.o.,**
Litvínovská 609/3, 190 00 Prag 9, Prosek, Czech Republic

**Respondent 3**

Exhibit 5 to Procedural Order No 23

| ICC Arbitration No 15365/JHN | draft ToR for Expert | GVS 12 April 2011 |
|---|---|---|

**Agfa-Gevaert S.A.,**
274-276 Avenue Napoléon Bonaparte, BP 301,
92506 Rueil-Malmaison Cedex, France

Respondent 4

**Agfa Deutschland Vetriebsgesellschaft mbH & Cie,**
Im Mediapark 5, 50670 Cologne, Germany

Respondent 5

**Agfa Hungaria KFT.,**
Kapás u. 6-12, 1027 Budapest, Hungary

Respondent 6

**Agfa-Gevaert Lda.,**
Centro Regus, Quinta da Fonte Rua dos Malhões,
Edificio D. Pedro I, 2770-071 Paço d' Arcos, Portugal

Respondent 7

**Agfa-Gevaert S.A.,**
Calle Provenza 392, 08025 Barcelona, Spain

Respondent 8

**Agfa-Gevaert AG/SA,**
Stettbachstrasse 7, 8600 Dübendorf, Switzerland

Respondent 9

**Agfa Graphics N.V. (formerly trading as Agfa België N.V.),**
Prins Boudewijnlaan 5, 2550 Kontich, Belgium

Respondent 10

**OY Agfa-Gevaert AB,**
Suomalaistentie 7, Post Box 8, 02270 Espoo, Finland

Respondent 11

**Agfa-Gevaert B.V.,**
Polakweg 10-11, Postbus 12, 2288 GG Rijswijk, The Netherlands

Respondent 12

**Agfa-Gevaert AB,**
Torshamnsgatan 32c, 164 93 Kista, Sweden

Respondent 13

**Agfa-Gevaert Ltd. (UK)**
27 Great West Road, Brentford TW8 9AX, Middlesex, United Kingdom

Respondent 14

all Respondents represented by Mr Robert T. Greig, Mr Aren Goldsmith,
Ms Carine Dupeyron and Ms Toshiki Enomoto, Clearly Gottlieb Steen & Hamilton LLP,
12 rue de Tilsitt, 75008 Paris, France
and
Mr Thomas Buhl, Mr Klaus Banke, Mr Larry Work-Dembowski, and Ms Annett Rombach,
Cleary Gottlieb Steen & Hamilton LLP, Main Tower, Neue Mainzer Strasse 52, 60311
Frankfurt am Main, Germany

## 1. Procedural History

After the hearing held on 8 to 11 December 2010, the Arbitral Tribunal reached the conclusion that, in the parallel ICC case no 15362/JHN, there still remained a need for clarification regarding the financing necessary for the continuation of the CI business after the carve out from the Agfa Gevaert Group from the perspective of the valuation date and the findings to be considered at that date ("*Wurzel*"-theory) on the basis of a plan derived from an existing going concern concept and/or independent thereof based on an economic development to be expected at that point in time (best case/worst case scenario if applicable) with the perspective of one year as per the valuation date. In order to clarify these questions, it decided to appoint an expert and mandate him/her to render an expert report. In Procedural Order No 20, the Arbitral Tribunal informed the Parties that the expert should also be appointed in the present arbitration since part of the questions to be submitted to the expert also relates to these proceedings.

The Parties were invited to nominate four or six individuals that would possess the requested qualifications and to comment thereafter on the proposals submitted by the other Party. The Parties were not able to agree on a candidate. Therefore, the Arbitral Tribunal selected [....] individuals as potential experts and submitted their names to the Parties for comments. After thorough consideration of the Parties' comments, the Arbitral Tribunal appointed ..... as Expert.

[...]

## 2. Tasks and Responsibilities of the Expert

### 2.1 Tasks to be performed by the Expert

The Expert is requested to proceed as follows:

The Expert shall have access to the documents and files of this arbitration (paragraph 2.4 below) and may request such further information from the Parties which he considers to be relevant for rendering his report.

The Expert's report shall address all questions listed in paragraph 2.2 below and the Expert shall finalise his report after the Parties and the Tribunal have commented on and submitted further questions to his draft report either orally at a hearing or in writing.

### 2.2 Specific questions to be answered by the Expert

The Expert is requested to answer the following questions:

ICC Arbitration No 15365/JHN | draft ToR for Expert | GVS 12 April 2011

a) **Questions by the Arbitral Tribunal**

**Overall topic of expertise:**

The financing that was necessary for the continuation of the CI business from the perspective of the valuation date and the findings to be considered at that date ("*Wurzel*"-theory) on the basis of a plan derived from an existing going concern concept and/or independent thereof based on an economic development to be expected at that point in time (best case/worst case scenario if applicable) with the perspective of one year as per the valuation date.

**Question 1:**

What was the liquidity of Agfa Photo GmbH from the valuation date onwards for a period of one year on a stand alone basis?

**Question 2:**

Was this liquidity sufficient for the continuation of the business of Agfa Photo GmbH from the point of view of a business man on a stand alone basis?

**Question 3:**

Which were the different sources for the liquidity of Agfa Photo GmbH?

**Question 4:**

Which financing possibilities were available to AgfaPhoto GmbH at the valuation date on a stand alone basis?

**Question 5:**

What financing options were available through factoring?

**Question 6:**

Which profits could realistically be expected? On the basis of which assumptions? From which source? Which forecasted/planned profits did not materialize and why?

**Question 7:**

What was the impact of the netting procedure on the financing possibilities available to AgfaPhoto GmbH?

**Question 8:**

If AgfaPhoto GmbH had sufficient financing possibilities at the valuation date, why were they not used? Which effect did this have?

GVS 01763386.docx

ICC Arbitration No 15365/JHN | draft ToR for Expert | GVS 12 April 2011

**Question 9:**

Was Agfa Photo GmbH already overindebted at the valuation date and/or was insolvency a predictable threat, and/or how likely was insolvency at this point of time?

**Question 10:**

What was the impact of the hive down of the operating business into AgfaPhoto GmbH on the liquidity situation of AgfaPhoto GmbH?

**Question 11**

How would you classify the cashflow planning of AgfaPhoto GmbH at the valuation date? Is it consistent with the other kpis? Is it conservative? Is it realistic? Is it optimistic? Is it aggressive?

**Question 12**

Is there anything else you would like to mention with respect to the liquidity situation of AgfaPhoto GmbH at the point of time of the valuation date and in the year thereafter?

**b)      Questions by Claimant**

[...]

**c)      Questions by Respondents**

[...]

**2.3      Communication**

The Expert is allowed to communicate with the Arbitrators (and vice versa). The Arbitral Tribunal will inform the Parties in appropriate form about the content of such communication.

The Expert shall not contact a Party to the arbitration or a third party (e.g. a witness) without having first obtained written authorization from the Arbitral Tribunal.

**2.4      Access to Documents and Files**

The Expert shall have access to all briefs and expert reports submitted by the Parties in this arbitration, including the exhibits to the expert reports.

The Expert is entitled to request that a Party produce further documents which the Expert, in his reasonable discretion, deems useful in order to complete his tasks. After consultation with the Tribunal, the Expert shall timely address such request to the Party, together with a precise description of the document(s) sought and a brief explanation why the Expert considers such document(s) relevant. The other Party shall receive a copy of the request.

If the Party to which the Expert has addressed a request for further documents raises objections against the production request, the Expert in consultation with the Tribunal will try to solve the issue together with the Party. If the Expert cannot reach a satisfactory solution of the document production request, the Arbitral Tribunal shall decide on the request and the objection.

All information shall be kept confidential pursuant to Section 2.5 below.

## 2.5   Confidentiality

Before signing these ToR for Expert, the Expert has already submitted to the Arbitral Tribunal and the Parties' counsel a duly signed confidentiality agreement (see Statement of Independence and Confidentiality Agreement for a Tribunal-appointed Expert in Exhibit A to Procedural Order No x).

## 2.6   Impartiality and Independence

The Expert must be free of any conflict. The IBA Guidelines on Conflicts of Interest in International Arbitration shall apply.

Before signing these ToR for Expert, the Expert has already submitted to the Arbitral Tribunal and the Parties' counsel a duly signed statement of independence (see Statement of Independence and Confidentiality Agreement for a Tribunal-appointed Expert in Exhibit A to Procedural Order No x).

## 2.7   Reporting

The Expert will establish in accordance with the code of practice of his profession, in accordance with the Statement of Independence and Confidentiality Agreement for a Tribunal-appointed Expert and these ToR for Expert, a draft written report on the questions set out in Section 2.2 above and shall send such draft written report to each member of the Arbitral Tribunal and to the Parties' counsel no later than _____.

If the draft written report refers to facts of the dispute between the Parties, the draft written report shall refer to them with appropriate precision, i.e. by referring to the relevant paragraph in a written submission and/or by referring to the number of the relevant exhibit (e.g. "see Exhibit C-" or "see Statement of Claim, para. 35", etc.).

On or before _____, the Parties shall submit to the Arbitral Tribunal questions addressed to the Expert with regard to his draft written report.

The draft written report shall be discussed with the Expert at the Evidentiary Hearing scheduled for 5 to 9 September 2011. Thereupon the Expert shall finalize his written report no later than _____.

## 2.8   Further Tasks of the Expert

The Arbitral Tribunal, in consultation with the Parties, may assign further tasks to the Expert in the further course of the arbitral proceedings.

**2.9     Attendance of the Evidentiary Hearing**

The Expert shall attend the Evidentiary Hearing and at that occasion answer questions which the Parties and/or the Arbitrators may have in regard to his written report.

**2.10    Compensation**

The Parties shall compensate the Expert in equal parts (i) for his services with a fee at a daily rate of EUR _____ (incl. VAT) and (ii) for his reasonable out of pocket expenses (travel expenses etc.).

The Expert agrees that the total amount of his compensation shall not exceed EUR _____. He shall submit to the Arbitral Tribunal a cost estimate (incl. VAT) prior to the commencement of his work. The amount of the cost estimate shall be advanced by the Parties in equal shares.

Should the Expert be assigned further tasks, he will be compensated with a daily rate of EUR ___.

The Expert shall send his invoice to the Chairman of the Arbitral Tribunal upon completion of his work.

**2.11    Liability**

Except as provided for under the terms of the Confidentiality Agreement, the Expert shall not be liable for any act or omission in connection with the arbitration, save where the act or omission is shown to constitute deliberate wrongdoing or serious negligence.

**2.12    Acceptance of Appointment**

By signing these ToR for Expert, the Expert declares to accept his appointment and to perform his mandate in accordance with the Statement of Independence and Confidentiality Agreement, these ToR for Expert, and with all due diligence.

**2.13    Amendment of ToR for Expert**

These ToR for Expert may be amended or supplemented at a later time upon agreement of the Parties or an order by the Arbitral Tribunal after consultation with the Parties.

These ToR were finalized at the telephone conference of _____ between the Arbitral Tribunal, the Expert and Counsel, whereupon they were put into circulation for signature.

Case 1:14-mc-91289-PBS    Document 8-17    Filed 09/26/14    Page 58 of 60

SW ZURICH

| | |
|---|---|
| ICC Arbitration No 15365/JHN | draft ToR for Expert |

Exhibit 5 to Procedural Order No 23

GVS 12 April 2011

Place of Arbitration: Frankfurt am Main, Germany

**The Expert**

Date:

**The Parties**

For Claimant
Represented by:
Date:

For Respondents
Represented by:
Date:

**The Arbitral Tribunal**

Prof. Dr Wilhelm Haarmann
Date:

Univ.-Prof. Dr Paul Oberhammer
Date:

Dr Georg von Segesser
Date:

ICC Arbitration No 15365/JHN          GVS 12 April 2011

## EXHIBIT A
## to Procedural Order No [ ]

## Statement of Independence and Confidentiality Agreement

### for

### a Tribunal-Appointed Expert

I, _____, state the following:

1. I have been retained by the Arbitral Tribunal to serve as an independent Expert ("Expert") in ICC arbitration No 15365/JHN.

2. I am independent of each of the Parties to this arbitration and intend to remain so; to the best of my knowledge, there are no facts or circumstances, past or present, that need be disclosed because they might be of such nature as to call into question my independence in the eyes of the Parties of the Arbitral Tribunal.

3. I have read and understood, and agree to be bound by the IBA Guidelines on Conflicts of Interest in International Arbitration.

4. I have read and understood Procedural Order No [ ] ("Order") and the Terms of Reference for a Tribunal-appointed Expert ("ToR for Expert"). I agree to be bound by the terms of the Order, the ToR for Expert and this Confidentiality Agreement.

5. I acknowledge that the Arbitral Tribunal and the Parties to this arbitration are the expressly intended beneficiaries of the undertakings I give in this Confidentiality Agreement.

6. I attest to my understanding that access to documents designated as confidential ("Documents") and to certain information, which is proprietary to the Parties to this arbitration or to entities collaborating with the Parties ("Information"), may be provided to me and that such access shall be pursuant to the terms and conditions and restrictions of the Order, the ToR for Expert and this Confidentiality Agreement.

7. In the course of discharging my undertakings as an Expert, I agree to:

    (i) not disclose the Documents or to use the Information for any other purpose than discharging my obligations under the Order, the ToR for Expert and this Confidentiality Agreement;

Case 1:14-mc-91289-PBS    Document 8-17    Filed 09/26/14    Page 60 of 60

SW ZURICH                                          Exhibit A to Procedural Order No [ ]

| ICC Arbitration No 15365/JHN | Expert's Statement of Independence | GVS 12 April 2011 |

(ii)   not disclose and/or provide the Documents or the Information to anyone other than the Arbitral Tribunal, for purposes of providing my expertise in this arbitration and then solely in accordance with the Order and the ToR for Expert and this Confidentiality Agreement; and

(iii)  not communicate my deliberations and findings as well as any resulting recommendations to anyone other than the Arbitral Tribunal in accordance with the Order and the ToR for Expert and this Confidentiality Agreement.

8.    Nothing in this Confidentiality Agreement shall prevent me from using otherwise legally obtained information. In particular, I am not bound by any obligations of confidentiality and non use to the extent that I can clearly demonstrate that any part of Documents or Information (i) was known to third parties prior to any disclosure, (ii) was in the public domain at the time of disclosure, (iii) becomes part of the public domain through no fault of my own, or (iv) becomes available to me from a third party not in breach of any legal obligations of confidentiality.

9.    I understand that, in the event that I fail to abide by the terms of this Confidentiality Agreement, the Order or the ToR for Expert, I shall be subject to separate legal recourse.

_____                    _____
Place and date                                   Signature

                                                 _____
                                                 Printed Name

                                                 _____
                                                 Address