Exhibit 33

Case 1:14-mc-91289-PBS    Document 8-26    Filed 09/26/14    Page 2 of 5

GmbHG § 13 Juristische Person; Handelsgesellschaft   Merkt  Münchener Kommentar zum GmbHG   Rn 88
1. Auflage 2010

### a) Allgemeines.

Die – im Spannungsverhältnis zu der Privatautonomie der Gesellschafter stehende[1] – **88** gesellschaftsrechtliche Treuepflicht steuert die Wahrnehmung aller Rechte und Pflichten der Gesellschafter in der Gesellschaft und verlangt in ihrer allgemeinen Formulierung von den Gesellschaftern, sich **gegenüber der GmbH loyal zu verhalten, ihre Zwecke aktiv zu fördern und Schaden von ihr abzuhalten.**[2] Sie stellt als allgemeines gesellschaftsrechtliches Prinzip die zivilrechtliche Reaktion auf das persönliche Zusammenwirken der Gesellschafter in der Gesellschaft dar, welche gegenseitig aufeinander angewiesen sind und somit jeweils die Möglichkeit haben, auf die Mitgliedschaft der anderen und die damit verbundenen Interessen einzuwirken.[3] Da die Gesellschafter in der Körperschaft dauerhaft verbunden sind, ist ein höheres Maß an gegenseitiger Rücksicht erforderlich, als die grundsätzlich geltenden Maßstäbe von Treu und Glauben und der guten Sitten es gebieten würden (§§ 242, 826 BGB). Wie allerdings schon aus der allgemeinen Formulierung der Treuepflicht ersichtlich wird, lässt sich dieser nicht entnehmen, welches Verhalten vom GmbH-Gesellschafter in der konkreten Situation gefordert wird. Vielmehr muss die gebildete Generalklausel **in jedem Einzelfall erneut konkretisiert** werden, wobei es vor allem auf die Art der jeweils betroffenen Rechte und Pflichten der Gesellschafter, auf die tatsächliche Struktur der betroffenen Gesellschaft und auf die Rechtsstellung des Gesellschafters ankommt.[4] Die Treuepflicht stellt daher nicht mehr und nicht weniger als eine **gesellschaftsrechtliche Generalklausel** dar.[5]

---

[1]*Wilhelm*, FS Huber, 2006, S. 1019, 1028 ff.

[2]*A. Hueck* Treuegedanke S. 18 f.; *Lutter*AcP 180 (1980), 84 ff., 102 ff.; Ulmer/Raiser § 14 Rn. 68; Wicke Rn. 19.

[3]Ulmer/Raiser § 14 Rn. 67.

[4]Scholz/*Emmerich* Rn. 39d ff.; Rowedder/Schmidt-Leithoff/Pentz Rn. 40; Ulmer/Raiser § 14 Rn. 69.

[5]Scholz/*Emmerich* Rn. 36, 38, 39d.

Zitiervorschlag:
MüKoGmbHG/Merkt GmbHG § 13 Rn. 88

Case 1:14-mc-91289-PBS        Document 8-26        Filed 09/26/14        Page 3 of 5

| | | |
|---|---|---|
| GmbHG § 13 Juristische Person; Handelsgesellschaft | Merkt Münchener Kommentar zum GmbHG 1. Auflage 2010 | Rn 172-174 |

## oo) Aufklärungspflichten.

Den Gesellschafter können auch **Aufklärungspflichten** treffen, sofern nur er Informationen besitzt, die für die Mitgesellschafter zur sachgerechten Wahrnehmung ihrer Interessen unverzichtbar sind.[1] Nach Ansicht des BGH soll dies für alle Vorgänge gelten, die mitgliedschaftliche Vermögensinteressen berühren und den Gesellschaftern nicht bekannt sein können.[2] Die Aufklärungspflicht besteht auch in Bezug auf eigene Absichten und Interessenkonflikte, deren Kenntnis für die Mitgesellschafter oder die Gesellschaftsorgane wesentlich sind.[3] Eine gesteigerte Pflicht trifft beispielsweise denjenigen, der in verdeckter Treuhänderschaft einen vinkulierten Geschäftsanteil hält.[4]

**172**

Die zwischen den einzelnen Gesellschaftern bestehende Treuepflicht kann im Einzelfall möglicherweise sogar verlangen, dass **unerfahrene, anwaltlich nicht beratene Gesellschafter von den Mitgesellschaftern beraten werden müssen.**[5] Allerdings wird man hier gewisse Grenzen beachten müssen. Denn im Grundsatz ist auch und gerade der rechtlich unerfahrene Gesellschafter verpflichtet, sich nötige Rechtsberatung selbst zu besorgen. Die postulierte Beratungspflicht beschränkt sich daher im Regelfall darauf, den unerfahrenen Gesellschafter auf bestehenden Beratungsbedarf hinzuweisen. Die eigentliche Beratung muss er sich dann selbst verschaffen.

**173**

Schließlich gebietet die Treuepflicht, dass ein Gesellschafter, der **Zweifel an der Rechtmäßigkeit eines Gesellschafterbeschlusses** hegt, diese noch in der Gesellschafterversammlung zum Ausdruck bringt, bevor er den gefassten Beschluss mit der Anfechtungsklage analog § 243 Abs. 1, 2 AktG angreift.[6] Nicht offenlegungspflichtig ist jedoch ein Erwerber, der einen Geschäftsanteil erwerben will, bezüglich seiner wirtschaftlichen Verhältnisse im Vorfeld einer statutarisch erforderlichen Zustimmung zur Geschäftsanteilsübertragung.[7]

**174**

---

[1]*Wiedemann,* FS Heinsius, 1991, S. 949, 954; Lutter/Hommelhoff/Bayer § 14 Rn. 23; Michalski/Michalski Rn. 173; Wicke Rn. 20.

[2]BGH Urt. v. 11. 12. 2006 – II ZR 166/05, NJW 2007, 917 = GmbHR 2007, 263 m. Anm. *Wackerbarth*.

[3]Roth /*Altmeppen* Rn. 54; Wicke Rn. 20.

[4]OLG Hamburg Beschl. v. 30. 4. 1993 – 11 W 13/93, NJW-RR 1993, 868 = BB 1993, 1030; Michalski/Michalski Rn. 173.

[5]BGH Urt. v. 7. 10. 1991 – II ZR 194/90, NJW 1992, 300, 302 = DB 1991, 2588; Michalski/Michalski Rn. 173; Baumbach/Hueck/Fastrich Rn. 28.

[6]Vgl. Michalski/Michalski Rn. 173.

[7]KG Berlin Urt. v. 2. 1. 2001 – 14 U 2955/99, NZG 2001, 508, 509.

Zitiervorschlag:
MüKoGmbHG/Merkt GmbHG § 13 Rn. 172-174

*Courtesy Translation*

GmbHG (*Gesetz betreffend die Gesellschaften mit beschränkter Haftung*: German Law on Companies with Limited Liability) Section 13 Legal entity; Commercial partnership (*Handelsgesellschaft*)

Merkt Münchener Kommentar zum GmbHG para. 88

1st Edition 2010

### a)  General.

The duty of loyalty under corporate law that exists in tension with the private autonomy of the shareholders[1] controls the perception of the shareholders in the company of all rights and duties and requires of the shareholders in its general formulation that they **act with loyalty towards the GmbH** (*Gesellschaft mit beschränkter Haftung*: Company with Limited Liability) **to promote its purposes actively and to prevent damage to it.**[2]  As a general corporate law principle, it represents the civil law reaction to the personal collaboration of the shareholders in the company that are mutually dependent on each other and therefore each have the possibility of affecting the membership of the others and the related interests.[3]  As the shareholders in the corporation are permanently linked, a high degree of mutual respect is required, as the fundamentally applicable standards of good faith and morality would demand (Sections 242, 826 of the German Civil Code (*Bürgerliches Gesetzbuch*: BGB)).  However, as is made evident by the general formulation of the duty of loyalty, it does not indicate what conduct is required of the GmbH shareholders in a specific situation.  Instead, the constituted general clause must be **re-specified in each individual case,** whereby this primarily depends on the type of the affected rights and duties of the shareholders in each case, the actual structure of the company in question and the legal status of the shareholder.[4]  The duty of loyalty therefore does not constitute any more or any less than a **general clause under corporate law.[5]**

88

---

[1] *Wilhelm*, FS Huber, 2006, p. 1019, 1028 ff.

[2] *A. Heuck* Treuegedanke p. 18 f.; *Lutter*AcP 180 (1980), 84 ff., 102 ff.; Ulmer/Raiser § 14 para. 68; Wicke para. 19.

[3] Ulmer/Raiser § 14 para. 67.

[4] Scholz/*Emmerich* para. 39d ff.; Rowedder/Schmidt-Leithoff/Pentz para. 40; Ulmer/Raiser § 14 para. 69.

[5] Scholz/*Emmerich* para. 36, 38, 39d.

Citation:
MüKoGmbHG/Merkt GmbHG § 13 para. 88

GmbHG (*Gesetz betreffend die Gesellschaften mit beschränkter Haftung*: German Law on Companies with Limited Liability) Section 13 Legal entity; Commercial partnership (*Handelsgesellschaft*)

Merkt Münchener Kommentar zum GmbHG para. 172 – 174

1st Edition 2010

### oo) Duties of disclosure

**Duties of disclosure** may also affect the shareholder if only it possesses information that is essential for its co-shareholders for the proper protection of their interests.[1]  In the view of the Federal Court of Justice (*Bundesgerichtshof*: BGH), this should apply to all procedures that affect corporate financial interests and cannot be known to the shareholders.[2]  The duty of disclosure also exists in respect of own intentions and conflicts of interests, the knowledge of which is essential for the co-shareholders or the corporate bodies.[3]  An increased duty, for example affects the holder of a registered share in hidden trust.[4]

172

In individual cases, the duty of loyalty that exists between the individual shareholders may even potentially require that **inexperienced shareholders who have not sought the advice of an attorney must be advised by co-shareholders**.[5]  However, one must observe certain limits in this case.  This is because precisely the legally inexperienced shareholder is also in principle obliged to obtain the necessary advice itself.  The postulated advisory duty is therefore generally limited to indicating the presence of an advisory requirement to the inexperienced shareholder.  The shareholder must subsequently obtain the advice itself.

173

Finally, the duty of loyalty demands that a shareholder that harbors **doubts as to the legality of a shareholder resolution** expresses them in the Shareholder Meeting before it challenges the adopted resolution by means of the legal challenge analog Section 243(1),(2) of the German Stock Corporation Act (*Aktiengesetz*: AktG).[6]  However, a purchaser that intends to acquire a share is not subject to the duty of disclosure in respect of its economic circumstances prior to an approval required by statute for the transfer of the share.[7]

174

---

[1] *Wiedemann,* FS Heinsius, 1991, p. 949, 954; Lutter/Hommelhoff/Bayer § 14 para. 23; Michalski/Michalski para. 173; Wicke para. 20.
[2] BGH judgment of December12, 2006 – II ZR 166/05, NJW 2007, 917 = GmbHR 2007, 263 with comments *Wackerbarth.*
[3] Roth /*Altmeppen* para. 54; Wicke para. 20.
[4] Higher Regional Court of Hamburg, ruling of April 30, 1993 – 11 W 13/93, NJW-RR 1993, 868 = BB 1993, 1030; Michalski/Michalski para. 173.
[5] BGH judgment of October 7, 1991 – II ZR 194/90, NJW 1992, 300, 302 = DB 1991, 2588; Michalski/Michalski para. 173; Baumbach/Hueck/Fastrich para. 28.
[6] Cf. Michalski/Michalski para. 173.
[7] Berlin Supreme Court judgment of January 2, 2001 – 14 U 2955/99, NZG 2001, 508, 509.